IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Q.J., a minor, through his parent and legal guardian, J.J., individually and on behalf of all others similarly situated, ) ) ) ) | |
| Plaintiff, ) | |
| ) | Case No. |
| v. ) | |
| ) | Judge |
| POWERSCHOOL HOLDINGS LLC; ) HOBSONS, INC.; HEAP INC.; BOARD OF ) EDUCATION OF THE CITY OF CHICAGO, ) commonly known as CHICAGO PUBLIC ) SCHOOLS; UNKNOWN EMPLOYEES AND ) OFFICERS OF POWERSCHOOL HOLDINGS ) LLC; UKNOWN EMPLOYEES AND ) OFFICERS OF HOBSONS, INC.; and ) UNKNOWN EMPLOYEES AND OFFICERS ) OF HEAP INC. ) ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

## CLASS ACTION COMPLAINT

Plaintiff Q.J., a minor, through his parent and legal guardian, J.J. ("Plaintiff"),

individually and on behalf of all other similarly situated individuals, by and through his

attorneys, brings this action against Defendants PowerSchool Holdings LLC ("PowerSchool");

Hobsons, Inc. ("Hobsons"); Heap Inc. ("Heap"); Board of Education of the City of Chicago,

commonly known as Chicago Public Schools ("Chicago Public Schools" or "CPS"); Unknown

Employees and Officers of PowerSchool Holdings LLC (the "PowerSchool Doe Defendants");

Unknown Employees and Officers of Hobsons, Inc. (the "Hobsons Doe Defendants"); and

Unknown Officers and Employees of Heap Inc. (the "Heap Doe Defendants") (all defendants,

collectively, "Defendants"; all Doe defendants, collectively "Doe Defendants"), based upon

personal knowledge of the facts pertaining to Q.J. and on information and belief as to all other matters.

## NATURE OF THE CASE

1.      Every school day, millions of public-school students in the United States enter classrooms throughout the country. However, unlike the past, these students do not sit at their desks and open their schoolbooks for another day of learning. Schoolbooks have been replaced by laptops, tablets and other electronic devices. These devices are fueled by an industry that markets its products as "education technology" or "ed tech." While the benefits of such products are questionable, what is not, is the amount of data they gather about the schoolchildren that use them.

2.      The Federal Trade Commission ("FTC") has declared that "[c]hildren should not have to needlessly hand over their data and forfeit their privacy in order to do their schoolwork . . . especially given the wide and increasing adoption of [education technology] tools."[1]

3.      Yet, Defendants PowerSchool Holdings, Hobsons and Heap, as well as the Doe Defendants, have caused millions of school students to both hand over their data and forfeit their privacy, albeit without the students' knowledge or consent.

4.      Locally, instead of protecting school students and their data, as it was duty-bound to do, Defendant Chicago Public Schools let the students down and breached its various duties owed to them, as Defendants PowerSchool Holdings, Hobsons and Heap, as well as the Doe Defendants, routinely and systematically violated the students' constitutional, statutory and common-law privacy rights.

---

[1] FTC, *Policy Statement of the Federal Trade Commission on Education Technology and the Children's Online Privacy Protection Act* (May 19, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/Policy%20Statement%20of%20the%20Federal%20Trade%20Commission%20on%20Education%20Technology.pdf (last accessed on Aug. 18, 2023).

5.     Defendants PowerSchool Holdings, Hobsons and Heap carried out their unlawful conduct through a purported education product known as Naviance (hereinafter, the "Naviance platform" or "Naviance") – an online platform offered by PowerSchool Holdings, and prior to that by Hobsons, that is, and has been, used by numerous schools throughout the United States, including schools operated by Defendant Chicago Public Schools.

6.     At relevant times, students enrolled in schools or school districts that have contracted with Defendant PowerSchool Holdings and/or Defendant Hobsons for use of the Naviance platform were, and continue to be, provided with Naviance accounts through their respective schools or school districts.

7.     At relevant times, through online surveys, assessments and other mechanisms, the Naviance platform collected and obtained, and continues to collect and obtain, sensitive and confidential personal information about students, including education and school student records and the information contained therein.

8.     While Defendants PowerSchool Holdings and Hobsons have long claimed in various different ways that they value students' privacy, that is not, and has not been, the case.

9.     Nevertheless, given Defendants PowerSchool Holdings' and Hobsons' represented commitment to privacy, Plaintiff and Class members reasonably believed that their sensitive and confidential personal information, including their education and school student records and the information contained therein, as well as their actions, interactions, data transmissions and communications while accessing and navigating the Naviance platform, would not be surreptitiously intercepted, captured, monitored and recorded by unauthorized parties and state actors without probable cause or reasonable suspicion that Plaintiff or any Class member had engaged in unlawful or otherwise improper conduct.

10.     Unbeknownst to Plaintiff and Class members, their actions, interactions, data transmissions and communications while accessing and navigating the Naviance platform were surreptitiously intercepted, monitored, captured and recorded by Defendant Heap and the Heap Doe Defendants, in conspiracy with, and as aided, abetted and assisted by, Defendant PowerSchool Holdings and the PowerSchool Doe Defendants and, on information and belief, Defendant Hobsons and the Hobsons Doe Defendants, without probable cause or reasonable suspicion.

11.     Defendants' conduct as alleged herein, constitutes an extreme invasion of Plaintiff's and Class members' privacy and a violation of their Fourth Amendment rights under the United States Constitution. Given the secret and undisclosed nature of Defendants' conduct, additional evidence supporting Plaintiff's claims, including the full extent of Defendants' unlawful conduct, and the way in which the sensitive and confidential information and data was used, will be revealed in discovery.

## PARTIES

### *Plaintiff Q.J.*

12.     Plaintiff Q.J. is a minor who resides in Cook County, Illinois.

13.     Plaintiff Q.J. is and has been a student enrolled at various schools operated by Defendant Chicago Public Schools.

### *Defendants*

#### *Defendant PowerSchool Holdings LLC*

14.     Defendant PowerSchool Holdings LLC is a Delaware limited liability company with its principal place of business located in Folsom, California and additional offices in Illinois, among other places.

4

15.     Defendant PowerSchool Holdings is a subsidiary of PowerSchool Holdings, Inc., a publicly-traded company listed on the New York Stock Exchange.

16.     Defendant PowerSchool Holdings holds itself out as the leading provider of cloud-based software to the kindergarten through twelfth-grade ("K-12") education market and serves more than ninety of the top 100 school districts by enrollment in the United States, including, at relevant times, Defendant Chicago Public Schools.

17.     Over 80% of all K-12 students in the United States and Canada use products provided by Defendant PowerSchool Holdings. One of those products is Naviance.

18.     According to the 2022 year-end consolidated financial statements of PowerSchool Holdings, Inc., which include information regarding Defendant PowerSchool Holdings, the combined companies had total revenue of $630,683,000 and total assets of more than $3.5 billion.

19.     At relevant times, Defendant PowerSchool Holdings embedded and integrated Defendant Heap's software into the Naviance platform, resulting in, *inter alia*, Plaintiff and Class members being subjected to repeated searches and seizures without probable cause or reasonable suspicion that Plaintiff or Class members engaged in any wrongdoing.

20.     At relevant times, Defendant PowerSchool Holdings was a state actor engaged in state action because Defendant Chicago Public Schools and, on information and belief, other public schools and school districts throughout the United States, delegated to PowerSchool Holdings their public function of collecting, storing, handling, protecting, overseeing and otherwise maintaining education and school student records.

***Defendant Hobsons, Inc.***

21.     Defendant Hobsons, Inc. is a wholly-owned subsidiary of Defendant PowerSchool Holdings.

22.     Defendant PowerSchool Holdings acquired all of the equity in Defendant Hobsons in or about March 2021.

23.     Prior to the acquisition of Defendant Hobsons by Defendant PowerSchool Holdings, Hobsons was a Delaware corporation with its principal place of business in – on information and belief – Arlington, Virginia.

24.     Prior to its acquisition by Defendant PowerSchool Holdings, Defendant Hobsons operated and offered the Naviance platform to schools and school districts throughout the United States, including to Defendant Chicago Public Schools.

25.     On information and belief, at relevant times, Defendant Hobsons embedded and integrated Defendant Heap's software into the Naviance platform, resulting in, *inter alia*, Plaintiff and Class members being subjected to repeated searches and seizures without probable cause or reasonable suspicion that Plaintiff or Class members engaged in any wrongdoing.

26.     At relevant times, Defendant Hobsons was a state actor engaged in state action because Defendant Chicago Public Schools and, on information and belief, other public schools and school districts throughout the United States, delegated to Hobsons their public function of collecting, storing, handling, protecting, overseeing and otherwise maintaining education and school student records.

***Defendant Heap Inc.***

27.     Defendant Heap Inc. is a Delaware corporation with its principal place of business located in San Francisco, California.

6

28.　Defendant Heap is a data analytics and session replay software provider. Heap's software automatically captures all of the data of its customers' website users while they access and navigate the websites – "What they click. Where they go. What they do, even when you're not looking."

29.　At varying times, Defendant Heap is, and has been, a vendor to and/or subcontractor of Defendant PowerSchool Holdings, including with respect to PowerSchool Holdings's contract with Defendant Chicago Public Schools.

30.　On information and belief, Defendant Heap was a vendor to and/or subcontractor of Defendant Hobsons, including with respect to Hobsons' contracts with Defendant Chicago Public Schools.

31.　At relevant times, Defendant Heap was a state actor engaged in state action because Defendant PowerSchool Holdings and, on information and belief, Defendant Hobsons, in their roles as state actors practically controlled and directed Heap with respect to its surreptitious interception, monitoring, capture and recording of Plaintiff's and Class members' sensitive and confidential education and student school records and the information contained therein, as well as their actions, interactions, data transmissions and communications within the Naviance platform.

### *Defendant Board of Education of the City of Chicago*

32.　Defendant Board of Education of the City of Chicago, commonly known as Chicago Public Schools, is a body politic and corporate organized under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois.

33.　Chicago Public Schools is a school district within the State of Illinois that maintains a system of free schools within Chicago, Illinois, comprised of over 600 schools.

34. As of the beginning of the 2022-2023 school year, over 322,000 students were enrolled in schools operated by Defendant Chicago Public Schools.

***The Doe Defendants***

35. The PowerSchool Doe Defendants are unknown employees and officers of Defendant PowerSchool Holdings who, among other things, were involved in: (a) contracting with Defendant Chicago Public Schools and other public schools and school districts throughout the United States; (b) the acquisition of Defendant Hobsons; (c) PowerSchool Holdings' compliance with the Federal Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, and the Illinois Schools Student Records Act ("ISSRA"), 105 Ill. Comp. Stat. 10/1, *et seq.*, as well as other laws and contractual obligations; (d) the violations of the rights of school students, including Plaintiff's and Class members' rights, as alleged herein; and (e) the preparation of materials regarding PowerSchool Holdings' purported commitment to privacy. One or more of the PowerSchool Doe Defendants are or were policymakers with final policymaking authority. Plaintiff refers to these defendants using fictitious names until he can ascertain their identities. At relevant times, the PowerSchool Doe Defendants were acting under color of law and within the scope of their employment. Plaintiff brings suit against the PowerSchool Doe Defendants in their individual capacities.

36. The Hobsons Doe Defendants are unknown employees and officers of Defendant Hobsons who, among other things, were involved in: (a) contracting with Defendant Chicago Public Schools and other public schools and school districts throughout the United States; (b) the acquisition of Defendant Hobsons; (c) Hobsons' compliance with the FERPA and the ISSRA, as well as other laws and contractual obligations; (d) the violations of the rights of school students, including Plaintiff's and Class members' rights, as alleged herein; and (e) the preparation of

8

materials regarding Hobsons' purported commitment to privacy. One or more of the Hobsons Doe Defendants are or were policymakers with final policymaking authority. Plaintiff refers to these defendants using fictitious names until he can ascertain their identities. At relevant times, the Hobsons Doe Defendants were acting under color of law and within the scope of their employment. Plaintiff brings suit against the Hobsons Doe Defendants in their individual capacities.

37.     The Heap Doe Defendants are unknown employees and officers of Defendant Heap who, among other things, were involved in: (a) Heap's relationship with Defendant PowerSchool Holdings and, on information and belief, Defendant Hobsons; (b) Heap's obligations to students attending schools operated by Defendant Chicago Public Schools ("CPS Students") as required by the contracts between Defendant Chicago Public Schools and PowerSchool Holdings and between Chicago Public Schools and Defendant Hobsons; (c) Heap's obligations to students throughout the United States as required by contracts with schools and school districts throughout the United States; and (d) the violations of the rights of students throughout the United States, including Plaintiff's and Class members' rights, as alleged herein. Plaintiff refers to these defendants using fictitious names until he can ascertain their identities. At relevant times, the Heap Doe Defendants were acting under color of law and within the scope of their employment. Plaintiff brings suit against the Heap Doe Defendants in their individual capacities.

**JURISDICTION AND VENUE**

38.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under laws of the United States, namely, 42 U.S.C. § 1983 and 18 U.S.C. § 2701.

39.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action is a class action in which the aggregate amount in controversy for the proposed classes exceeds $5 million, and at least one member of the proposed nationwide class is a citizen of a state different from those of Defendants.

40.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

41.     This Court has personal jurisdiction over Defendant Chicago Public Schools because it is a body politic and corporate organized under the laws of the State of Illinois, with its principal place of business located in Cook County, Illinois.

42.     This Court has personal jurisdiction over Defendants PowerSchool Holdings and Hobsons because their contracts with Defendant Chicago Public Schools, under which this case arises in part, expressly provide that PowerSchool Holdings and Hobsons "irrevocably submit[] [themselves] to the original jurisdiction of those courts located in the County of Cook, State of Illinois, with regard to any controversy arising out [of], or relating to, or in any way concerning the execution or performance of [the contracts]." Plaintiff Q.J. is a direct and intended third-party beneficiary of the contracts at issue and brings claims herein for PowerSchool Holdings' and Hobsons' breaches of those contracts. Moreover, a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in this State, including the negotiation and formation of the above-described contracts between Chicago Public Schools, on the one hand, and PowerSchool and Hobsons, on the other.

43.     This Court has personal jurisdiction over Defendant Heap because it: (a) purposefully availed itself of the privilege of conducting business in Illinois and purposefully directed its activities at the state; (b) the injuries of Plaintiff and Class members relate to Heap's

forum-related activities; and (c) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. As a vendor and/or subcontractor to Defendant PowerSchool Holdings and, on information and belief, Defendant Hobsons, Heap was required via its contracts with PowerSchool Holdings and Hobsons to comply with material terms of the contracts between Defendant Chicago Public Schools, on the one hand, and PowerSchool Holdings and Hobsons, on the other. Plaintiff Q.J. is a direct and intended third-party beneficiary of the contracts between Heap and PowerSchool Holdings and Heap and Hobsons, and he brings claims herein for Heap's breaches of those contracts.

44.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c) and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Defendants are subject to the Court's personal jurisdiction.

## FACTUAL BACKGROUND

### The Naviance Platform

45.     According to Naviance marketing materials, Naviance is the "leading [College, Career and Life Readiness] platform equipping 10+ million students of all ages with skills to reach their postsecondary goals."

46.     According to Defendant PowerSchool Holdings, Naviance, among other things: (a) "[p]rovide[s] students with tools to plan for a future that aligns with their strengths and interests"; (b) "[i]mplement[s] holistic counseling in a single platform where students, families, and staff can collaborate to build and track students' plans for future success"; and (c) "[e]nsure[s] every student has access to high-quality resources to achieve milestones toward their postsecondary goals."

47.    Prior to spring 2021, Defendant Hobsons owned and operated the Naviance platform. In spring 2021, Defendant PowerSchool Holdings acquired Hobsons and the Naviance platform. Hobsons then became a wholly-owned subsidiary of PowerSchool Holdings.

48.    Students attending schools or school districts that have contracted with Defendant PowerSchool Holdings or Defendant Hobsons for use of the Naviance platform received and, if the contracts are active, continue to receive, access to the platform through their schools or school districts.

49.    A student enrolled in a school or school district that has contracted with Defendant PowerSchool Holdings or Defendant Hobsons for use of the Naviance platform can access the platform through a login uniquely affiliated with the student and a password. The login and password may be the same login and password used by the student to log into their school's or school district's online network, as was the case for CPS Students, including Plaintiff.

50.    School districts and students, among others, provided Defendants PowerSchool Holdings and Hobsons with information and data regarding students for use within the Naviance platform.

51.    Among the student data obtained by Defendants PowerSchool Holdings and Hobsons from schools and school districts is/was a student's: (a) photograph; (b) local school identification number; (c) first name; (d) middle name; (e) last name; (f) graduation year; (g) birthdate; (h) email address; (i) home phone number; (j) mobile phone number; (k) home address; (l) grade point average (weighted and unweighted); (m) gender; (n) ethnicity; (o) school counselor; (p) standardized test scores, such as SAT, PSAT and ACT; (q) citizenship; (r) courses

that qualified as advanced placement or honors; (s) parent information; and (t) history of schools attended.

52.     Additionally, Defendants PowerSchool Holdings and Hobsons obtain and obtained data and information about students through assessments and surveys conducted within the Naviance platform. One such survey, titled the "Career Interest Profiler," purports to "help students discover the types of work activities and careers that match their interests . . . ."

53.     Other surveys and assessments students complete within the Naviance platform, include but are not limited to: (a) a "StrengthsExplorer Assessment; (b) a high school success assessment; (c) a "College Exploration Survey"; and (d) a "Postsecondary Pathway."

54.     The above-described surveys and assessments constitute education and school student records under the FERPA and the ISSRA, respectively.

55.     The Naviance platform also purports to use students' academic profiles and interests to help them explore and discover colleges that are a "fit" and help determine their future careers.

56.     In addition to collecting and obtaining information and data from students, the Naviance platform also provides, and provided, students with a web-based email client to send, receive and store email messages.

***PowerSchool Holdings' and Hobsons' Contracts with Chicago Public Schools***

57.     Defendant Chicago Public Schools contracted with Defendant Hobsons and, later, Defendant PowerSchool Holdings to allow CPS Students, among others, to use the Naviance platform.

58.    Specifically, between July 1, 2015 and June 30, 2020, Defendant Chicago Public Schools contracted with Defendant Hobsons for use of the Naviance platform (the "Initial Contract").

59.    Between July 1, 2020 and June 30, 2023, Defendant Chicago Public Schools again contracted with Defendant Hobsons for use of the Naviance platform (the "Subsequent Contract"). After the acquisition of Defendant Hobsons by Defendant PowerSchool Holdings, the Subsequent Contract was formally assigned to PowerSchool Holdings, who agreed to accept, assume and take over the Subsequent Contract.

60.    Both the Initial and Subsequent Contracts made clear that they were the controlling agreements between: (a) Defendant Chicago Public Schools and Hobsons; and (b) Defendant Chicago Public Schools and PowerSchool Holdings, respectively.

61.    Moreover, both the Initial and Subsequent Contracts made clear that CPS Students, including Plaintiff and CPS Subclass members (as defined below), are direct and intended beneficiaries of the contracts, as both contracts directly reference CPS Students and contain numerous provisions regulating, among other things, the use, release, transfer, disclosure and dissemination of their sensitive and confidential data and records.

62.    The Initial Contract further benefitted CPS Students by making clear that neither Defendant Chicago Public Schools nor CPS Students could be bound by terms and conditions contained in "any clickwrap agreement, clickwrap license, clickthrough agreement, clickthrough license, end user license agreement or any other agreement or license contained or referenced" within the Naviance platform or any quote provided by Hobsons.

63.    Similarly, the Subsequent Contract further benefitted CPS Students by making clear that neither Defendant Chicago Public Schools nor CPS Students could be "bound by the

terms and conditions contained in any clickwrap/clickthrough agreement or license, end user license or any other agreement or license contained or referenced in the products or service or any quote provided by [Hobsons or PowerSchool Holdings]." While the Subsequent Contract incorporated Defendant Hobsons' privacy policy, it expressly provided that "if any conflict is deemed to exist between [the Subsequent Contract] and [Hobsons'] Privacy Policy, the terms of [the Subsequent Contract] shall supersede and control."

64.    Both the Initial and Subsequent Contracts broadly defined "Student Data" to mean "any data, metadata, information, or other materials of any nature recorded in any form whatsoever, that is generated, disclosed, transmitted, created, or provided by [Chicago Public Schools], either directly or through its students," among others, including "all information used, created, or generated through the use of any technology including but not limited to [the Naviance platform], that is directly related to a CPS student."

65.    According to the Subsequent Contract, "Student Data" included de-identified data.

66.    Both the Initial and Subsequent Contracts expressly stated that "Student Data" is "Confidential Information," subject to the contracts' provisions regarding the use, disclosure, transfer and handling, among other things, of such information.

67.    Under the Initial and Subsequent Contracts, "Confidential Information" may include, but is not limited to, name, address, student identification number, social security number, phone number, email address, gender, date of birth, ethnicity, race, foster care status, disabilities, school, grade, grade point average, standardized test scores, assessment data, highest grade completed, discipline history and free or reduced lunch qualifications. Under the Initial and Subsequent Contracts, de-identified data constituted "Confidential Information."

68.     The Initial and Subsequent Contracts contained various provisions prohibiting and otherwise limiting the dissemination, sale, trade and disclosure of Student Data and Confidential Information, including but not limited to the following:

a.      Both the Initial and Subsequent Contracts prohibited the dissemination of Confidential Information to a third party without the written consent of Defendant Chicago Public Schools: "[Vendor] shall not disseminate Confidential Information to a third party without the prior written consent of [Chicago Public Schools]."

b.      The Subsequent Contract prohibited the sale, trade or transfer of Student Data to any third parties.

c.      Both the Initial and Subsequent Contracts prohibited the disclosure of Confidential Information except to "officers, agents, employees, and subcontractors who have a need to access the Confidential Information" for the sole purpose of delivering the Naviance platform to Defendant Chicago Public Schools.

***Chicago Public Schools' Use of the Naviance Platform***

69.     Defendant Chicago Public Schools' stated "Mission" is to "provide a high-quality public education for every child . . . that prepares each for success in college, career, and civic life."

70.     Defendant Chicago Public Schools has a "Graduate Profile" setting forth what it aspires for its graduates to be. According to the Graduate Profile, "when students graduate from CPS, they possess the knowledge and skills to pursue their interests and achieve their postsecondary goals."

71.     At relevant times, Defendant Chicago Public Schools integrated the Naviance platform into the learning curriculum of CPS Students in grades six through twelve to

purportedly allow those students to "explore their interests and think about their futures" and to "support their postsecondary planning."

72.     At relevant times, use of the Naviance platform was a graduation requirement of Defendant Chicago Public Schools, with students being required to "upload evidence of their postsecondary plan into Naviance . . . ."

73.     The information, data and records input into, and created as a result of the use of, the Naviance platform by CPS Students were of clear relevance to the students' education.

74.     In order for CPS Students to log into their Naviance accounts provided by Defendant Chicago Public Schools, the students used the same login names and passwords associated with their Chicago Public Schools online accounts.

***Plaintiff's and Class Members' Reasonable Expectation of Privacy***

75.     As alleged in more detail below, Plaintiff and Class members have, and had, a reasonable expectation of privacy in their education and school student records and the information contained therein, generally, as well as their actions, interactions, data transmissions and communications within the Naviance platform, specifically.

***The Reasonable Expectation of Privacy in Education and Student School Records***

76.     At relevant times, students, including Plaintiff and Class members, had, and continue to have, a reasonable expectation of privacy in their education and school student records and the information contained therein. Indeed, the records and information are regulated by federal and state laws.

***The FERPA***

77.     The FERPA and its implementing regulations govern the release of and access to "education records." *See* 20 U.S.C. § 1232(g); 34 C.F.R. Part 99.

17

78.     Under the FERPA, "education records" are "those records, files, documents, and other materials which – (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A).

79.     Under the regulations implementing the FERPA, "personally identifiable information" includes, but is not limited to: (a) the student's name; (b) the name of the student's parent or other family members; (c) the address of the student or student's family; (d) a personal identifier, such as the student's social security number, student number, or biometric record; (e) other indirect identifiers such as the student's date of birth, place of birth, and mother's maiden name; (f) other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in a school community who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; and (g) information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the educational record relates. 34 C.F.R. 99.3.

80.     Under the FERPA, an educational institution or agency may not disclose personally identifiable information from a student's education records without signed and dated written consent, subject to exceptions not applicable here. *See* 34 C.F.R. 99.30.

        ***The ISSRA***

81.     The ISSRA governs the release, transfer, disclosure and dissemination of school student records in Illinois. *See* 105 Ill. Comp. Stat. 10/1, *et seq.*

82.     Pursuant to the ISSRA, a "school" is, among other things, "any public preschool . . . kindergarten, nursery, elementary or secondary educational institution . . ., or any person,

18

agency or institution which maintains school student records from more than one school . . . ." 105 Ill. Comp. Stat. 10/2(b).

83.     Pursuant to the ISSRA, "School Student Record" means "any writing or other recorded information concerning a student and by which a student may be individually identified, maintained by a school or at its direction or by an employee of a school, regardless of how or where the information is stored." 105 Ill. Comp. Stat. 10/2(d).

84.     Pursuant to the ISSRA, "Student Permanent Record" means "the minimum personal information necessary to a school in the education of the student and contained in a school student record." 105 Ill. Comp. Stat. 10/2(e).

85.     Pursuant to the ISSRA, "Student Temporary Record" means "all information in a school student record but not contained in the student permanent record." 105 Ill. Comp. Stat. 10/2(f).

86.     Pursuant to the ISSRA, a "student" is "any person enrolled or previously enrolled in a school." 105 Ill. Comp. Stat. 10/2(a).

87.     Pursuant to the ISSRA, "[n]o school student records or information maintained therein may be released, transferred, disclosed or otherwise disseminated" unless certain exceptions not applicable here apply. 105 Ill. Comp. Stat. 10/6(a).

88.     Pursuant to the ISSRA, "[a]ny person aggrieved by a violation of [the ISSRA] may institute an action for injunctive relief . . . ." 105 Ill. Comp. Stat. 10/9(a).  Further, "any person injured by a wilful or negligent violation of [the ISSRA] may institute an action for damages . . . ." 105 Ill. Comp. Stat. 10/9(b).

89.     A wilful violation of the ISSRA is a criminal offense. 105 Ill. Comp. Stat. 10/9(e).

*The Reasonable Expectation of Privacy in School and Online Activities*

90.     Underscoring Plaintiff's and Class members' reasonable expectation of privacy in their education and school student records and the information contained therein, the FTC has declared that "[c]hildren should not have to needlessly hand over their data and forfeit their privacy in order to do their schoolwork . . . especially given the wide and increasing adoption of [education technology] tools."[2]

91.     Moreover, privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.

92.     For example, a Consumer Reports study has revealed that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumers' data, and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them. Moreover, according to a study by Pew Research Center, a majority of Americans, approximately 79%, are concerned about how companies collect data about them.

93.     Technology users act consistently with these preferences. For instance, following a new rollout of the iPhone operating software – which asks users for clear, affirmative consent before allowing companies to track them – 88% of worldwide users and 96% of U.S. users chose not to share data when prompted.

---

[2] FTC, *Policy Statement of the Federal Trade Commission on Education Technology and the Children's Online Privacy Protection Act* (May 19, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/Policy%20Statement%20of%20the%20Federal%20Trade%20Commission%20on%20Education%20Technology.pdf (last accessed on Aug. 18, 2023).

94.     Another recent study by DataGrail revealed that 67% of people were willing to pay $100 or more annually to keep their information out of the hands of companies and the government. The same study revealed that 75% of people would abandon brands that do not take care of their data.

***PowerSchool Holdings' and Hobsons' Promises to Users***

95.     Given the limitations imposed on the release, transfer, disclosure and dissemination of education and school student records and the information contained therein, Defendants PowerSchool Holdings and Hobsons have assured Naviance users that their information would remain private and confidential, further bolstering Plaintiff's and Class members' reasonable expectation of privacy.

96.     Defendant PowerSchool Holdings has represented, and continues represent, that it is a signatory to the Student Privacy Pledge, a pledge by K-12 school service providers to safeguard student privacy.

97.     Before its acquisition by Defendant PowerSchool Holdings, Defendant Hobsons also represented that it was a signatory to the Student Privacy Pledge.

98.     As signatories to the Student Privacy Pledge, Defendants PowerSchool Holdings and Hobsons, promised, among other things:

        a.      Not to collect, maintain, use or share student personal information beyond that needed for authorized educational/school purposes, or as authorized by the parent/student;

        b.      To collect use, share, and retain student personal information only for purposes for which they were authorized by the educational institution/agency, teacher or the parent/student;

c. To disclose clearly in contracts or privacy policies, including in a manner easy for parents and teachers to understand, what types of student personal information they collect, if any, and the purposes for which the information they maintain is used or shared with third parties; and

d. To require that their vendors with whom student personal information is shared in order to deliver the educational service, if any, are obligated to implement these same commitments for the given student personal information.

99.     Further, on Defendant Hobsons' website, it promised that "Protecting the privacy and security of student data is at the core of the work we do to make Naviance by Hobsons a trusted platform for schools and districts – and for the parents and students that we collectively serve." Hobsons further promised that "We understand and take very seriously our obligations and responsibilities to act as good stewards of the information that schools entrust to us to provide them with tools to support their college and career readiness programs in the way that they see fit."

100.    On Defendant PowerSchool Holdings' website, it represented and represents that it "complies with applicable privacy laws that impact students and children."

101.    Additionally, as alleged above, the Initial and Subsequent Contracts imposed various restrictions and limitations on Defendants PowerSchool Holdings and Hobsons with respect to "Student Data" and "Confidential Information."

102.    The respective and relevant privacy policies of Defendants PowerSchool Holdings and Hobsons contain further representations regarding each company's purported commitment to privacy.

*Defendant Heap's Software*

103.     Defendant Heap is a software-as-a-service provider, whose software enables the interception, monitoring, capture and recording of the entirety of website users' actions, interactions, data transmissions and communications within a website, among other things.

104.     A website operator can install Defendant Heap's software by embedding and integrating a snippet of code, written in JavaScript, into the website.

105.     Defendant Heap claims to provide users of its technology the "easiest and most comprehensive way to automatically capture the user interactions on your site, from the moment of installation forward. *A single snippet grabs every click, swipe, tap, pageview, and fill – forever."*

106.     In the words of Defendant Heap, its technology "collect[s] everything, automatically."

107.     Defendant Heap records a website user's actions, interactions and communications within a website through a technology referred to as session replay.

108.     According to Defendant Heap's marketing materials, "session replay captures what users do, then plays those session recordings back to you, so you can see how users move through the experience you've built."

109.     Defendant Heap boasts the ability to put its customers "in your users' shoes" through the use of session replay.

110.     Once embedded and integrated into a website, Defendant Heap's snippet of JavaScript code allows Heap's software to surreptitiously intercept, monitor, capture and record in real-time the actions, interactions, data transmissions and communications of website users

and contemporaneously transmits that information and data to Heap's servers which, on information and belief, are located in California.

111.    Defendant Heap's interception, monitoring, capture and recording of a website user's actions, interactions, data transmissions and communications within the website begins immediately upon a person visiting a website in which Heap's JavaScript code is embedded and integrated – precluding the user from first providing any consent.

112.    Defendant Heap has known, and continues to know, that when it works with ed tech providers like Defendants PowerSchool Holdings and Hobsons, the embedding and integration of its software into the customer's website results in Heap's interception, monitoring, capture and recording of sensitive and confidential student information, including education and school student school records and the information contained therein.

113.    At relevant times, Defendant PowerSchool Holdings and, on information and belief, Defendant Hobsons, through the PowerSchool Doe Defendants and Hobsons Doe Defendants – with the assistance and agreement of the Heap Doe Defendants – knowingly and intentionally embedded and integrated Defendant Heap's JavaScript code into the Naviance platform – namely, they embedded and integrated the JavaScript code into the portion of the Naviance platform accessed by students after they logged into the platform with their unique login names and passwords – for the purpose of intercepting, monitoring, capturing and recording all of the actions, interactions, data transmissions and communications of students while accessing and navigating the Naviance platform.

114.    Defendant Heap's software is not and has not been required in order for Defendant PowerSchool Holdings or Defendant Hobsons to provide the Naviance platform to schools and schools districts, including Defendant Chicago Public Schools.

24

115.    Given the surreptitious way in which Defendant Heap intercepts, monitors, captures and records website users' actions, interactions, data transmissions and communications within a website, school students logged into the Naviance platform would not know that they were under constant surveillance while using the platform and that "every click, swipe, tap, pageview and fill" performed within the platform was being intercepted, monitored, captured and recorded by Heap.

116.    No probable cause or reasonable suspicion existed to subject school students, including Plaintiff and Class members, to the constant and indiscriminate search and seizure of their actions, interactions, data transmissions and communications within the Naviance platform.

***Other Third-Party Code Embedded and Integrated into the Naviance Platform***

117.    In addition to Defendant Heap's software, Defendant PowerSchool Holdings and, on information and belief, Defendant Hobsons, embedded and integrated the code of other third-parties into the Naviance platform that caused sensitive and confidential student information, including education and school student school records and the information contained therein, of school students, including Plaintiff and Class members, to be intercepted by or, alternatively, disclosed or transferred to, the third parties without the knowledge and consent of the students.

***Plaintiff Q.J.'s Use of the Naviance Platform***

118.    In connection with his enrollment at schools operated by Defendant Chicago Public Schools, Plaintiff Q.J. was required by Chicago Public Schools to use the Naviance platform as part of his educational curriculum and graduation requirements.

119.    Plaintiff Q.J. logged into the Naviance platform through a web portal operated by Defendant Chicago Public Schools, and branded with Chicago Public Schools' logo, using his login credentials for accessing Chicago Public Schools' online network.

120.  Q.J.'s actions, interactions, data transmissions and communications within the Naviance platform, and the data and metadata created as a result of those actions, interactions, data transmissions and communications, were uniquely affiliated with him.

121.  Plaintiff Q.J. has logged into the Naviance platform dozens of times.

122.  Plaintiff Q.J. has logged into and used the Naviance platform while at school and while at home.

123.  While logged into the Naviance platform, Plaintiff Q.J., has, *inter alia*, completed assessments and surveys and received results and feedback based on his responses thereto, explored college and career goals, input colleges in which he has an interest, input personal goals and ways to achieve them, received recommended "best fits" based on his "interests and personal qualities," viewed standardized test scores, and accessed emails sent to him through, and stored on, the web-based email client within the Naviance platform.

124.  Plaintiff Q.J. had a reasonable expectation of privacy in his electronic communications, actions, data transmissions and interactions within the Naviance platform and did not consent to the interception, monitoring, capture and recording of those communications, actions, data transmissions and interactions or the unauthorized use of that information.

125.  Unbeknownst to Plaintiff Q.J., each time he logged into the Naviance platform all of his actions, interactions, data transmissions and communications within the platform were intercepted, monitored, captured and recorded and contemporaneously transmitted to Defendant Heap's servers. The interception, monitoring, capture and recording alleged herein began occurring immediately upon Q.J. accessing the Naviance platform.

126.  The interception, monitoring, capture and recording of Plaintiff Q.J.'s actions, interactions, data transmission and communications within the Naviance platform was not

justified at its inception, and no probable cause or reasonable suspicion that Q.J. had engaged in unlawful or otherwise improper conduct existed to support the search and seizure of his communications and data transmissions.

127.    Plaintiff Q.J. did not become aware of the surreptitious interception, monitoring, capture and recording of his actions, interactions, data transmissions and communications within the Naviance platform until approximately July 2023.

## CLASS ACTION ALLEGATIONS

128.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> **Nationwide Class (the "Class"):** All natural persons in the United States who used the Naviance platform while a student and whose actions, interactions, data transmissions and communications were intercepted, monitored, captured, recorded and/or divulged while accessing and navigating the platform.

129.    In addition, Plaintiff bring this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following subclasses (collectively, the "Subclasses"):

> **Civil Rights Subclass:** All natural persons in the United States who used the Naviance platform while a public-school student and whose actions, interactions, data transmissions and communications were intercepted, monitored, captured, recorded and/or divulged while accessing and navigating the platform.

> **Illinois Subclass:** All residents of Illinois who used the Naviance platform while a public-school student and whose actions, interactions, data transmissions and communications were intercepted, monitored, captured, recorded and/or divulged while accessing and navigating the platform.

> **CPS Student Subclass:** All persons who used the Naviance platform while a CPS Student and whose actions, interactions, data transmissions and communications were intercepted, monitored, captured, recorded and/or divulged while accessing and navigating the platform.

130.    Plaintiff reserves the right to amend or modify the class and subclass definitions with greater specificity or division after having had an opportunity to conduct discovery.

131.    The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations – after considering any tolling, concealment and accrual issues – and ending on the date of entry of any judgment.

132.    Excluded from the Class and Subclasses are: (a) Defendants; (b) any parent, affiliate or subsidiary of any Defendant; (c) any entity in which any Defendant has a controlling interest; (d) any officers or directors of any Defendant; (e) any successor or assign of any Defendant; and (f) counsel for Plaintiff and any Defendant. Also excluded are any judge or court personnel assigned to this case and members of their immediate families.

133.    **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of millions of individuals, and the members can be identified through the records of Defendants PowerSchool Holdings, Hobsons, Heap and Chicago Public Schools.

134.    **Commonality and predominance:** Common questions of law and fact exist as to all Class members and, with respect to the Subclasses, all members of the Subclasses. These common questions of law and fact predominate over any questions affecting only individual members of the proposed Class and Subclasses. Common questions include, but are not limited to, the following:

       a.      Whether Defendants engaged in the wrongful conduct alleged herein;

       b.      Whether the privacy rights of Plaintiff and Class members were violated;

       c.      Whether the rights of Plaintiff and Class members under the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, were violated;

       d.      Whether the rights of Plaintiff and Class members under the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*, were violated;

     e.     Whether Plaintiff and Class members are entitled to actual, statutory, punitive and other forms of damages, as well as other monetary relief; and

     f.     Whether Plaintiff and Class members are entitled to equitable relief, including but not limited to, injunctive relief, restitution and disgorgement.

135.   **Typicality:** Plaintiff's claims are typical of the claims of the Class and Subclasses he seeks to represent. The claims of Plaintiff and members of the Class and Subclasses arise from the same conduct by Defendants and are based on the same legal theories.

136.   **Superiority:** Absent a class action, most members of the Class and Subclasses would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Further, certification of a class action to resolve this matter will reduce the possibility of repetitious litigation involving potentially millions of class members.

137.   **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclasses in that he has no interest that is antagonistic to, or that irreconcilably conflicts with, those of other members of the Class or Subclasses. Further, Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

**CLAIMS FOR RELIEF**

**COUNT ONE**
**VIOLATION OF THE FOURTH AMENDMENT**
**(42 U.S.C. § 1983)**
**(On behalf of Plaintiff and the Civil Rights Subclass against the Doe Defendants)**

138.     Plaintiff restates and realleges the allegations of paragraphs 1 through 137, above, as though fully set forth herein.

139.     Plaintiff brings this Count individually and on behalf of members of the Civil Rights Subclass against the Doe Defendants.

140.     At relevant times, Plaintiff and Civil Rights Subclass members had a right to be free from unreasonable searches and seizures, while at home and while in school and with respect to their actions, interactions, data transmissions and communications within the Naviance platform.

141.     The Doe Defendants, cloaked under color of law, unlawfully – and without probable cause, reasonable suspicion or justification at the inception – routinely and automatically searched and seized Plaintiff's and Civil Rights Subclass members' communications and data transmissions within the Naviance platform each time they accessed and navigated the platform, whether from home, from school or elsewhere.

142.     At relevant times, Plaintiff and Civil Rights Subclass members had a reasonable expectation of privacy in their actions, interactions, data transmissions and online communications while accessing and navigating the Naviance platform. The reasonable expectation of privacy is underscored by: (a) the nature of contents of the communications and transmissions – consisting of, *inter alia*, sensitive and confidential student data, including statutorily-protected education and school student records and the information contained therein;

(b) Defendant PowerSchool Holdings' and Hobsons' promises to protect students' privacy; and

(c) PowerSchool Holdings', Hobsons' and Heap's obligations to protect students' privacy.

143.    Plaintiff and Civil Rights Subclass members did not voluntarily turn over the information and data the Doe Defendants searched and seized while Plaintiff and Civil Rights Subclass members accessed and navigated the Naviance platform. Plaintiff and Civil Rights Subclass members did not know that the Doe Defendants had embedded and integrated Defendant Heap's JavaScript code into the Naviance platform in order to intercept, monitor, capture and record Plaintiff's and Civil Rights Subclass members' actions, interactions, data transmissions and communications within the platform.

144.    Nevertheless, in the manner alleged herein, the Doe Defendants – acting under color of law – individually, jointly and in conspiracy with one another, subjected Plaintiff and Civil Rights Subclass members to repeated, continuous and automatic searches and seizures while Plaintiff and Civil Rights Subclass members accessed and navigated the Naviance platform.

145.    Plaintiff and Civil Rights Subclass members did not consent to the searches and seizures to which the Doe Defendants subjected them and, indeed, those searches and seizures were carried out covertly.

146.    When Plaintiff and Civil Rights Subclass members accessed and navigated the Naviance platform while at home, the Doe Defendants performed the searches, and engaged in the seizures, without probable cause that Plaintiff or Civil Rights Subclass members had engaged in any unlawful conduct. Moreover, the searches and seizures were not permissible in scope – namely, the measure of surreptitiously and automatically intercepting, capturing and recording all actions, interactions, data transmissions and communications of Plaintiff and Civil Rights

31

Subclass members each time they accessed and navigated the Naviance platform was not reasonably related to any objective and was excessively intrusive when considering that Plaintiff and Civil Rights Subclass members had not committed any infraction. The searches and seizures were all the more intrusive given their pervasiveness and the fact that they were performed on school-age children.

147.    When Plaintiff and Civil Rights Subclass members accessed and navigated the Naviance platform while at school, the Doe Defendants performed the searches, and engaged in the seizures, despite the fact that they were not justified at their inception because neither the conduct of Plaintiff nor Civil Rights Subclass members created a reasonable suspicion that any particular regulation or law had been violated.

148.    Moreover, the searches performed, and the seizures engaged in, by the Doe Defendants while Plaintiff and Civil Rights Subclass members were at school were not permissible in scope – namely, the measure of surreptitiously and automatically intercepting, monitoring, capturing and recording all actions, interactions, data transmissions and communications of Plaintiff and Civil Rights Subclass members each time they accessed and navigated the Naviance platform was not reasonably related to any objective and was excessively intrusive when considering that Plaintiff and Civil Rights Subclass members had not committed any infraction. The searches were all the more intrusive given their pervasiveness and the fact that they were performed on school-age children.

149.    The Doe Defendants performed the searches and seizures alleged herein without a warrant.

150.    The conduct of the Doe Defendants violated Plaintiff's and Civil Rights Subclass members' rights as secured by the Fourth Amendment to the United States Constitution.

32

151.    Plaintiff and Civil Rights Subclass members have been injured by the conduct of the Doe Defendants. Plaintiff's and Civil Rights Subclass members' confidential communications and education and school student records have been unlawfully searched and seized on a regular and automatic basis, resulting in emotional distress, loss of control of their sensitive and confidential education and school student records and the information contained therein and other continuing injuries and damages.

152.    The conduct of the PowerSchool Doe Defendants was undertaken pursuant to the policy and practice of Defendant PowerSchool Holdings, in the manner more fully described in Count Three, below.

153.    The conduct of the Hobsons Doe Defendants was undertaken pursuant to the policy and practice of Defendant Hobsons, in the manner more fully described in Count Four, below.

154.    The conduct of the Heap Doe Defendants was undertaken pursuant to the policy and practice of Defendant Heap, in the manner more fully described in Count Five, below.

## <u>COUNT TWO</u>
## CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS
### (42 U.S.C. § 1983)
### (On behalf of Plaintiff and the Civil Rights Subclass against the Doe Defendants)

155.    Plaintiff restates and realleges the allegations of paragraphs 1 through 154, above, as though fully set forth herein.

156.    Plaintiff brings this Count individually and on behalf of members of the Civil Rights Subclass against the Doe Defendants.

157.    Prior to Plaintiff and Civil Rights Subclass members being harmed by the violations of their constitutional rights guaranteed by the Fourth Amendment, as alleged herein, the Doe Defendants agreed among themselves, and with other individuals to deprive Plaintiff and

Civil Rights Subclass members of those constitutional rights – namely, the right to be free from unreasonable searches and seizures.

158.    In furtherance of the conspiracy, each of the coconspirators – including each of the Doe Defendants – engaged in and facilitated numerous overt acts, including but not limited to those set forth above – such as, embedding and integrating Defendant Heap's JavaScript code into the Naviance platform; intercepting, monitoring, capturing and recording all of the actions, interactions, data transmissions and communications of Plaintiff and Civil Rights Subclass members while they accessed and navigated the Naviance platform; contemporaneously transmitting the intercepted, monitored, captured and recorded information and communications to Heap's servers; and preparing and disseminating materials that misrepresented the purported commitment to privacy of Defendants PowerSchool Holdings and Hobsons. Each Doe Defendant was also a willful participant in joint activity.

159.    Each of the Doe Defendants was a voluntary participant in the common venture to deprive Plaintiff and Civil Rights Subclass members of their Fourth Amendment rights. Each of the Doe Defendants personally participated in the unconstitutional conduct, acted jointly with other Doe Defendants who participated or acquiesced in the unconstitutional conduct, or was at least aware of the conduct or plan and failed to take action to prevent such conduct from occurring.

160.    As a direct and proximate result of the illicit prior agreement and actions in furtherance of the conspiracy referenced above, Plaintiff's and Civil Rights Subclass members' rights were violated, and they suffered injuries, as alleged herein.

161.    The misconduct of the PowerSchool Doe Defendants described in this Count was undertaken pursuant to the policy and practice of Defendant PowerSchool Holdings, in the manner more fully described in Count Three, below.

162.    The misconduct of the Hobsons Doe Defendants described in this Count was undertaken pursuant to the policy and practice of Defendant Hobsons, in the manner more fully described in Count Four, below.

163.    The misconduct of the Heap Doe Defendants described in this Count was undertaken pursuant to the policy and practice of Defendant Heap, in the manner more fully described in Count Five, below.

**COUNT THREE**
**POLICY AND PRACTICE CLAIM**
**(42 U.S.C. § 1983)**
**(On behalf of Plaintiff and the Civil Rights Subclass**
**against Defendant PowerSchool Holdings)**

164.    Plaintiff restates and realleges the allegations of paragraphs 1 through 163, above, as though fully set forth herein.

165.    Plaintiff brings this Count individually and on behalf of members of the Civil Rights Subclass against Defendant PowerSchool Holdings.

166.    As described more fully herein, Defendant PowerSchool Holdings is liable for the violations of Plaintiff's and Civil Rights Subclass members' constitutional rights by virtue of its policies, practices and customs, which included policies, practices and customs to automatically intercept, monitor, capture and record all actions, interactions, data transmissions and communications of public-school students each time they accessed and navigated the Naviance platform, despite there being no probable cause or reasonable suspicion of any unlawful or improper conduct.

35

167.    The actions of the PowerSchool Doe Defendants were undertaken pursuant to the policies, practices and customs of Defendant PowerSchool Holdings, which were approved, encouraged and/or ratified by policymakers for PowerSchool Holdings with final policymaking authority.

168.    One or more of the policies, practices and customs described in this Count was maintained and implemented by Defendant PowerSchool Holdings with deliberate indifference to Plaintiff's and Civil Rights Subclass members' constitutional rights and was a moving force behind the violations of those rights.

169.    As a direct and proximate result of Defendant PowerSchool Holdings' actions and inactions, Plaintiff's and Civil Rights Subclass members' constitutional rights were violated, and they suffered injuries and damages, as alleged herein.

170.    Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Defendant PowerSchool Holdings will continue to cause great and irreparable injury to Plaintiff and Civil Rights Subclass members because PowerSchool Holdings will continue to pursue its unlawful policies, practices and customs, as alleged herein. Plaintiff and Civil Rights Subclass members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the unlawful conduct of PowerSchool Holdings.

**COUNT FOUR**
**POLICY AND PRACTICE CLAIM**
**(42 U.S.C. § 1983)**
**(On behalf of Plaintiff and the Civil Rights Subclass against Defendant Hobsons)**

171.    Plaintiff restates and realleges the allegations of paragraphs 1 through 163, above, as though fully set forth herein.

172.    Plaintiff brings this Count individually and on behalf of members of the Civil Rights Subclass against Defendant Hobsons.

173.   As described more fully herein, Defendant Hobsons is liable for the violations of Plaintiff's and Civil Rights Subclass members' constitutional rights by virtue of its policies, practices and customs, which included policies, practices and customs to intercept monitor, capture and record all actions, interactions, data transmissions and communications of public-school students each time they accessed and navigated the Naviance platform, despite there being no probable cause or reasonable suspicion of any unlawful or improper conduct.

174.   The actions of the Hobsons Doe Defendants were undertaken pursuant to the policies, practices and customs of Defendant Hobsons, which were approved, encouraged and/or ratified by policymakers for Hobsons with final policymaking authority.

175.   One or more of the policies, practices and customs described in this Count was maintained and implemented by Defendant Hobsons with deliberate indifference to Plaintiff's and Civil Rights Subclass members' constitutional rights and was a moving force behind the violations of those rights.

176.   As a direct and proximate result of Defendant Hobsons' actions and inactions, Plaintiff's and Civil Rights Subclass members' constitutional rights were violated, and they suffered injuries and damages, as alleged herein.

**COUNT FIVE**
**POLICY AND PRACTICE CLAIM**
**(42 U.S.C. § 1983)**
**(On behalf of Plaintiff and the Civil Rights Subclass against Defendant Heap)**

177.   Plaintiff restates and realleges the allegations of paragraphs 1 through 163, above, as though fully set forth herein.

178.   Plaintiff brings this Count individually and on behalf of members of the Civil Rights Subclass against Defendant Heap.

179. As described more fully herein, Defendant Heap is liable for the violations of Plaintiff's and Civil Rights Subclass members' constitutional rights by virtue of its policies, practices and customs, which included policies, practices and customs to intercept, monitor, capture and record all actions, interactions, data transmissions and communications of public-school students each time they accessed and navigated the Naviance platform, despite there being no probable cause or reasonable suspicion of any unlawful or improper conduct.

180. The actions of the Heap Doe Defendants were undertaken pursuant to the policies, practices and customs of Defendant Heap, which were approved, encouraged and/or ratified by policymakers for Heap with final policymaking authority.

181. One or more of the policies, practices and customs described in this Count was maintained and implemented by Defendant Heap with deliberate indifference to Plaintiff's and Civil Rights Subclass members' constitutional rights and was a moving force behind the violations of those rights.

182. As a direct and proximate result of Defendant Heap's actions and inactions, Plaintiff's and Civil Rights Subclass members' constitutional rights were violated, and they suffered injuries and damages, as alleged herein.

183. Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Defendant Heap will continue to cause great and irreparable injury to Plaintiff and Civil Rights Subclass members because Heap will continue to pursue its unlawful policies, practices and customs, as alleged herein. Plaintiff and Civil Rights Subclass members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the unlawful conduct of Heap.

**COUNT SIX**
**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**
**Cal. Penal Code § 631**
**(On behalf of Plaintiff and the Class against**
**Defendants PowerSchool Holdings and Heap)**

184.    Plaintiff restates and realleges the allegations of paragraphs 1 through 137, above, as though fully set forth herein.

185.    Plaintiff brings this Count individually and on behalf of members of the Class against Defendants PowerSchool Holdings and Heap.

186.    The California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq.*, sets forth its purpose as follows:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630.

187.    Under the CIPA, "any person who has been injured by a violation of [the CIPA] may bring an action against the person who committed the violation . . . ." Cal. Penal Code § 637.2(a).

188.    A violation of § 631(a) of the CIPA occurs if, among other things, a person "by means of any machine instrument, or contrivance, or in any other manner":

> [i] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or

> [ii] willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or

39

passing over any wire, line, or cable, or is being sent from, or received at any place within this state, or

[iii] uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or

[iv] aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above . . . .

Cal. Penal Code § 631(a) (paragraph numbers and line breaks added for readability).

189.    The applicability of Cal. Penal Code § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (the CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (the CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' internet browsing history).

190.    In violation of the CIPA, Defendant Heap:

a.      intentionally tapped, and made an unauthorized connection – electrically, inductively, or otherwise – with, the lines of internet communication between Defendant PowerSchool Holdings, on the one hand, and Plaintiff and Class members, on the other;

b.      willfully and without the consent of all parties to the communications, and in an unauthorized manner, read, attempted to read, and learned the contents and meaning of the communications, data transmissions and messages between Plaintiff and Class members, on the one hand, and

Defendant PowerSchool Holdings, on the other, while the same were in transit or passing over any wire, line, or cable, or being sent from, or received at any place within California;

c.      used or attempted to use the information obtained via its wiretapping to perform analysis on the communications, data transmissions and messages of Plaintiff and Class members while accessing and navigating the Naviance platform; and

d.      aided and agreed and conspired with Defendant PowerSchool Holdings and, on information and belief, Defendant Hobsons, to unlawfully do, permit and cause to be done the unlawful conduct alleged in subparagraphs (a), (b) and (c), above.

191.    On information and belief, Defendant Heap continues to engage in the unlawful conduct described in the preceding paragraph.

192.    In violation of the CIPA, Defendant PowerSchool Holdings aided, and agreed and conspired with, Defendant Heap to permit and cause to be done proscribed conduct under § 631(a) of the CIPA, as alleged herein, including but not limited to embedding and integrating Heap's JavaScript code into the Naviance platform.

193.    The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA or constitute "any other manner" as used in the CIPA:

a.      The computer codes and programs Defendant Heap used to intercept, monitor, capture and record Plaintiff's and Class members' communications and data transmissions while they were accessing and navigating the Naviance platform;

41

      b.      Plaintiff's and Class members' browsers;

      c.      Plaintiff's and Class members' computing and mobile devices;

      d.      Defendant Heap's web servers;

      e.      The web servers from which Defendant Heap intercepted, monitored, captured and recorded Plaintiff's and Class members' communications, data transmissions and messages while they were using a web browser to access and navigate the Naviance platform;

      f.      The computer codes and programs used by Defendant Heap to effectuate its interception, monitoring, capture and recording of Plaintiff's and Class members' communications, data transmissions and messages while they were using a browser to access and navigate the Naviance platform;

      g.      The plan Defendant Heap carried out to effectuate its interception, monitoring, capture, recording of Plaintiff's and Class members' communications, data transmissions and messages while they were using a web browser or mobile application to access and navigate the Naviance platform; and

      h.      Defendant Heap's JavaScript code embedded and integrated into the Naviance platform.

194.    Plaintiff and Class members did not consent to the unlawful conduct of Defendants PowerSchool Holdings and Heap, as alleged herein.

195.    Among the contents of communications, data transmissions and messages Defendant Heap intercepted, read, attempted to read and learned were: (a) the contents of Plaintiff's and Class members' confidential education and school student records and the

42

information contained therein, including answers to surveys and assessments, information regarding college and career goals and information regarding colleges in which Plaintiff and Class members were interested; and (b) email messages stored within the Naviance platform.

196. By engaging in the unlawful conduct alleged herein, Defendants PowerSchool Holdings and Heap violated Plaintiff's and the Class members' statutorily-protected right to privacy.

197. On information and belief, Defendant Heap's and Defendant PowerSchool Holdings' violations of the CIPA, as alleged herein, occurred in California.

198. As a result of the conduct alleged herein, under the CIPA, Defendants PowerSchool Holdings and Heap are each liable to Plaintiff and each Class member in the amount of, the greater of, $5,000 dollars per violation or three times the amount of actual damages.

199. Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Defendants PowerSchool Holdings and Heap will continue to cause great and irreparable injury to Plaintiff and Class members because PowerSchool Holdings and Heap will continue to unlawfully tap and intercept the contents of students' communications, data transmissions and messages within the Naviance platform while they access and navigate the platform. Plaintiff and Class members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the unlawful conduct of PowerSchool Holdings and Heap.

**COUNT SEVEN**
**VIOLATION OF THE CIPA**
**Cal. Penal Code § 632**
**(On behalf of Plaintiff and the Class against Defendant Heap)**

200.     Plaintiff restates and realleges the allegations of paragraphs 1 through 137, above, as though fully set forth herein.

201.     Plaintiff brings this Count individually and on behalf of members of the Class against Defendant Heap.

202.     Under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq.*, "any person who has been injured by a violation of [the CIPA] may bring an action against the person who committed the violation . . . ." Cal. Penal Code § 637.2(a).

203.     Section 632 of the CIPA prohibits every person, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, from eavesdropping upon or recording the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone or other device, except a radio. Cal. Penal Code § 632.

204.     In violation of the CIPA, Defendant Heap intentionally and without the consent of all parties, namely without the consent of Plaintiff and Class members, eavesdropped upon and recorded the confidential communications, data transmissions and messages between: (a) Defendant PowerSchool Holdings and Plaintiff and Class members; and, on information and belief, (b) Defendant Hobsons and Plaintiff and Class members, which communications occurred by means of the internet when Plaintiff and Class members accessed and navigated the Naviance platform.

205.     Defendant Heap accomplished its eavesdropping and recording through the use of an electronic amplifying or recording device or devices, including: (a) its JavaScript code that

was embedded and integrated into the Naviance platform; (b) its web servers; and (c) its computer code and programs that it utilized in connection with Plaintiff's and Class members' actions, interactions, data transmissions and communications within the Naviance platform.

206.     Plaintiff's and Class members' communications, data transmissions and messages within the Naviance platform, including their completion of assessments and surveys and exploration of colleges of interest, constituted education and school student records and were otherwise confidential.

207.     By engaging in the unlawful conduct alleged herein, Defendant Heap violated Plaintiff's and Class members' statutorily-protected right to privacy.

208.     On information and belief, Defendant Heap's violation of the CIPA, as alleged herein, occurred in California.

209.     As a result of the conduct alleged herein, under the CIPA, Defendant is liable to Plaintiff and each Class member in the amount of, the greater of, $5,000 dollars per violation or three times the amount of actual damages.

210.     Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Defendant Heap will continue to cause great and irreparable injury to Plaintiff and Class members in that Defendant and Heap will continue to unlawfully eavesdrop upon and record students' communications, data transmissions and messages while they access and navigate the Naviance platform. Plaintiff and Class members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end Heap's unlawful conduct.

**COUNT EIGHT**
**VIOLATION OF STORED COMMUNICATIONS ACT**
**18 U.S.C. § 2702(a)(1)**
**(On behalf of Plaintiff and the Class against**
**Defendants PowerSchool Holdings and Hobsons)**

211.     Plaintiff restates and realleges the allegations of paragraphs 1 through 137, above, as though fully set forth herein.

212.     Plaintiff brings this Count individually and on behalf of members of the Class against Defendants PowerSchool Holdings and Hobsons.

213.     Plaintiff brings this Count in the alternative to Counts Six and Seven, above.

214.     Pursuant to the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

215.     The Stored Communications Act defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2711(1); 18 U.S.C. § 2510(15).

216.     The Stored Communications Act defines "electronic communication" as "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce . . . ." 18 U.S.C. § 2711(1); 18 U.S.C. § 2510(12).

217.     The Stored Communications Act defines "electronic storage" as: "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic

communication service for purposes of backup protection of such communication." 18 U.S.C. § 2711(1); 18 U.S.C. § 2510(17).

218.    At relevant times, Defendants PowerSchool Holdings and Hobsons respectively provided an electronic communication service to the public, namely, a web-based email client that allowed users of the Naviance platform to send and receive email messages, which are electronic communications under the Stored Communications Act.

219.    At relevant times, email messages received by Plaintiff and Class members were in electronic storage, as defined by the Stored Communications Act, within the respective web-based email client of Defendants PowerSchool Holdings and Hobsons.

220.    While the email messages received by Plaintiff and Class members were in electronic storage within the respective web-based email client of Defendants PowerSchool Holdings and Hobsons, those defendants knowingly, willfully and intentionally divulged to Defendant Heap the contents of the emails by embedding and integrating Heap's JavaScript code into the Naviance platform.

221.    Plaintiff and Class members have been, and continue to be, aggrieved by Defendants PowerSchool Holdings' and Hobsons' violations of the Stored Communications Act.

222.    Pursuant to the Stored Communications Act, Plaintiff and Class members seek: (a) their actual damages and any profits made by Defendants PowerSchool Holdings and Hobsons as a result of their violations of the Stored Communications Act, but in no case shall each of their individual recoveries be less than the sum of $1,000; (b) punitive damages; (c) a reasonable attorney's fee and other litigation costs reasonably incurred; and (d) a declaration that PowerSchool Holdings' and Hobsons' conduct as alleged herein violated, and continues to violate, the Stored Communications Act.

223.    Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Defendant PowerSchool Holdings will continue to cause great and irreparable injury to Plaintiff and Class members in that Defendants PowerSchool Holdings continues to electronically store Plaintiff's and Class members' electronic communications. Plaintiff and Class members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the unlawful conduct of PowerSchool Holdings.

**COUNT NINE**
**VIOLATION OF THE ILLINOIS EAVESDROPPING ACT**
**720 Ill. Comp. Stat. 5/14-1, *et seq.***
**(On behalf of Plaintiff and the Illinois Subclass, against**
**Defendants PowerSchool Holdings, Hobsons and Heap)**

224.    Plaintiff restates and realleges the allegations of paragraphs 1 through 137, above, as though fully set forth herein.

225.    Plaintiff brings this Count individually and on behalf of members of the Illinois Subclass against Defendants PowerSchool Holdings, Hobsons and Heap.

226.    Plaintiff brings this Count in the alternative to Count Eight, above.

227.    Under the Illinois Eavesdropping Act, 720 Ill. Comp. Stat. 5/14-1, *et seq.*, it is unlawful for a person to knowingly and intentionally "intercept[], record[], or transcribe[], in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication." 720 Ill. Comp. Stat. 5/14-2(a)(3).

228.    Under the Illinois Eavesdropping Act, an injured party is entitled to civil remedies against both the eavesdropper and the eavesdropper's principal. 720 Ill. Comp. Stat. 5/14-6.

229.    Under the Illinois Eavesdropping Act, a "private electronic communication" means "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature

transmitted in whole or part by a wire, radio, pager, computer, electromagnetic, photo electronic or photo optical system, when the sending or receiving party intends the electronic communication to be private under circumstances reasonably justifying that expectation." 720 Ill. Comp. Stat. 5/14-1(e).

230.    Under the Illinois Eavesdropping Act, "surreptitious" means "obtained or made by stealth or deception, or executed through secrecy or concealment." 720 Ill. Comp. Stat. 5/14-1(g).

231.    Under the Illinois Eavesdropping Act, an "eavesdropper" is "any person, including any law enforcement officer and any party to a private conversation, who operates or participates in the operation of any eavesdropping device contrary to the provisions of [the Illinois Eavesdropping Act] or who acts as a principal . . . ." 720 Ill. Comp. Stat. 5/14-1(b).

232.    Under the Illinois Eavesdropping Act, an "eavesdropping device" is "any device capable of being used to hear or record oral conversations or intercept or transcribe electronic communications whether such conversation or electronic communication is conducted in person, by telephone, or by any other means." 720 Ill. Comp. Stat. 5/14-1(a).

233.    Under the Illinois Eavesdropping Act, a "principal" is any person who: "(1) [k]nowingly employs another who illegally uses an eavesdropping device in the course of such employment; or (2) [k]nowingly derives any benefit or information from the illegal use of an eavesdropping device by another; or (3) [d]irects another to use an eavesdropping device illegally on his or her behalf." 720 Ill. Comp. Stat. 5/14-1(c).

234.    Under the Illinois Eavesdropping Act, the information Plaintiff and Class members or Illinois Subclass members sent and received, and continue to send and receive, while using the Naviance platform, including responses to surveys and assessments, information about

interests in colleges and information regarding potential future careers and educational opportunities, as well as email communications, constituted – and continue to constitute – private electronic communications.

235.    Under the Illinois Eavesdropping Act, the following constitute eavesdropping devices, as they are capable of being used to record and intercept electronic communications, including the electronic communications of Plaintiff and Class members or Illinois Subclass members while accessing and navigating the Naviance platform:

a.    The computer codes and programs Defendant Heap used to intercept, monitor, capture and record Plaintiff's and Class members' or Illinois Subclass members' communications while they were accessing and navigating the Naviance platform;

b.    Plaintiff's and Class members' or Illinois Subclass members' browsers;

c.    Plaintiff's and Class members' or Illinois Subclass members' computing and mobile devices;

d.    Defendant Heap's web servers;

e.    The web servers from which Defendant Heap intercepted, monitored, captured and recorded Plaintiff's and Class members' or Illinois Subclass members' communications while they were using a web browser to access and navigate the Naviance platform;

f.    The computer codes and programs used by Defendant Heap to effectuate its interception, monitoring, capture and recording of Plaintiff's and Class members' or Illinois Subclass members' communications while they were using a browser to access and navigate the Naviance platform; and

g.    Defendant Heap's JavaScript code embedded and integrated into the Naviance platform.

236.    Defendant Heap was and continues to be an eavesdropper under the Illinois Eavesdropping Act because it has operated, and, on information and belief, continues to operate, an eavesdropping device on the Naviance platform.

237.    Defendant Heap committed, and continues to commit, eavesdropping under the Illinois Eavesdropping Act because it knowingly and intentionally intercepts and records, and has intercepted and recorded, private electronic communications to which it is not a party, namely, the private electronic communications alleged herein, without the consent of all parties to the private electronic communications.

238.    Plaintiff and Class members or Illinois Subclass members have not consented, and do not consent, to Defendant Heap's interception and recording of their private electronic communications while accessing and navigating the Naviance platform.

239.    Defendant PowerSchool Holdings was, and continues to be, an eavesdropper under the Illinois Eavesdropping Act because it acted, and continues to act, as a principal. PowerSchool Holdings was, and continues to be, a principal under the Illinois Eavesdropping Act because it: (a) knowingly derives and derived a benefit and information from the illegal use of Defendant Heap's eavesdropping device – including detailed information about students who use and used the Naviance platform, including Plaintiff and Class members or Illinois Subclass members; and (b) directs and directed Defendant Heap to illegally use an eavesdropping device on PowerSchool Holdings' behalf.

240.    On information and belief, Defendant Hobsons was an eavesdropper under the Illinois Eavesdropping Act because it acted as a principal. On information and belief, Hobsons

was a principal under the Illinois Eavesdropping Act because it: (a) knowingly derived a benefit and information from the illegal use of an eavesdropping device by Defendant Heap – including detailed information about students who used the Naviance platform, including Plaintiff and Class members or Illinois Subclass members; and (b) directed Defendant Heap to illegally use an eavesdropping on Hobsons' behalf.

241.    The unlawful conduct of Defendants PowerSchool Holdings, Hobsons and Heap, as alleged herein, has injured Plaintiff and Class members or Illinois Class members and entitles them to actual and punitive damages.

242.    Moreover, unless and until enjoined and restrained by order of this Court, the wrongful conduct of Defendants PowerSchool Holdings and Heap will continue to cause great and irreparable injury to Plaintiff and Class members or Illinois Subclass members in that Defendants PowerSchool Holdings and Heap will continue to unlawfully eavesdrop on students' private electronic communications, data transmissions and messages while they access and navigate the Naviance platform. Plaintiff and Class members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the unlawful conduct of PowerSchool Holdings and Heap.

## COUNT TEN
### INTRUSION UPON SECLUSION
**(On behalf of Plaintiff and the Class against Defendant Heap)**

243.    Plaintiff restates and realleges the allegations of paragraphs 1 through 137, above, as though fully set forth herein.

244.    Plaintiff brings this Count individually and on behalf of members of the Class against Defendant Heap.

245.    Plaintiff and Class members had a legitimate expectation of privacy in their sensitive and confidential education and school student records and the information contained therein and their actions, interactions, data transmissions and communications within the Naviance platform.

246.    Plaintiff and Class members were entitled to protection of this information against unauthorized intrusion by third parties.

247.    Through Defendant Heap's software and JavaScript code that was surreptitiously embedded and integrated within the Naviance platform, Heap, without authorization, intruded on, intercepted, monitored, recorded and captured Plaintiff's and Class members' sensitive and confidential education and school student records and the information contained therein, as well as the actions, interactions, data transmissions and communications of Plaintiff and Class members.

248.    Defendant Heap's unauthorized conduct – targeted towards school-age children – is highly offensive to a reasonable person.

249.    The intrusion was into a place or thing that was private and entitled to be private.

250.    Given that federal and state laws protect the information at issue, the promises of Defendants PowerSchool Holdings and Hobsons regarding the importance of privacy, and the

provisions of the Initial and Subsequent Contracts regarding the handling and treatment of Student Data and Confidential Information, it was reasonable for Plaintiff and Class members to believe that the information and activities described herein would be kept private and confidential and would not be disclosed without their authorization.

251.    Defendant Heap's conduct, as alleged herein, constitutes an unauthorized intrusion or prying into Plaintiff's and Class members' seclusion.

252.    Defendant Heap acted with a knowing state of mind when it engaged in the conduct alleged herein.

253.    As a direct and proximate result of the above acts of Defendant Heap, Plaintiff and Class members sustained injuries, damages and anguish and otherwise suffered.

254.    Unless and until enjoined and restrained by order of this Court, Defendant Heap's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class members in that Heap is still able to intrude on, intercept, monitor, record and capture students' sensitive and confidential private information and actions, interactions, data transmissions and communications without authorization. Plaintiff and Class members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class members.

### COUNT ELEVEN
### BREACH OF CONTRACT – THIRD PARTY BENEFICIARIES
**(On behalf of Plaintiff and the CPS Subclass against Defendant Hobsons)**

255.    Plaintiff restates and realleges the allegations of paragraphs 1 through 137, above, as though fully set forth herein.

256.    Plaintiff brings this Count individually and on behalf of members of the CPS Subclass against Defendant Hobsons.

257.    Defendant Chicago Public Schools and Defendant Hobsons entered into the Initial Contract which provided Chicago Public Schools and CPS Students, among others, with access to the Naviance platform.

258.    The term of the Initial Contract ran from July 1, 2015 through June 30, 2018, with two options to renew for periods of one year each. Defendant Chicago Public Schools and Defendant Hobsons exercised each renewal option, extending the term of the Initial Contract through June 30, 2020.

259.    The Initial Contract provided that it shall be governed as to performance and interpretation in accordance with the laws of the State of Illinois.

260.    Defendant Chicago Public Schools paid Defendant Hobsons monetary consideration in return for Hobsons making the Naviance platform available to Chicago Public Schools and CPS Students, among others.

261.    Defendant Chicago Public Schools and Defendant Hobsons intended for CPS Students, including Plaintiff and CPS Subclass members, to directly and substantially benefit from the Initial Contract, and CPS Students, including Plaintiff and CPS Subclass members, were intended third-party beneficiaries of the Initial Contract.

262.    For instance, with respect to the Naviance platform, the Initial Contract specifically prohibited Defendant Hobsons from imposing terms and conditions on CPS Students, including Plaintiff and CPS Subclass members, outside of those terms contained in the Initial Contract – *i.e.*, the Initial Contract made clear that CPS Students, including Plaintiff and CPS Subclass members, were intended to benefit from, and be protected by, the provisions of the Initial Contract.

263.   Further, the Initial Contract contained numerous provisions regulating and restricting Defendant Hobsons' use, protection, disclosure and transfer of Student Data, a form of Confidential Data, which provisions directly and intentionally benefitted CPS Students, including Plaintiff and CPS Subclass members. Moreover, the Initial Contract required Defendant Hobsons to comply with all applicable laws, including the FERPA and the ISSRA – laws that protects Plaintiff's and CPS Subclass members' education and school student records and the information contained therein.

264.   As a direct and intended beneficiary of the Initial Contract, Plaintiff may sue for breach of contract.

265.   Defendant Hobsons breached the Initial Contract by failing to perform its obligations thereunder that were intended to directly benefit Plaintiff and CPS Subclass members, including but not limited to, its obligations with respect to the use, protection, disclosure and transfer of Student Data.

266.   Defendant Hobsons also breached its duty of good faith and fair dealing under the Initial Contract.

267.   As a direct and proximate result of Defendant Hobsons' breach of the Initial Contract, Plaintiff and CPS Subclass members suffered injuries and damages, including the loss of control over their sensitive and confidential education and school student records and the information contained therein.

268.   Defendant Hobsons' breach of the Initial Contract was a direct and legal cause of Plaintiff's and CPS Subclass members' injuries and damages.

## COUNT TWELVE
### BREACH OF CONTRACT – THIRD PARTY BENEFICIARIES
### (On behalf of Plaintiff and the CPS Subclass against Defendant PowerSchool Holdings)

269.    Plaintiff restates and realleges the allegations of paragraphs 1 through 137, above, as though fully set forth herein.

270.    Plaintiff brings this Count individually and on behalf of members of the CPS Subclass against Defendant PowerSchool Holdings.

271.    Defendant Chicago Public Schools and Defendant Hobsons entered into the Subsequent Contract which provided Chicago Public Schools and CPS Students, among others, with access to the Naviance platform.

272.    The term of the Subsequent Contract ran from July 1, 2020 through June 30, 2023.

273.    In May 2022, Hobsons assigned and transferred to Defendant PowerSchool Holdings all rights, title, duties, obligations and interest in and to the Subsequent Contract. For the remainder of this Count, Defendants PowerSchool Holdings and Hobsons are collectively referred to as "PowerSchool Holdings."

274.    The Subsequent Contract provided that it shall be governed as to performance and interpretation in accordance with the laws of the State of Illinois.

275.    Defendant Chicago Public Schools paid Defendant PowerSchool Holdings monetary consideration in return for PowerSchool Holdings making the Naviance platform available to Chicago Public Schools and CPS Students, among others.

276.    Defendant Chicago Public Schools and Defendant PowerSchool Holdings intended for CPS Students, including Plaintiff and CPS Subclass members, to directly and

substantially benefit from the Subsequent Contract, and CPS Students, including Plaintiff and CPS Subclass members, were intended third-party beneficiaries of the Subsequent Contract.

277.    For instance, with respect to the Naviance platform, the Subsequent Contract specifically prohibited Defendant PowerSchool Holdings from imposing terms and conditions on CPS Students, including Plaintiff and CPS Subclass members, outside of those terms contained in the Subsequent Contract – *i.e.*, the Subsequent Contract made clear that CPS Students, including Plaintiff and CPS Subclass members, were intended to benefit from, and be protected by, the provisions of the Subsequent Contract.

278.    Further, the Subsequent Contract contained numerous provisions regulating and restricting Defendant PowerSchool Holdings' use, protection, disclosure and transfer of Student Data, a form of Confidential Information, which provisions directly and intentionally benefitted CPS Students, including Plaintiff and CPS Subclass members. Moreover, the Subsequent Contract required Defendant PowerSchool Holdings to comply with all applicable laws, including the FERPA and the ISSRA – laws that protect Plaintiff's and CPS Subclass members' education and school student records and the information contained therein.

279.    As a direct and intended beneficiary of the Subsequent Contract, Plaintiff may sue for breach of contract.

280.    Defendant PowerSchool Holdings breached the Subsequent Contract by failing to perform its obligations thereunder that were intended to directly benefit Plaintiff and CPS Subclass members, including but not limited to, its obligations with respect to the restrictions on the use, protection, disclosure and transfer of Student Data.

281.    Defendant PowerSchool Holdings also breached its duty of good faith and fair dealing under the Subsequent Contract.

282.     As a direct and proximate result of Defendant PowerSchool Holdings' breach of the Subsequent Contract, Plaintiff and CPS Subclass members suffered injuries and damages, including the loss of control over their sensitive and confidential education and school student records and the information contained therein.

283.     Defendant PowerSchool Holdings' breach of the Subsequent Contract was a direct and legal cause of Plaintiff's and CPS Subclass members' injuries and damages.

**COUNT THIRTEEN**
**BREACH OF CONTRACT – THIRD PARTY BENEFICIARIES**
**(On behalf of Plaintiff and the CPS Subclass**
**against Defendant Heap)**

284.     Plaintiff restates and realleges the allegations of paragraphs 1 through 137 and 271 through 278, above, as though fully set forth herein.

285.     Plaintiff brings this Count individually and on behalf of members of the CPS Subclass against Defendant Heap.

286.     Plaintiff brings this Count in the alternative to Counts Six through Nine, above.

287.     Pursuant to the Subsequent Contract, Defendant PowerSchool Holdings was required to cause the obligations pertaining to the use, disclosure and handling of Student Data and Confidential Information – as defined in the Subsequent Contract – to flow down to PowerSchool Holdings' volunteers, employees, agents and subcontractors in order to cause the obligations to be imposed on and required of those persons and entities.

288.     On information and belief, Defendant Heap was a subcontractor to Defendant PowerSchool Holdings and, pursuant to its subcontract with PowerSchool Holdings, was bound by the obligations described in the preceding paragraph and set forth in the relevant portions of the Subsequent Contract (the "Heap Contract").

289. On information and belief, the Heap Contract was supported by consideration, including that Defendant Heap provided Defendant PowerSchool Holdings with its software and JavaScript code in return for a monetary payment.

290. Defendant Heap and Defendant PowerSchool Holdings intended for CPS Students, including Plaintiff and CPS Subclass members, to directly and substantially benefit from the Heap Contract, and CPS Students, including Plaintiff and CPS Subclass members, were intended third-party beneficiaries of the Heap Contract.

291. For instance, as set forth in the Subsequent Contract, the Heap Contract regulated Defendant Heap's use, protection, disclosure and transfer of the CPS Students' Student Data, including the Student Data of Plaintiff and CPS Subclass members.

292. As a direct and intended beneficiary of the Heap Contract, Plaintiff may sue for breach of contract.

293. Defendant Heap breached the Heap Contract by failing to perform its obligations thereunder that were intended to directly benefit Plaintiff and CPS Subclass members, including but not limited to, its obligations with respect to the use of Student Data.

294. As a direct and proximate result of Defendant Heap's breach of the Heap Contract, Plaintiff and CPS Subclass members suffered injuries and damages, including the loss of control over their sensitive and confidential education and school student records and the information contained therein.

295. Defendant Heap's breach of the Heap Contract was a direct and legal cause of Plaintiff's and CPS Subclass members' injuries and damages.

**COUNT FOURTEEN**
**NEGLIGENCE**
**(On behalf of Plaintiff and the CPS Subclass**
**against Defendant Chicago Public Schools)**

296.    Plaintiff restates and realleges the allegations of paragraph 1 through 137, above, as though fully set forth herein.

297.    Plaintiff brings this Count individually and on behalf of members of the CPS Subclass against Defendant Chicago Public Schools.

298.    Under the FERPA and the ISSRA, as well as pursuant to the Initial and Subsequent Contracts, Defendant Chicago Public Schools had a duty to exercise reasonable care in overseeing, handling, securing and protecting from unauthorized disclosure, interception, access and use Plaintiff's and CPS Subclass members' education and school student records and the information contained therein, as well as other Student Data, as defined in the Initial and Subsequent Contracts.

299.    Defendant Chicago Public School also had a duty to ensure that contractors with whom it entrusted Plaintiff's and CPS Subclass members' education records, school student records and other Student Data adhered to their contractual obligations with respect to the records and data.

300.    Once in possession and custody of Plaintiff's and CPS Subclass members' education records, school student records and other Student Data, Defendant Chicago Public Schools undertook and owed a duty of care to Plaintiff and CPS Subclass members to exercise reasonable care to secure and safeguard their sensitive and confidential records and data.

301.    Defendant Chicago Public Schools owed a duty of care to not subject Plaintiff's and CPS Subclass members' sensitive and confidential records and data, or Plaintiff and CPS Subclass members themselves, to an unreasonable risk of harm from the unauthorized disclosure,

interception or use of, or access to, the sensitive and confidential records and data of Plaintiff and CPS Subclass members because Plaintiff and CPS Subclass members were foreseeable and probable victims from inadequate safeguards.

302.    Through its actions and/or failures to act, Defendant Chicago Public Schools unlawfully breached the duties owed to Plaintiff and CPS Subclass members by failing to exercise reasonable care to secure and keep private the sensitive and confidential records and data of Plaintiff and CPS Subclass members with which Chicago Public Schools was entrusted, including: (a) allowing unauthorized access to and interception of Plaintiff's and CPS Subclass members' education records, school student records and other Student Data on a routine, regular and automatic basis; (b) failing to provide adequate oversight of the sensitive and confidential records and data of Plaintiff and CPS Subclass members with which Chicago Public Schools was entrusted; and (c) failing to ensure that Defendants PowerSchool Holdings and Hobsons performed their obligations under the Initial and Subsequent Contracts with respect to education records, student school records and other Student Data.

303.    Through its actions and/or failures to act, Defendant Chicago Public Schools allowed unmonitored access to Plaintiff's and CPS Subclass members' education records, school student records and other Student Data.

304.    Through its actions and/or failures to act, Defendant Chicago Public Schools failed to provide adequate supervision and oversight of Plaintiff's and CPS Subclass members' education records, school student records and other Student Data.

305.    Based on the publicly and widely known fact that providers of online services misuse and mishandle data with which they are entrusted, at relevant times Defendant Chicago Public Schools should have known the risks inherent in transferring the responsibility for the

education records, school student records and other Student Data of Plaintiff and CPS Subclass members to Defendants PowerSchool Holdings and Hobsons and the concomitant necessity to closely oversee the actions of those Defendants.

306.     Due to Defendant Chicago Public Schools' knowledge that the failure of Defendants PowerSchool Holdings and/or Hobsons to properly handle and use the sensitive and confidential education records, school student records and other Student Data of hundreds of thousands of CPS Students, including Plaintiff and CPS Subclass members, Chicago Public Schools had a duty to adequately protect those records and data.

307.     Defendant Chicago Public Schools had and has a special relationship with Plaintiff and CPS Subclass members. Plaintiff and CPS Subclass members were and are compelled to entrust Chicago Public Schools with their sensitive and confidential education records, school student records and other Student Data. At relevant times, Plaintiff and CPS Subclass members understood that Chicago Public Schools would take adequate precautions and measures to safeguard those records and data.

308.     Defendant Chicago Public School's own conduct also created a foreseeable risk of harm to Plaintiff and CPS Subclass members and to their sensitive and confidential education records, school student records and other Student Data. Chicago Public Schools' misconduct included failing to: (a) oversee and monitor the activities and conduct of Defendants PowerSchool Holdings and Hobsons; and (b) ensure that provisions of the Initial and Subsequent Contracts designed to protect the education records, school student records and other Student Data of CPS Students, including Plaintiff and CPS Subclass members, were followed and otherwise properly adhered to.

309.    Defendant Chicago Public Schools breached the above-alleged duties to Plaintiff and CPS Subclass members by, among other things: (a) creating a foreseeable risk of harm through the above-alleged actions and/or failures to act; and (b) failing to implement adequate protocols and practices sufficient to protect Plaintiff's and CPS Subclass members' education records, school student records and other Student Data from unauthorized access and disclosure.

310.    Through Defendant Chicago Public Schools' acts and omissions, as alleged herein, Chicago Public Schools unlawfully breached its duty to adequately protect and secure Plaintiff's and CPS Subclass members' sensitive and confidential education records, school student records and other Student Data while they were within Chicago Public Schools' control.

311.    Defendant Chicago Public Schools' conduct was grossly negligent and departed from all reasonable standards of care, including but not limited to: (a) failing to adequately protect the sensitive and confidential education records, school student records and other Student Data of Plaintiff and CPS Subclass members; (b) failing to conduct regular audits of Defendants PowerSchool Holdings and Hobsons with respect to their handling of Plaintiff's and CPS Subclass members' sensitive and confidential records and data; and (c) failing to provide adequate and appropriate supervision and oversight of PowerSchool Holdings and Hobsons.

312.    Neither Plaintiff nor any CPS Subclass member contributed to the unlawful and unauthorized interception of and access to their sensitive and confidential education records, school student records and other Student Data.

313.    Defendant Chicago Public Schools' failure to exercise reasonable care in safeguarding Plaintiff's and CPS Subclass members' sensitive and confidential education records, school student records and other Student Data was the direct and proximate cause of

Plaintiff's and CPS Subclass members' sensitive and confidential records and data being intercepted and accessed or, alternatively, disclosed, without authorization, as alleged herein.

314. Defendant Chicago Public Schools breached its duties to Plaintiff and CPS Subclass members through its actions and/or failures to act, as alleged herein.

315. As a direct and proximate result of Defendant Chicago Public Schools' breach of its duties, Plaintiff and CPS Subclass members suffered damages including, but not limited to damages from losing control over their sensitive and confidential records and data and the distress caused by the magnitude and frequency of the unauthorized interceptions or, alternatively, disclosures.

**COUNT FIFTEEN**
**VIOLATION OF THE ISSRA – 105 Ill. Comp. Stat. 10/1, *et seq.***
**(On behalf of Plaintiff and the Illinois Subclass**
**against Defendant PowerSchool Holdings)**

316. Plaintiff restates and realleges the allegations of paragraphs 1 through 137, as though fully set forth herein.

317. Plaintiff brings this Count individually and on behalf of members of the Illinois Subclass against Defendant PowerSchool Holdings.

318. Plaintiff brings this Count in the alternative to Counts Six, Seven and Nine, above.

319. Under the ISSRA, "[n]o school student records or information contained therein may be released, transferred, disclosed or otherwise disseminated," unless a specified exception applies. 105 Ill. Comp. Stat. 10/6(a).

320. Defendant PowerSchool is a school under the ISSRA because it is a person or institution which maintains school student records from more than one school.

321.    Defendant PowerSchool wilfully or, in the alternative, negligently, violated the ISSRA by releasing, transferring, disclosing and otherwise disseminating school student records of Illinois students, including Plaintiff and Illinois Subclass members, where no exception to the prohibition on such release, transfer, disclosure or dissemination applied.

322.    Plaintiff and Illinois Subclass members are aggrieved and injured under the ISSRA as a result of Defendant PowerSchool Holdings unlawful conduct.

323.    Defendant PowerSchool Holdings is liable to Plaintiff and Illinois Subclass members for their damages, the costs of this action and reasonable attorneys' fees.

324.    Unless and until enjoined and restrained by order of this Court, Defendant PowerSchool Holdings' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Illinois Subclass members because PowerSchool Holdings may continue to engage in its unlawful conduct. Plaintiff and Illinois Subclass Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end PowerSchool's unlawful conduct.

**COUNT SIXTEEN**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class against**
**Defendants PowerSchool Holdings, Hobsons and Heap)**

325.    Plaintiff restates and realleges the allegations of paragraphs 1 through 137, as though fully set forth herein.

326.    Plaintiff brings this Count individually and on behalf of members of the Class against Defendants PowerSchool Holdings, Hobsons and Heap.

327.    To the detriment of Plaintiff and Class members, Defendants PowerSchool Holdings, Hobsons and Heap have been, and/or continue to be, unjustly enriched as a result of their wrongful conduct, as alleged herein.

66

328.     Defendants PowerSchool Holdings, Hobsons and Heap obtained benefits from Plaintiff and Class members through inequitable means, in that, without authorization, those Defendants improperly used and disclosed Plaintiff's and Class members' sensitive and confidential education records, school student records and other Student Data and profited therefrom. PowerSchool, Hobsons and Heap did not compensate Plaintiff and Class members for the benefits received from the above-described conduct.

329.     Defendants PowerSchool Holdings, Hobsons and Heap appreciated, accepted and retained the benefits bestowed upon them under inequitable and unjust circumstances arising from their unlawful conduct, as alleged herein.

330.     Plaintiff and Class members have no adequate remedy at law.

331.     Under the circumstances and under the principles of equity and good conscience, it would be unjust and unfair for Defendants PowerSchool Holdings, Hobsons and Heap to retain any of the benefits obtained from Plaintiff and Class members.

332.     Defendants PowerSchool Holdings, Hobsons and Heap should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class members, proceeds that they unjustly received in connection with the sensitive and confidential education records, school student records and other Student Data of Plaintiff and Class members.

**COUNT SEVENTEEN**
*RESPONDEAT SUPERIOR*
**(As to Defendant PowerSchool Holdings)**

333.     Plaintiff restates and realleges the allegations of paragraphs 1 through 163, as though fully set forth herein.

334.     In committing the alleged acts in the preceding paragraphs, each of the PowerSchool Doe Defendants was a member of, and agent of, Defendant PowerSchool Holdings, acting at all relevant times within the scope their employment or agency.

335.     Defendant PowerSchool Holdings is liable as a principal for all torts committed by its agents.

**COUNT EIGHTEEN**
***RESPONDEAT SUPERIOR***
**(As to Defendant Hobsons)**

336.     Plaintiff restates and realleges the allegations of paragraphs 1 through 163, as though fully set forth herein.

337.     In committing the alleged acts in the preceding paragraphs, each of the Hobsons Doe Defendants was a member of, and agent of, Defendant Hobsons, acting at all relevant times within the scope their employment or agency.

338.     Defendant Hobsons is liable as a principal for all torts committed by its agents.

**COUNT NINETEEN**
***RESPONDEAT SUPERIOR***
**(As to Defendant Heap)**

339.     Plaintiff restates and realleges the allegations of paragraphs 1 through 163, as though fully set forth herein.

340.     In committing the alleged acts in the preceding paragraphs, each of the Heap Doe Defendants was a member of, and agent of, Defendant Heap, acting at all relevant times within the scope their employment or agency.

341.     Defendant Heap is liable as a principal for all torts committed by its agents.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class and Subclasses, respectfully requests that the Court:

a.  Certify the proposed Class and Subclasses, name Plaintiff the representative of the proposed Class and Subclasses and appoint Plaintiff's counsel as Class counsel;

b.  Award Plaintiff and members of the proposed Class and Subclasses statutory, compensatory, punitive, exemplary, consequential, general and any other type of permissible damages in amounts to be determined at trial;

c.  Grant permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts and practices alleged herein;

d.  Enter an order declaring that Defendants violated the constitutional and statutory provisions alleged herein;

e.  Award Plaintiff and members of the proposed Class and Subclasses pre-judgment and post-judgment interest as permitted by law;

f.  Award to Plaintiff the costs and expenses of the action and reasonable attorneys' fees; and

g.  Grant all such other relief as it deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: August 18, 2023

Respectfully submitted,

Q.J., a minor, through his parent and legal guardian, J.J., individually and on behalf of all others similarly situated,

By:     /s/ Scott R. Drury
SCOTT R. DRURY
*Counsel for Plaintiff and Putative Class Members*

Scott R. Drury
DRURY LEGAL, LLC
6 Carriage Lane
Highwood, Illinois 60040
(312) 358-8225
scott@drurylegal.com