IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Q.J., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:23-cv-5689 |
| POWERSCHOOL HOLDINGS LLC; | ) | |
| HOBSONS, INC., also known as HOBSONS | ) | Judge Jorge L. Alonso |
| EDUCATIONAL SERVICES, INC.; HEAP | ) | |
| INC.; BOARD OF EDUCATION OF THE | ) | Magistrate Judge Daniel P. McLaughlin |
| CITY OF CHICAGO, commonly known as | ) | |
| CHICAGO PUBLIC SCHOOLS; UNKNOWN | ) | |
| EMPLOYEES AND OFFICERS OF | ) | |
| POWERSCHOOL HOLDINGS LLC; | ) | **JURY TRIAL DEMANDED** |
| UKNOWN EMPLOYEES AND OFFICERS | ) | |
| OF HOBSONS, INC.; and UNKNOWN | ) | |
| EMPLOYEES AND OFFICERS OF HEAP | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Pursuant to the Court's January 2, 2025 Order (Dkt. 113), Plaintiff Q.J., ("Plaintiff"),

individually and on behalf of all other similarly situated individuals, by and through his counsel,

brings this action against Defendants PowerSchool Holdings LLC ("PowerSchool"); Hobsons,

Inc., also known as Hobsons Educational Services, Inc. ("Hobsons"); Heap Inc. ("Heap"); Board

of Education of the City of Chicago, commonly known as Chicago Public Schools ("Chicago

Public Schools" or "CPS"); Unknown Employees and Officers of PowerSchool Holdings LLC

(the "PowerSchool Doe Defendants"); Unknown Employees and Officers of Hobsons, Inc. (the

"Hobsons Doe Defendants"); and Unknown Officers and Employees of Heap Inc. (the "Heap Doe

Defendants") (all defendants, collectively, "Defendants"; all Doe defendants, collectively "Doe

1

Defendants"), based upon personal knowledge of the facts pertaining to Q.J. and on information and belief as to all other matters.

## NATURE OF THE CASE

1. Every school day, millions of public-school students in the United States enter classrooms throughout the country. However, unlike the past, these students do not sit at their desks and open their schoolbooks for another day of learning. Schoolbooks have been replaced by laptops, tablets and other electronic devices. These devices are fueled by an industry that markets its products as "education technology" or "ed tech." While the benefits of such products are questionable, what is not, is the amount of data they gather about the schoolchildren that use them.

2. The Federal Trade Commission ("FTC") has declared that "[c]hildren should not have to needlessly hand over their data and forfeit their privacy in order to do their schoolwork . . . especially given the wide and increasing adoption of [education technology] tools."[1]

3. Yet, Defendants PowerSchool, Hobsons and Heap, as well as their employees and agents – including the Doe Defendants, have caused millions of school students to both hand over their data and forfeit their privacy, albeit without the students' knowledge or consent, in violation of the United States Constitution, federal and state statutes and common law.

4. Defendants PowerSchool, Hobsons and Heap carried out their unlawful conduct through a purported education product, among others, known as Naviance (hereinafter, the "Naviance platform" or "Naviance") – an online platform offered by PowerSchool, and prior to that by Hobsons, that is, and has been, used by numerous schools throughout the United States, including schools operated by Defendant Chicago Public Schools.

---

[1] FTC, *Policy Statement of the Federal Trade Commission on Education Technology and the Children's Online Privacy Protection Act* (May 19, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/Policy%20Statement%20of%20the%20Federal%20Trade%20Commission%20on%20Education%20Technology.pdf (last accessed on Jan. 12, 2025).

5.      Defendants PowerSchool and Hobsons engaged in their unlawful conduct as agents of Defendant Chicago Public Schools with actual and apparent authority to act on behalf of Chicago Public Schools. Chicago Public Schools is vicariously liable for the unlawful conduct of PowerSchool and Hobsons.

6.      At relevant times, students enrolled in schools or school districts that have contracted with Defendant PowerSchool and/or Defendant Hobsons for use of the Naviance platform were, and continue to be, provided with Naviance accounts through their respective schools or school districts.

7.      At relevant times, through online surveys, assessments and other mechanisms, the Naviance platform, among other online products offered by Defendants PowerSchool and Hobsons, collected and obtained, and continues to collect and obtain, sensitive and confidential personal information about students, including education and school student records and the information contained therein.

8.      Unbeknownst to Plaintiff and members of the Nationwide Class and Subclasses (defined below and collectively referred to  "Class Members,") and without their consent, Defendants PowerSchool and Hobsons aided and conspired with Defendant Heap and other third parties, such as Google LLC ("Google"), Microsoft Corporation ("Microsoft") and ███████ ███████, to unlawfully intercept – without consent, probable cause or reasonable suspicion – the confidential and sensitive communications of Plaintiff and Class Members while using the Naviance platform and ████████████████████████████████████.

9.      Defendants' conduct as alleged herein, constitutes an extreme invasion of Plaintiff's and Class Members' privacy in violation of their Fourth and Fourteenth Amendment rights under the United States Constitution, as well as their rights under federal and state statutes

and common law. Given the secret and undisclosed nature of Defendants' conduct, additional evidence supporting Plaintiff's claims, including the full extent of Defendants' unlawful conduct, and the way in which the sensitive and confidential information and data was used, will be revealed in discovery.

## PARTIES

### *Plaintiff Q.J.*

10. Plaintiff Q.J. resides in Cook County, Illinois.

11. At relevant times, Plaintiff Q.J. was a student enrolled at various schools operated by Defendant Chicago Public Schools.

### *Defendants*

#### *Defendant PowerSchool Holdings LLC*

12. Defendant PowerSchool Holdings LLC is a Delaware limited liability company with its principal place of business located in Folsom, California and additional offices in Illinois, among other places.

13. Defendant PowerSchool is a subsidiary of PowerSchool Holdings, Inc. Prior to October 2024, PowerSchool Holdings, Inc. was a publicly-traded company listed on the New York Stock Exchange. On or about October 1, 2024, PowerSchool Holdings, Inc. was acquired by Bain Capital for approximately $5.6 billion. In connection with that acquisition, PowerSchool Holdings, Inc. was delisted from the New York Stock Exchange.

14. Defendant PowerSchool holds itself out as the leading provider of cloud-based software to the kindergarten through twelfth-grade ("K-12") education market and serves more than ninety of the top 100 school districts by enrollment in the United States, including, at relevant times, Defendant Chicago Public Schools.

15. Over 80% of all K-12 students in the United States and Canada use products provided by Defendant PowerSchool, including Naviance.

16. At relevant times, Defendant PowerSchool, through its employees and officers – including the PowerSchool Doe Defendants – embedded and integrated Defendant Heap's data analytics platform and code, as well as the code of Google, Microsoft and ███, into the Naviance platform, ████████████████████████████████, resulting in, *inter alia*, Plaintiff and Class Members being: (a) subjected to repeated searches and seizures without probable cause or reasonable suspicion that Plaintiff or Class Members engaged in any wrongdoing; and (b) otherwise subjected to extreme invasions of their privacy.

17. At relevant times, Defendant PowerSchool was a state actor engaged in state action because Defendant Chicago Public Schools and, on information and belief, other public schools and school districts throughout the United States, delegated to PowerSchool their public function of collecting, storing, handling, protecting, overseeing and otherwise maintaining education and school student records.

18. At relevant times, Defendant PowerSchool was an agent of Defendant Chicago Public Schools in connection with services PowerSchool provided on behalf of Chicago Public Schools, with actual and apparent authority to act on behalf of Chicago Public Schools.

### *Defendant Hobsons, Inc.*

19. At relevant times, Defendant Hobsons, Inc. was a wholly-owned subsidiary of Defendant PowerSchool.

20. Defendant PowerSchool acquired all of the equity in Defendant Hobsons in or about March 2021.

21. Prior to the acquisition of Defendant Hobsons by Defendant PowerSchool, Hobsons was a Delaware corporation with its principal place of business in – on information and belief – Cincinnati, Ohio. Hobsons remained a company in good standing in at least one state until in or around June 2024.

22. Prior to its acquisition by Defendant PowerSchool, Defendant Hobsons operated and offered the Naviance platform to schools and school districts throughout the United States, including to Defendant Chicago Public Schools.

23. At relevant times, Defendant Hobsons, through its employees and officers – including the Hobsons Doe Defendants – embedded and integrated Defendant Heap's data analytics platform and code, as well as the code of Google, Microsoft and ███, into the Naviance platform, ████████████████████████████████████, resulting in, *inter alia*, Plaintiff and Class Members being: (a) subjected to repeated searches and seizures without probable cause or reasonable suspicion that Plaintiff or Class Members engaged in any wrongdoing; and (b) otherwise subjected to extreme invasions of their privacy.

24. At relevant times, Defendant Hobsons was a state actor engaged in state action because Defendant Chicago Public Schools and, on information and belief, other public schools and school districts throughout the United States, delegated to Hobsons their public function of collecting, storing, handling, protecting, overseeing and otherwise maintaining education and school student records.

25. At relevant times, Defendant Hobsons was an agent of Defendant Chicago Public Schools in connection with services Hobsons provided on behalf of Chicago Public Schools, with actual and apparent authority to act on behalf of Chicago Public Schools.

***Defendant Heap Inc.***

26.     Defendant Heap Inc. is a Delaware corporation with its principal place of business located in San Francisco, California.

27.     Defendant Heap is a software-as-a-service provider that offers its customers a data analytics platform that, among other things, automatically captures all of the data of its customers' website users while those users access and navigate the websites ("Autocapture") – *i.e.*, "What they click. Where they go. What they do, even when you're not looking."

28.     At relevant times, Defendant Heap, through its employees and officers – including the Heap Doe Defendants – and via Autocapture, subjected Plaintiff and Class Members to: (a) repeated searches and seizures without probable cause or reasonable suspicion that Plaintiff or Class Members engaged in any wrongdoing; and (b) extreme invasions of their privacy.

29.     At relevant times, Defendant Heap was a state actor engaged in state action because Defendant PowerSchool and, on information and belief, Defendant Hobsons, in their roles as state actors, practically controlled and directed Heap with respect to its surreptitious and non-consensual interception of Plaintiff's and Class Members' sensitive and confidential communications within the Naviance platform, ████████████████████████████████████, which communications included education and student school records.

***Defendant Board of Education of the City of Chicago***

30.     Defendant Board of Education of the City of Chicago, commonly known as Chicago Public Schools, is a body politic and corporate organized under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois.

31.     Chicago Public Schools is a school district within the State of Illinois that maintains a system of free schools within Chicago, Illinois, comprised of over 600 schools.

32.     As of the start of the 2024-2025 school year, over 325,000 students were enrolled in schools operated by Defendant Chicago Public Schools.

*The Doe Defendants*

33.     The PowerSchool Doe Defendants are unknown employees and officers of Defendant PowerSchool who, among other things, were involved in the violations of the rights of Plaintiff and Class Members, as alleged herein. One or more of the PowerSchool Doe Defendants are or were policymakers with final policymaking authority. Plaintiff refers to these defendants using fictitious names until he can ascertain their identities. At relevant times, the PowerSchool Doe Defendants were acting under color of law and within the scope of their employment. Plaintiff brings suit against the PowerSchool Doe Defendants in their individual capacities.

34.     The Hobsons Doe Defendants are unknown employees and officers of Defendant Hobsons who, among other things, were involved in the violations of the rights of Plaintiff and Class Members, as alleged herein. One or more of the Hobsons Doe Defendants are or were policymakers with final policymaking authority. Plaintiff refers to these defendants using fictitious names until he can ascertain their identities. At relevant times, the Hobsons Doe Defendants were acting under color of law and within the scope of their employment. Plaintiff brings suit against the Hobsons Doe Defendants in their individual capacities.

35.     The Heap Doe Defendants are unknown employees and officers of Defendant Heap who, among other things, were involved in the violations of the rights of Plaintiff and Class Members, as alleged herein. Plaintiff refers to these defendants using fictitious names until he can ascertain their identities. At relevant times, the Heap Doe Defendants were acting under color of law and within the scope of their employment. Plaintiff brings suit against the Heap Doe Defendants in their individual capacities.

8

**JURISDICTION AND VENUE**

*Subject Matter Jurisdiction*

36.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under laws of the United States, namely, 42 U.S.C. § 1983 and 18 U.S.C. §§ 2511 and 2701.

37.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action is a class action in which the aggregate amount in controversy for the proposed classes exceeds $5 million, and at least one member of the proposed nationwide class is a citizen of a state different from those of Defendants.

38.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

*Personal Jurisdiction – Defendant Chicago Public Schools*

39.     This Court has personal jurisdiction over Defendant Chicago Public Schools because it is a body politic and corporate organized under the laws of the State of Illinois, with its principal place of business located in Cook County, Illinois.

*Personal Jurisdiction – Defendants PowerSchool and Hobsons*

40.     This Court has personal jurisdiction over Defendants PowerSchool and Hobsons because relevant contracts with Defendant Chicago Public Schools expressly provide that PowerSchool and Hobsons "irrevocably submit[] [themselves] to the original jurisdiction of those courts located in the County of Cook, State of Illinois, with regard to any controversy arising out [of], or relating to, or in any way concerning the execution or performance of [the contracts]." Plaintiff Q.J. is a direct and intended third-party beneficiary of the contracts at issue and brings claims herein arising out of, relating to and otherwise concerning the performance of those

9

contracts. Moreover, a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in this State, including the negotiation and formation of the above-described contracts between Chicago Public Schools, on the one hand, and PowerSchool and Hobsons, on the other.

***Personal Jurisdiction – Defendant Heap***

41.     This Court has personal jurisdiction over Defendant Heap because it: (a) purposefully availed itself of the privilege of conducting business in Illinois and/or purposefully directed its activities at the state; (b) the injuries of Plaintiff and Class Members relate to Heap's forum-related activities; and (c) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

42.     In connection with its alleged unlawful interception of Plaintiff's and Class Members' sensitive and confidential communications while using Naviance, ███████████ ████████████████████████████████████████, Defendant Heap: (a) systematically, continuously and surreptitiously reached into Illinois to install computer cookies (files on a user's device that store metadata about the user) in Illinois students' devices, including the devices of Plaintiff and Illinois and CPS Student Subclass Members (defined below), to carry out its alleged wiretapping and eavesdropping activities; (b) systematically, continuously and surreptitiously reached into Illinois to store a unique Heap-assigned user ID ("Heap User ID") within each cookie it installed in Illinois to uniquely identify each user; (c) used the above-described cookies and Heap User IDs to amass individual profiles of the Illinois students, including Plaintiff and Illinois and CPS Student Subclass Members; and (d) provided location-based analytics information to its customers based on the amassed profiles.

43.     Specifically, with respect to Naviance users residing in Illinois, including Plaintiff and Illinois and CPS Student Subclass Members, Defendant Heap reached into Illinois to install a

cookie on each device used by each Illinois Naviance user. Heap then stored a Heap User ID in each cookie.

44. At relevant times, due to the manner in which Defendant Heap's data analytics platform and code was programmed, if a user visited a website on varying occasions using two different devices, Heap's data analytics platform and code recognized two different users because each device had a different cookie. To address this issue, Heap also offered a function through which Heap could identify the user on each device and link the "two users" into a single identified user.

45. Once linked, Defendant Heap was able to track the identified users across different domains. In this manner, Heap could stitch together each user's behavior across the user's various Naviance sessions in order to get a complete view of the user's journey within Naviance and outside of Naviance.

46. Defendants Hobsons and PowerSchool configured the Heap software to allow Defendant Heap ███████████████████████████████████████████

███████████████████████████████████████

47. After reaching into Illinois to install cookies in the devices of Illinois Naviance users, including Plaintiff and Illinois and CPS Student Subclass Members, and to store Heap User IDs therein, Defendant Heap then used those cookies and Illinois User IDs to amass individual profiles of the Illinois users. Among the information collected from the Illinois users, including Plaintiff and Illinois and CPS Student Subclass Members – and associated by Heap with the users' amassed profiles – was their city, state and IP addresses. Heap captured this geolocation data to allow their customers to segment user behavior by geographic region to understand if there were

different trends in different regions. Thus, Heap had a specific business purpose for reaching into Illinois to install cookies and assign Heap User IDs.

48. On information and belief, based on representations Defendant Heap has made to the Court (Dkt. 104 at CM/ECF 9), at relevant times, Heap installed 1.62 million cookies in the devices of Illinois Naviance users, including Plaintiff and Illinois and CPS Student Subclass Members, and stored 1.62 million Heap User IDs therein, in order to amass a profile regarding each individual Illinois user.

49. Further, on information and belief, Defendant Heap surreptitiously: (a) intercepted approximately 468 million discrete Illinois-user communications without consent or probable cause or reasonable suspicion that a crime had been committed; and (b) affiliated each of those 100s of millions of communications with a unique Illinois user, including Plaintiff and Illinois and CPS Student Subclass Members, for its own business purposes.

50. Thus, at relevant times, Defendant Heap purposefully availed itself of the privilege of conducting business in Illinois and/or purposefully directed its activities at Illinois by: (a) reaching into Illinois at least 1.62 million times to install 1.62 million cookies in the devices of Illinois Naviance users, including Plaintiff and Illinois and CPS Student Subclass Members; and (b) storing a total of 1.62 million Heap User IDs within those Illinois cookies. Importantly, the injuries complained of herein relate to Heap's forum-related activities, as Heap's installation of cookies in the devices of Illinois Naviance users, and Heap's storage of unique Heap User IDs in those cookies, was a central part of the way in which Heap surreptitiously intercepted 100s of millions of communications of Illinois Naviance users on an individualized basis and amassed individual profiles based thereon.

12

51.     Given that Defendant Heap continuously and systematically reached into Illinois to install cookies in the devices of Illinois Naviance users, including Plaintiff and Illinois and CPS Student Subclass Members, and store Heap User IDs therein in order to amass individualized profiles that it used for its business purposes, exercising jurisdiction comports with traditional notions of fair play and substantial justice.

***Venue***

52.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c) and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Defendants are subject to the Court's personal jurisdiction.

## FACTUAL BACKGROUND

***The Federal Educational Rights and Privacy Act***

53.     The Federal Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, and its implementing regulations govern the release of and access to "education records." *See* 20 U.S.C. § 1232(g); 34 C.F.R. Part 99.

54.     Under the FERPA, "education records" are "those records, files, documents, and other materials which – (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A).

55.     Under the regulations implementing the FERPA, "personally identifiable information" includes, but is not limited to: (a) the student's name; (b) the name of the student's parent or other family members; (c) the address of the student or student's family; (d) a personal identifier, such as the student's social security number, student number, or biometric record; (e) other indirect identifiers such as the student's date of birth, place of birth, and mother's maiden

13

name; (f) other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in a school community who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; and (g) information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the educational record relates. 34 C.F.R. 99.3.

56.     Under the FERPA, an educational institution or agency may not disclose personally identifiable information from a student's education records without signed and dated written consent, subject to exceptions not applicable here. *See* 34 C.F.R. 99.30.

***The Illinois School Student Records Act***

57.     The Illinois Schools Student Records Act ("ISSRA"), 105 Ill. Comp. Stat. 10/1, *et seq.*, governs the release, transfer, disclosure and dissemination of school student records in Illinois. *See id.*

58.     Pursuant to the ISSRA, a "school" is, among other things, "any public preschool . . . kindergarten, nursery, elementary or secondary educational institution . . ., or any person, agency or institution which maintains school student records from more than one school . . . ." 105 Ill. Comp. Stat. 10/2(b).

59.     Pursuant to the ISSRA, "School Student Record" means "any writing or other recorded information concerning a student and by which a student may be individually identified, maintained by a school or at its direction or by an employee of a school, regardless of how or where the information is stored." 105 Ill. Comp. Stat. 10/2(d).

60.     Pursuant to the ISSRA, "Student Permanent Record" means "the minimum personal information necessary to a school in the education of the student and contained in a school student record." 105 Ill. Comp. Stat. 10/2(e).

14

61. Pursuant to the ISSRA, "Student Temporary Record" means "all information in a school student record but not contained in the student permanent record." 105 Ill. Comp. Stat. 10/2(f).

62. Pursuant to the ISSRA, a "student" is "any person enrolled or previously enrolled in a school." 105 Ill. Comp. Stat. 10/2(a).

63. Pursuant to the ISSRA, "[n]o school student records or information maintained therein may be released, transferred, disclosed or otherwise disseminated" unless certain exceptions not applicable here apply. 105 Ill. Comp. Stat. 10/6(a).

64. Pursuant to the ISSRA, "[a]ny person aggrieved by a violation of [the ISSRA] may institute an action for injunctive relief . . . ." 105 Ill. Comp. Stat. 10/9(a). Further, "any person injured by a wilful or negligent violation of [the ISSRA] may institute an action for damages . . . ." 105 Ill. Comp. Stat. 10/9(b).

65. A wilful violation of the ISSRA is a criminal offense. 105 Ill. Comp. Stat. 10/9(e).

**The Naviance Platform**

66. According to Naviance marketing materials, Naviance is the "leading [College, Career and Life Readiness] platform equipping 10+ million students of all ages with skills to reach their postsecondary goals."

67. According to Defendant PowerSchool, Naviance, among other things: (a) "[p]rovide[s] students with tools to plan for a future that aligns with their strengths and interests"; (b) "[i]mplement[s] holistic counseling in a single platform where students, families, and staff can collaborate to build and track students' plans for future success"; and (c) "[e]nsure[s] every student has access to high-quality resources to achieve milestones toward their postsecondary goals."

68.     Prior to spring 2021, Defendant Hobsons owned and operated the Naviance platform. In spring 2021, Defendant PowerSchool acquired Hobsons and the Naviance platform.

69.     Students attending schools or school districts that have contracted with Defendant PowerSchool or Defendant Hobsons for use of the Naviance platform received and, if the contracts are active, continue to receive, access to the platform through their schools or school districts.

70.     A student enrolled in a school or school district that has contracted with Defendant PowerSchool or Defendant Hobsons for use of the Naviance platform can access the platform through a login name uniquely affiliated with the student and a password.

71.     The login name and password may be the same login name and password used by the student to log into their school's or school district's online network, as was the case for students attending schools operated by Defendant Chicago Public Schools ("CPS Students"), including Plaintiff and CPS Student Class Members.

72.     School districts and students, among others, provided Defendants PowerSchool and Hobsons with information and data regarding students for use within the Naviance platform.

73.     Among the student data obtained by Defendants PowerSchool and Hobsons from schools and school districts is/was a student's: (a) photograph; (b) local school identification number; (c) first name; (d) middle name; (e) last name; (f) graduation year; (g) birthdate; (h) email address; (i) home phone number; (j) mobile phone number; (k) home address; (l) grade point average (weighted and unweighted); (m) gender; (n) ethnicity; (o) school counselor; (p) standardized test scores, such as SAT, PSAT and ACT; (q) citizenship; (r) courses that qualified as advanced placement or honors; (s) parent information; and (t) history of schools attended.

74.     Additionally, Defendants PowerSchool and Hobsons obtained, and continue to obtain, data and information about students through assessments and surveys conducted within the

16

Naviance platform. One such survey, titled the "Career Interest Profiler," purports to "help students discover the types of work activities and careers that match their interests . . . ."

75. Other surveys and assessments students complete within the Naviance platform, include but are not limited to: (a) a "StrengthsExplorer Assessment; (b) a high school success assessment; (c) a "College Exploration Survey"; and (d) a "Postsecondary Pathway."

76. The above-described surveys and assessments constitute education and school student records under the FERPA and the ISSRA, respectively. As such, their dissemination, transfer and disclosure are highly regulated and restricted.

77. The Naviance platform also purports to use students' academic profiles and interests to help them explore and discover colleges that are a "fit" and help determine their future careers.

78. In addition to collecting and obtaining information and data from students, the Naviance platform also provides, and provided, students with a web-based email client to send, receive and store email messages.

***PowerSchool's and Hobsons' Contracts with Chicago Public Schools***

79. Defendant Chicago Public Schools contracted with Defendant Hobsons and, later, Defendant PowerSchool to allow CPS Students, among others, to use the Naviance platform.

80. Between July 1, 2015 and June 30, 2020, Defendant Chicago Public Schools contracted with Defendant Hobsons for use of the Naviance platform (the "Initial Contract").

81. Between July 1, 2020 and June 30, 2023, Defendant Chicago Public Schools again contracted with Defendant Hobsons for use of the Naviance platform (the "Subsequent Contract"). After the acquisition of Hobsons by Defendant PowerSchool, the Subsequent Contract was

formally assigned to PowerSchool, who agreed to accept, assume and take over the Subsequent Contract.

82.     Both the Initial and Subsequent Contracts made clear that they were the controlling agreements between: (a) Defendant Chicago Public Schools and Hobsons; and (b) Defendant Chicago Public Schools and PowerSchool, respectively.

83.     Moreover, both the Initial and Subsequent Contracts made clear that CPS Students, including Plaintiff and CPS Student Subclass Members, are direct and intended beneficiaries of the contracts, as both contracts directly reference CPS Students and contain numerous provisions regulating, among other things, the use, release, transfer, disclosure and dissemination of their sensitive and confidential data and records, including education and school student records and the information contained therein.

84.     The Initial Contract further benefitted CPS Students by making clear that neither Defendant Chicago Public Schools nor CPS Students could be bound by terms and conditions contained in "any clickwrap agreement, clickwrap license, clickthrough agreement, clickthrough license, end user license agreement or any other agreement or license contained or referenced" within the Naviance platform or any quote provided by Hobsons.

85.     Similarly, the Subsequent Contract further benefitted CPS Students by making clear that neither Defendant Chicago Public Schools nor CPS Students could be "bound by the terms and conditions contained in any clickwrap/clickthrough agreement or license, end user license or any other agreement or license contained or referenced in the products or service or any quote provided by [Hobsons or PowerSchool]." While the Subsequent Contract incorporated Defendant Hobsons' privacy policy, it expressly provided that "if any conflict is deemed to exist

18

between [the Subsequent Contract] and [Hobsons'] Privacy Policy, the terms of [the Subsequent Contract] shall supersede and control."

86. Both the Initial and Subsequent Contracts broadly defined "Student Data" to mean "any data, metadata, information, or other materials of any nature recorded in any form whatsoever, that is generated, disclosed, transmitted, created, or provided by [Chicago Public Schools], either directly or through its students," among others, including "all information used, created, or generated through the use of any technology including but not limited to [the Naviance platform], that is directly related to a CPS student."

87. According to the Subsequent Contract, "Student Data" included de-identified data.

88. Both the Initial and Subsequent Contracts expressly stated that "Student Data" is "Confidential Information," subject to the contracts' provisions regarding the use, disclosure, transfer and handling, among other things, of such information.

89. Under the Initial and Subsequent Contracts, "Confidential Information" could include, but was not limited to, name, address, student identification number, social security number, phone number, email address, gender, date of birth, ethnicity, race, foster care status, disabilities, school, grade, grade point average, standardized test scores, assessment data, highest grade completed, discipline history and free or reduced lunch qualifications. Under the Initial and Subsequent Contracts, de-identified data constituted "Confidential Information."

90. The Initial and Subsequent Contracts contained various provisions prohibiting and otherwise limiting the dissemination, sale, trade and disclosure of Student Data and Confidential Information, including but not limited to the following:

a. Both the Initial and Subsequent Contracts prohibited the dissemination of Confidential Information to a third party without the written consent of Defendant Chicago Public

19

Schools: "[Vendor] shall not disseminate Confidential Information to a third party without the prior written consent of [Chicago Public Schools]."

b.     The Subsequent Contract prohibited the sale, trade or transfer of Student Data to any third parties.

c.     Both the Initial and Subsequent Contracts prohibited the disclosure of Confidential Information except to "officers, agents, employees, and subcontractors who have a need to access the Confidential Information" for the sole purpose of delivering the Naviance platform to Defendant Chicago Public Schools.

***Chicago Public Schools' Use of the Naviance Platform***

91.     Defendant Chicago Public Schools' stated "Mission" is to "provide a high-quality public education for every child . . . that prepares each for success in college, career, and civic life."

92.     Defendant Chicago Public Schools has a "Graduate Profile" setting forth its aspirations for its graduates. According to the Graduate Profile, "when students graduate from CPS, they possess the knowledge and skills to pursue their interests and achieve their postsecondary goals."

93.     At relevant times, Defendant Chicago Public Schools integrated the Naviance platform into the learning curriculum of CPS Students in grades six through twelve to purportedly allow those students to "explore their interests and think about their futures" and to "support their postsecondary planning."

94.     At relevant times, use of the Naviance platform was a graduation requirement of Defendant Chicago Public Schools, with students being required to "upload evidence of their postsecondary plan into Naviance . . . ."

20

95. The information, data and records input into, and created as a result of the use of, the Naviance platform by CPS Students, including Plaintiff and CPS Student Subclass Members, were of clear relevance to the students' education.

96. In order for CPS Students to log into their Naviance accounts – which were assigned to them by Defendant Chicago Public Schools – the students: (a) went to a login page within the "cps.edu" domain that displayed the Chicago Public Schools logo; and (b) used the same login names and passwords associated with their Chicago Public Schools online accounts.

### *Plaintiff's and Class Members' Reasonable Expectation of Privacy*

97. As alleged in more detail below, Plaintiff and Class Members have, and had, a reasonable expectation of privacy in their education and school student records and the information contained therein, generally, as well as their communications within the Naviance platform, specifically.

### *The Reasonable Expectation of Privacy in Education and Student School Records*

98. At relevant times, students, including Plaintiff and Class Members, had, and continue to have, a reasonable expectation of privacy in their education and school student records and the information contained therein. Indeed, the records and information are highly regulated and restricted, and are deemed confidential by the FERPA and the ISSRA, among other laws.

### *The Reasonable Expectation of Privacy in School and Online Activities*

99. Underscoring Plaintiff's and Class Members' reasonable expectation of privacy in their education and school student records and the information contained therein, the FTC has declared that "[c]hildren should not have to needlessly hand over their data and forfeit their privacy

21

in order to do their schoolwork . . . especially given the wide and increasing adoption of [education technology] tools."[2]

100. Moreover, privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.

101. For example, a Consumer Reports study has revealed that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumers' data, and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them. Moreover, according to a study by Pew Research Center, a majority of Americans, approximately 79%, are concerned about how companies collect data about them.

102. Technology users act consistently with these preferences. For instance, following a new rollout of the iPhone operating software – which asks users for clear, affirmative consent before allowing companies to track them – 88% of worldwide users and 96% of U.S. users chose not to share data when prompted.

103. Another recent study by DataGrail revealed that 67% of people were willing to pay $100 or more annually to keep their information out of the hands of companies and the government. The same study revealed that 75% of people would abandon brands that do not take care of their data.

---

[2] FTC, *Policy Statement of the Federal Trade Commission on Education Technology and the Children's Online Privacy Protection Act* (May 19, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/Policy%20Statement%20of%20the%20Federal%20Trade%20Commission%20on%20Education%20Technology.pdf (last accessed on Jan. 12, 2025).

*PowerSchool's and Hobsons' Promises to Users*

104. Given the limitations imposed on the release, transfer, disclosure and dissemination of education and school student records and the information contained therein, Defendants PowerSchool and Hobsons assured Naviance users that their information would remain private and confidential, further bolstering Plaintiff's and Class Members' reasonable expectation of privacy.

105. Defendant PowerSchool has represented, and continues to represent, that it is a signatory to the Student Privacy Pledge, a pledge by K-12 school service providers to safeguard student privacy.

106. Before its acquisition by Defendant PowerSchool, Defendant Hobsons also represented that it was a signatory to the Student Privacy Pledge.

107. As signatories to the Student Privacy Pledge, Defendants PowerSchool and Hobsons, promised, among other things:

a. Not to collect, maintain, use or share student personal information beyond that needed for authorized educational/school purposes, or as authorized by the parent/student;

b. To collect use, share, and retain student personal information only for purposes for which they were authorized by the educational institution/agency, teacher or the parent/student;

c. To disclose clearly in contracts or privacy policies, including in a manner easy for parents and teachers to understand, what types of student personal information they collect, if any, and the purposes for which the information they maintain is used or shared with third parties; and

23

d.      To require that their vendors with whom student personal information is shared in order to deliver the educational service, if any, are obligated to implement these same commitments for the given student personal information.

108.    Further, on Defendant Hobsons' website, it promised that "Protecting the privacy and security of student data is at the core of the work we do to make Naviance by Hobsons a trusted platform for schools and districts – and for the parents and students that we collectively serve." Hobsons further promised that "We understand and take very seriously our obligations and responsibilities to act as good stewards of the information that schools entrust to us to provide them with tools to support their college and career readiness programs in the way that they see fit."

109.    On Defendant PowerSchool's website, it represented that it "complies with applicable privacy laws that impact students and children."

110.    Additionally, as alleged above, the Initial and Subsequent Contracts imposed various restrictions and limitations on Defendants PowerSchool and Hobsons with respect to "Student Data" and "Confidential Information."

111.    The respective and relevant privacy policies of Defendants PowerSchool and Hobsons contain further representations regarding each company's purported commitment to privacy.

112.    Based on the conduct alleged herein, Defendants PowerSchool and Hobsons did not comply with the above-described privacy policies, obligations, representations and pledges.

***Defendant Heap's Data Analytics Platform***

113.    Defendant Heap is a software-as-a-service provider that offers a data analytics platform and code that, *inter alia*, automatically intercepts website users' online communications through a feature called Autocapture.

114. As alleged above, Autocapture has the power to intercept communications on an individualized basis over multiple sessions and across different domains, thereby allowing Defendant Heap to amass a profile regarding each user whose data it collects.

115. A website operator can install Defendant Heap's data analytics platform, which includes Autocapture, by embedding and integrating a snippet of code, written in JavaScript, into the website.

116. Defendant Heap claims to provide users of its data analytic platform the "easiest and most comprehensive way to automatically capture the user interactions on your site, from the moment of installation forward. *A single snippet grabs every click, swipe, tap, pageview, and fill – forever."*

117. In the words of Defendant Heap, its technology "collect[s] everything, automatically."

118. Once embedded and integrated into a website, Defendant Heap's snippet of JavaScript code: (a) allows Heap's data analytics platform to surreptitiously intercept in real-time the communications of website users; and (b) contemporaneously transmits that information and data to Heap's servers which, at relevant times, were located in California.

119. Defendant Heap's interception of a website user's communications within the website begins immediately upon a person visiting a website in which Heap's data analytics platform and JavaScript code is integrated and embedded – precluding the user from first providing any consent.

120. Defendant Heap has known, and continues to know, that when it works with ed-tech providers like Defendants PowerSchool and Hobsons, the integration and embedding of its data analytics platform into the customer's website results in Heap's interception of sensitive and

confidential student information, including education and school student school records and the information contained therein.

121. At relevant times, Defendants PowerSchool and Hobsons, through the PowerSchool Doe Defendants and Hobsons Doe Defendants – with the assistance and agreement of the Heap Doe Defendants – knowingly and intentionally integrated and embedded Defendant Heap's JavaScript code into the Naviance platform – namely, they integrated and embedded the JavaScript code into the portion of the Naviance platform accessed by students after they logged into the platform with their unique login names and passwords – for the purpose of intercepting the communications of students while accessing and navigating the Naviance platform.

122. At relevant times, Defendants PowerSchool and Hobsons configured the Heap data analytics platform so that it would track Naviance users on an individualized basis, even if the users logged into Naviance with different devices. By doing so, Defendant Heap was able to identify the Naviance users and track them across different domains.

123. Moreover, Defendants PowerSchool and Hobsons configured the Heap data analytics platform to intercept ███████████████████████████████████████████, including Plaintiff and Class Members, which provided Defendant Heap with one way, among others, to identify and track unique users.

124. The communications intercepted by Defendant Heap from users of the Naviance platform, including Plaintiff and Class Members, was ████████████████████.

125. When integrated and embedded into a website, Heap's data analytics platform is not akin to a tape recorder or a "tool" used by one party to simply record the other. Instead, it involves Defendant Heap, a separate and distinct third-party entity from the parties in the conversation, through the use of the Heap data analytics platform, including Autocapture, to

eavesdrop on, record, extract information from, and analyze a conversation to which it is not a party. This is so because Heap itself is collecting the content of any conversation. That information is then analyzed and processed by Heap before being provided to any entity that was a party to the conversation (like Defendants PowerSchool and/or Hobsons).

126. Once Defendant Heap intercepted Naviance users' communications, it had the ability ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████.

127. At relevant times, Defendant Heap's data analytics platform was not required in order for Defendant PowerSchool or Defendant Hobsons to provide the Naviance platform to schools and schools districts, including Defendant Chicago Public Schools or any other school. Indeed, despite having terminated its contract with Heap, PowerSchool continues to make the Naviance platform available to schools and school districts.

128. Given the surreptitious way in which Defendant Heap intercepts website users' communications within a website, school students logged into the Naviance platform would not know that they were under constant surveillance while using the Naviance platform and that "every click, swipe, tap, pageview and fill" performed within the platform was being intercepted by Heap.

129. No probable cause or reasonable suspicion existed to subject school students, including Plaintiff and Class Members, to the constant and indiscriminate search and seizure of their communications within the Naviance platform.

*Other Third-Party Code Integrated and Embedded into the Naviance Platform*

*Google Analytics*

130.    Google Analytics is a web analytics service offered by Google that allows website owners to track visitor actions on websites and target them with personalized advertisements. At relevant times, Defendants Hobsons and PowerSchool integrated and embedded the code for Google Analytics into the Naviance platform, including, on information and belief, on the portion of the Naviance platform accessed by students, including Plaintiff and Class Members, after logging into the Naviance platform.

131.    Google Analytics collects IP addresses of individual internet users to facilitate and track internet communications. Google Analytics also collects various cookie-related user identifiers that allow it to link transactions on websites to individual users for the purpose of targeted advertising.

132.    The data is connected to the user's IP address, which is a unique address that identifies a device on the internet. IP addresses constitute personally identifiable information and confidential information. For instance, under the Initial and Subsequent Contracts, IP addresses constitute "Student Data" and "Confidential Information" because they are "data, metadata, information or other materials of any nature recorded in any form whatsoever that is generated, disclosed, transmitted, created or provided by . . . [CPS Students] . . . ."

133.    In connection with Google Analytics, Google offers "Similar Audiences." Google has explained on its website:

> To find similar segments, Google Ads looks at the millions of people searching on Google . . . .
>
> A similar segments list is created from a remarketing list or Customer Match list with at least 1,000 cookies **with enough similarity in search behavior to create a corresponding similar segment.**

28

Website tag and rule-based remarketing lists, as well as Customer Match lists built from email addresses, mailing addresses, and/or phone numbers, can be used to generate similar segments. . . .

(Emphasis added.)

134. Google explains, for its marketing and developer clients:

In order for Google Analytics to determine that two distinct hits belong to the same user, a unique identifier, associated with that particular user, must be sent with each hit.

The analytics.js library accomplishes this via the Client ID field, a unique, randomly generated string that gets stored in the browsers cookies, so subsequent visits to the same site can be associated with the same user.

By default, analytics.js uses a single, first-party cookie named _ga to store the Client ID, but the cookie's name, domain, and expiration time can all be customized. Other cookies created by analytics.js include _gid, AMP_TOKEN and _gac_<property-id>. These cookies store other randomly generated ids and campaign information about the user.

135. On information and belief, the above-described information collected by Google Analytics allowed for the identification of Naviance users. Because the information was being intercepted in the portion of the Naviance platform accessed after students logged in, the information consisted of sensitive and confidential education and student records and the information contained therein.



136. At relevant times, Defendants PowerSchool and Hobsons integrated and embedded into Naviance session replay software offered by ████

137. Session replay, as noted in a 2017 piece by Princeton University researchers, is "unlike typical [internet] analytics services [like cookies] that provide aggregate statistics[.] [Rather,] these scripts are intended for the recording and playback of individual browsing sessions,

as if someone is looking over your shoulder." [3] That is, session replay works by "embedded snippets of code . . . [that] watch and record a visitor's every move on a website, in real time."[4]

138.

Per Mozilla, "Document Object Model (DOM) is the data representation of the objects that comprise the structure and content of a document on the web."[8]

139. The end result is that a ▮▮▮ session replay wiretap provided real-time recordings of users' interactions on the Naviance platform, while those interactions were being transmitted over the internet. That is, ▮▮▮ used session replay to surreptitiously intercept and/or record in real-time, the keystrokes, mouseclicks and movement, scrolling, data entry, and/or other electronic communications of Website users.

140. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] Steven Englehardt, *No boundaries: Exfiltration of personal data by session-replay scripts* (Nov. 15, 2017), https://freedom-to-tinker.com/2017/11/15/no-boundaries-exfiltration-of-personal-data-by-session-replay-scripts/.

[4] Tomas Foltyn, *What's the Deal with Session-Replay Scripts?*, Welivesecurity (Apr. 20, 2018), https://www.welivesecurity.com/2018/04/20/whats-deal-session-replay-scripts/.

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[6]

[7]

[8] Mozilla Corporation, *Introduction to the DOM*, https://developer.mozilla.org/en-US/docs/Web/API/Document_Object_Model/Introduction.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████

141.     Session replay technology is not widely known by the public. Most website owners don't disclose the use of session replay on their websites out of fear of unnerving website visitors and suppressing website traffic. Any disclosures in privacy policies are futile, because by the time anyone will have seen such a disclosure, the session replay technology will have already been deployed.

142.     Further, as a 2017 study by Princeton University researchers recognized, "the extent of data collected by these services *far exceeds expectations*[]; text typed into forms is collected before the user submits the form, and precise mouse movements are saved, all without any visual indication to the user. This data can't reasonably be expected to be kept anonymous."[11]

143.     Session replay is not only highly intrusive, it is dangerous. The 2017 study by Princeton University researchers found that session replay technologies were collecting sensitive user information such as passwords and credit card numbers. The research notes that this was not simply the result of a bug, but rather, insecure practices.[12] Thus, session replay technologies such as those operated by ███ can leave users vulnerable to data leaks and the harms resulting therefrom.

---

[9] ████████████████████████████████████████████████████
████████████████████████████████████████

[10] ████████

[11] Steven Englehardt, *No boundaries: Exfiltration of personal data by session-replay scripts* (Nov. 15, 2017), https://freedom-to-tinker.com/2017/11/15/no-boundaries-exfiltration-of-personal-data-by-session-replay-scripts/.

[12] *Id.*

144. By integrating and embedding ▮▮▮ into the Naviance Platform, Defendants PowerSchool and Hobsons allowed ▮▮▮ to surreptitiously intercept and record interactions between Naviance users, on the one hand, and PowerSchool and/or Hobsons, on the other.

### The Microsoft Software

145. Defendants PowerSchool and Hobsons also integrated and embedded into the Naviance platform software code created by Microsoft called bat.bing. Bat.bing collects Microsoft's Machine Unique Identifier (MUID cookie) from users. This cookie is a unique user identifier and remains active for one year. It is used for advertising, site analytics, and other operational purposes.

### The Agency Relationships

146. At relevant times, Defendants PowerSchool and Hobsons were agents of Defendant Chicago Public Schools, with actual and apparent authority to act on behalf of Chicago Public Schools.

147. Pursuant to the Initial and Subsequent Contracts, Defendant Chicago Public Schools authorized Defendant Hobsons on behalf of Chicago Public Schools to, *inter alia*, collect, analyze, store and safeguard the education and student records of CPS Students, including Plaintiff and CPS Student Class Members.

148. Moreover, Defendant Hobsons was subject to Defendant Chicago Public School's control.

149. For instance, pursuant to the Initial and Subsequent Contracts, Defendant Hobsons could not disseminate any "Confidential Information" of CPS Students, among others, without the prior written consent of Defendant Chicago Public Schools.

150. Further, pursuant to the Subsequent Contract, Defendant Hobsons expressly acknowledged that it was "performing an institutional service or function for which [Chicago Public Schools] would otherwise use employees, *under the direct control of [Chicago Public Schools]*, with respect to the use and maintenance of [specified information]." (Emphasis added).

151. Moreover, in the Initial and Subsequent Contracts, Defendant Hobsons agreed that in the event of a breach, or a threatened breach or disclosure, by Hobsons related to the safeguarding of, *inter alia*, the education and student records of CPS Students, including Plaintiff and CPS Student Class Members, Defendant Chicago Public Schools was entitled to immediate injunctive relief to prevent or curtail any such breach, threatened or actual.

152. Pursuant to the Subsequent Contract, Defendant Chicago Public Schools authorized Defendant PowerSchool on behalf of Chicago Public Schools to, *inter alia*, collect, analyze, store and safeguard the education and student records of CPS Students, including Plaintiff and CPS Student Class Members.

153. Defendant PowerSchool was subject to Defendant Chicago Public School's control.

154. For instance, pursuant to the Subsequent Contract, Defendant PowerSchool could not disseminate any "Confidential Information" of CPS Students, among others, without the prior written consent of Chicago Public Schools.

155. Further, pursuant to the Subsequent Contract, Defendant PowerSchool expressly acknowledged that it was "performing an institutional service or function for which [Chicago Public Schools] would otherwise use employees, *under the direct control of [Chicago Public Schools]*, with respect to the use and maintenance of [specified information]." (Emphasis added).

156. Moreover, in the Subsequent Contract, Defendant PowerSchool agreed that in the event of a breach, or a threatened breach or disclosure, by PowerSchool related to the safeguarding

of, *inter alia*, the education and student records of CPS Students, including Plaintiff and CPS Student Class Members, Defendant Chicago Public Schools was entitled to immediate injunctive relief to prevent or curtail any such breach, threatened or actual.

157. At relevant times, Defendant Chicago Public Schools also consented or knowingly acquiesced to Defendants PowerSchool and Hobsons exercising authority. As alleged above, CPS Students logged into Naviance from a website with the "cps.edu" domain name that displayed the logo of Defendant Chicago Public Schools. Moreover, CPS Students logged into Naviance using their Chicago Public Schools login names and password information. Once logged in, CPS Students were directed to the Naviance platform where they interacted directly with PowerSchool or Hobsons.

158. Additionally, as alleged above, at relevant times, Defendant Chicago Public Schools integrated the Naviance platform into the learning curriculum of CPS Students in grades six through twelve to purportedly allow those students to "explore their interests and think about their futures" and to "support their postsecondary planning." Further, use of the Naviance platform was a graduation requirement of Chicago Public Schools, with students being required to "upload evidence of their postsecondary plan into Naviance . . . ."

159. Based on the above, it was reasonable for CPS Students, including Plaintiff and CPS Student Class Members, to reasonably conclude that PowerSchool and Hobsons were the agents of Chicago Public Schools and, therefore, provide sensitive and confidential information to PowerSchool and Hobsons via the Naviance platform, including education and school student records and the information contained therein.

160. Moreover, based on the above, CPS Students, including Plaintiff and CPS Student Class Members, justifiably relied on the apparent authority of PowerSchool and Hobsons to their

detriment, including the unlawful interception, distribution, dissemination and transfer of their sensitive and confidential education and school student records and the information contained therein.

161. Based on the agency relationship between Defendant Chicago Public Schools and Defendant Hobsons, Chicago Public Schools is vicariously liable for the alleged unlawful conduct of Hobsons.

162. Based on the agency relationship between Defendant Chicago Public Schools and Defendant PowerSchool, Chicago Public Schools is vicariously liable for the alleged unlawful conduct of PowerSchool.

***Plaintiff's and Class Members' Sensitive and Confidential Information Had Financial Value***

163. Plaintiffs' and Class Members' private data has economic value. Indeed, the practices of Google, Microsoft and others of using such sensitive and confidential information to package groups of people as "Similar Audiences" and similar groups and selling those packages to advertising clients demonstrates the financial worth of that data.

164. Data harvesting is the fastest growing industry in the nation. As software, data mining and targeting technologies have advanced, the revenue from digital ads and the consequent value of the data used to target them have risen rapidly.

165. Consumer data is so valuable that some have proclaimed the data is the new oil.

166. As a result of the unlawful conduct alleged herein and the resultant unauthorized access to the data of Plaintiff and Class Members, the value of their confidential and sensitive information has been diminished, resulting in harm to Plaintiff and Class Members.

***Plaintiff Q.J.'s Use of the Naviance Platform***

35

167.     In connection with his enrollment at schools operated by Defendant Chicago Public Schools, Plaintiff Q.J. was required by Chicago Public Schools to use the Naviance platform as part of his educational curriculum and graduation requirements.

168.     Plaintiff Q.J. logged into the Naviance platform through a web portal operated by Defendant Chicago Public Schools, and branded with Chicago Public Schools' logo, using his login credentials for accessing Chicago Public Schools' online network.

169.     Q.J.'s communications within the Naviance platform were uniquely affiliated with him and allowed him to be individually identified.

170.     Plaintiff Q.J. logged into the Naviance platform dozens of times.

171.     Plaintiff Q.J. logged into and used the Naviance platform while at school and while at home.

172.     While logged into the Naviance platform, Plaintiff Q.J., completed, *inter alia*, assessments and surveys and received results and feedback based on his responses thereto, explored college and career goals, input colleges in which he had an interest, input personal goals and ways to achieve them, received recommended "best fits" based on his "interests and personal qualities," viewed standardized test scores, and accessed emails sent to him through, and stored on, the web-based email client within the Naviance platform. Given that the communications described in this paragraph constituted education and school student records, the communications were sensitive and confidential and subject to the restrictions and regulations of the FERPA and ISSRA.

173.     Plaintiff Q.J. had a reasonable expectation of privacy in his communications within the Naviance platform and did not consent to the interception and recording of those communications or the unauthorized use of that information.

174. Unbeknownst to Plaintiff Q.J., when he logged into the Naviance platform his communications within the platform were intercepted and recorded and contemporaneously transmitted to Defendant Heap's servers and the servers of the other third parties whose software was integrated and embedded into the Naviance platform. The interception, monitoring, capture and recording alleged herein began occurring immediately upon Q.J. accessing the Naviance platform.

175. The interception, monitoring, capture and recording of Plaintiff Q.J.'s communications within the Naviance platform was not justified at its inception, and no probable cause or reasonable suspicion that Q.J. had engaged in unlawful or otherwise improper conduct existed to support the search and seizure of his communications.

176. Plaintiff Q.J. did not become aware of the surreptitious interception, monitoring, capture and recording of his communications within the Naviance platform until approximately July 2023.

<strong>CLASS ACTION ALLEGATIONS</strong>

177. Plaintiff brings this action, pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the following Nationwide Class:

> **Nationwide Class (the "Nationwide Class"):** All natural persons in the United States who, while a student, used an online product offered by Hobsons and/or PowerSchool in which Hobsons and/or PowerSchool integrated and embedded software or other code that surreptitiously intercepted, monitored, captured, recorded and/or divulged the communications of the persons without their consent.

178. In addition, Plaintiff bring this action, pursuant to Federal Rule of Civil Procedure, 23 individually and on behalf of the following subclasses (collectively, the "Subclasses"):

> **Naviance Subclass:** All natural persons in the United States who used the Naviance platform while a student and whose communications were intercepted, monitored, captured, recorded and/or divulged while accessing and navigating the platform

37

**Civil Rights Subclass:** All natural persons in the United States who, while a public-school student, used an online product offered by Hobsons and/or PowerSchool in which Hobsons and/or PowerSchool integrated and embedded software or other code that surreptitiously intercepted, monitored, captured, recorded and/or divulged the communications of the persons without their consent.

**Illinois Subclass:** All residents of Illinois who, while a student, used a product offered by Hobsons and/or PowerSchool in which Hobsons and/or PowerSchool integrated and embedded software or other code that surreptitiously intercepted, monitored, captured, recorded and/or divulged the communications of the persons without their consent.

**CPS Student Subclass:** All persons who, while a CPS Student, used a product offered by Hobsons and/or PowerSchool in which Hobsons and/or PowerSchool integrated and embedded software or other code that surreptitiously intercepted, monitored, captured, recorded and/or divulged the communications of the persons without their consent.

179. Plaintiff reserves the right to amend or modify the class and subclass definitions with greater specificity or division after having had an opportunity to conduct discovery.

180. The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations – after considering any tolling, concealment and accrual issues – and ending on the date of entry of any judgment.

181. Excluded from the Nationwide Class and Subclasses are: (a) Defendants; (b) any parent, affiliate or subsidiary of any Defendant; (c) any entity in which any Defendant has a controlling interest; (d) any officers or directors of any Defendant; (e) any successor or assign of any Defendant; and (f) counsel for Plaintiff and any Defendant. Also excluded are any judge or court personnel assigned to this case and members of their immediate families.

182. **Numerosity:** The exact number of members of the Nationwide Class and each Subclass is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable. The Nationwide Class and each Subclass likely consist of hundreds of thousands or millions of individuals, and the members can be identified through the records of Defendants PowerSchool, Hobsons, Heap and Chicago Public Schools.

183.   **Commonality and predominance:** Common questions of law and fact exist as to all Class Members. These common questions of law and fact predominate over any questions affecting only individual members of the proposed Nationwide Class and Subclasses. Common questions include, but are not limited to, the following:

     a.     Whether Defendants engaged in the wrongful conduct alleged herein;

     b.     Whether the privacy rights of Plaintiff and Class Members were violated;

     c.     Whether the rights of Plaintiff and Class Members under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511, were violated.

     d.     Whether the rights of Plaintiff and Class Members under the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, were violated;

     e.     Whether the rights of Plaintiff and Class Members under the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*, were violated;

     f.     Whether Plaintiff and Class Members are entitled to actual, statutory, punitive and other forms of damages, as well as other monetary relief; and

     g.     Whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to, injunctive relief, restitution and disgorgement.

184.   **Typicality:** Plaintiff's claims are typical of the claims of the Nationwide Class and Subclasses he seeks to represent. The claims of Plaintiff and members of the Nationwide Class and Subclasses arise from the same conduct by Defendants and are based on the same legal theories.

185.   **Superiority:** Absent a class action, most members of the Nationwide Class and Subclasses would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior

39

to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Further, certification of a class action to resolve this matter will reduce the possibility of repetitious litigation involving potentially millions of class members.

186.    **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Nationwide Class and Subclasses in that he has no interest that is antagonistic to, or that irreconcilably conflicts with, those of other members of the Nationwide Class or Subclasses. Further, Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

## CLAIMS FOR RELIEF

### COUNT ONE
### VIOLATION OF THE ELECTRONIC COMMUNICATIONS AND PRIVACY ACT
### (18 U.S.C. § 2511(a)
**(On behalf of Plaintiff, the Nationwide Class and Naviance Subclass against PowerSchool, Hobsons, Heap and Chicago Public Schools)**

187.    Plaintiff restates and realleges the allegations of paragraphs 1 through 186, above, as though fully set forth herein.

188.    Plaintiff brings this Count against Defendants PowerSchool, Hobsons, Heap and Chicago Public Schools individually and on behalf of members of the Nationwide Class and Naviance Subclass.

189.    Under the ECPA, it is unlawful for a person to intentionally intercept, endeavor to intercept or procure any other person to intercept or endeavor to intercept any wire, oral or electronic communication. 18 U.S.C. § 2511(1)(a).

190.    Under the ECPA, it is unlawful for a person to intentionally use, or endeavor to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know

40

that the information was obtained through the interception of a wire, oral or electronic communication in violation of the ECPA. 18 U.S.C. § 2511(1)(d).

191.    The ECPA protects both the sending and receipt of communications.

192.    Under the ECPA, a "person" includes "any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

193.    Under the ECPA, in relevant part, "electronic communication" means:

> any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate commerce or foreign commerce . . . .

18 U.S.C. § 2510(12).

194.    Under the ECPA, "'intercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

195.    Under the ECPA, in relevant part, "'electronic, mechanical, or other device' means any device or apparatus which can be used to intercept a wire, oral, or electronic communication . . . ." 18 U.S.C. § 2510(5).

196.    The following constitute "devices" within the meaning of 18 U.S.C. § 2105(5):

    a.    The computer codes and programs Defendant Heap, as well as Google, Microsoft and ▮▮▮▮, used to intercept, monitor, capture and record Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' communications and data transmissions while they were accessing and navigating the Naviance platform and other online products offered by PowerSchool and/or Hobsons;

41

b.      Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' browsers;

c.      Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' computing and mobile devices;

d.      Defendant Heap's web servers, as well as the web servers of Google, Microsoft and █████;

e.      The web servers from which Defendant Heap, Google, Microsoft and █████, intercepted and recorded Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' communications, data transmissions and messages while they were using a web browser to access and navigate the Naviance platform and other online products offered by PowerSchool and/or Hobsons;

f.      The computer codes and programs used by Defendant Heap, as well as Google, Microsoft and █████, to effectuate their interception and recording of Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' communications, data transmissions and messages while they were using a browser to access and navigate the Naviance platform and other online products offered by PowerSchool and/or Hobsons;

g.      The plan Defendant Heap, as well as Google, Microsoft and █████, carried out to effectuate its interception and recording of Plaintiff's, Class Members' and Naviance Subclass Members' communications, data transmissions and messages while they were using a web browser or mobile application to access and navigate the Naviance platform and other online

42

products offered by PowerSchool and/or Hobsons; and

h.     Defendant Heap's data analytics platform and code, as well as the code of Google, Microsoft and ████, among others, embedded and integrated into the Naviance platform and other online products offered by PowerSchool and/or Hobsons.

197.     Under the ECPA, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the ECPA] may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

198.     Under the ECPA, the "court may assess as damages whichever is the greater of – (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2). Additional appropriate relief includes: (a) equitable or declaratory relief; (b) punitive damages; and (c) a reasonable attorney's fee and other litigation costs reasonably incurred. 18 U.S.C. § 2520(b).

199.     Defendants PowerSchool, Hobsons, Heap and Chicago Public Schools were, and continue to be, "persons" under the ECPA.

200.     In violation of the ECPA, 18 U.S.C. § 2511(1)(a), Defendant Heap intentionally intercepted and endeavored to intercept the electronic communications of Plaintiff, Nationwide Class Members and Naviance Subclass Members, namely the transmissions of the confidential and sensitive information of Plaintiff, Nationwide Class Members and Naviance Subclass Members, including education and school student records, via PowerSchool and/or Hobsons products, including Naviance. At relevant times, Heap knew that its data analytics platform, which included

43

Autocapture, would intercept the electronic communications of users of PowerSchool and/or Hobsons products into which the data analytics platform was installed, including Naviance.

201. In violation of the ECPA, 18 U.S.C. § 2511(1)(a), Defendants PowerSchool and Hobsons intentionally procured Defendant Heap and other third parties, including Google, Microsoft and ███, to intercept and endeavor to intercept the electronic communications of Plaintiff, Nationwide Class Members and Naviance Subclass Members, namely the transmissions of the confidential and sensitive information of Plaintiff, Nationwide Class Members and Naviance Subclass Members, including education and school student records and the information contained therein, via PowerSchool and/or Hobsons online products, including Naviance. At relevant times, PowerSchool and Hobsons knew that by integrating and embedding Heap's data analytics platform, which included Autocapture, as well as the above-described software code of Google, Microsoft and ███, the data analytics platform and other code would intercept the electronic communications of users of PowerSchool and/or Hobsons products into which the data analytics platform and code was installed, including Naviance.

202. In violation of the ECPA, 18 U.S.C. § 2511(1)(d), Defendant Heap intentionally used, or endeavored to use, the contents of the electronic communications of Plaintiff, Nationwide Class Members and Naviance Subclass Members, in the manner alleged herein, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiff, Nationwide Class Members and Naviance Subclass Members in violation of the ECPA, as alleged herein.

203. In violation of the ECPA, 18 U.S.C. § 2511(1)(d), Defendants PowerSchool and Hobsons used, or endeavored to use, the contents of the electronic communications of Plaintiff, Nationwide Class Members and Naviance Subclass Members to generate profits and increase

revenues by, *inter alia*, attempting to improve their product offerings, including the Naviance platform, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiff, Nationwide Class Members and Naviance Subclass Members in violation of the ECPA, as alleged herein.

204. Defendants PowerSchool, Hobsons and Heap knew and had reason to know that they obtained the electronic communications at issue in violation of the ECPA, as they did not obtain Plaintiff's, Nationwide Class Members' and/or Naviance Subclass Members' consent to intercept the electronic communications and, as alleged below, did so for criminal and tortious purposes.

205. At the time of the above-described electronic communications, Plaintiff, Nationwide Class Members and Naviance Subclass Members exhibited an expectation that the communications were not subject to interception under circumstances justifying such an expectation, as alleged herein.

206. Plaintiff, Nationwide Class Members and Naviance Subclass Members did not consent to the interception and disclosure of their sensitive and confidential electronic communications via PowerSchool and Hobsons online products, including the Naviance platform.

207. At the time Defendant Heap intentionally intercepted and endeavored to intercept the electronic communications of Plaintiff, Nationwide Class Members and Naviance Subclass Members, Heap was not acting under color of law.

208. At the time Defendants PowerSchool and Hobsons intentionally procured Defendant Heap, Google, Microsoft and ▮▮▮▮▮ to intercept and endeavor to intercept the electronic communications of Plaintiff, Nationwide Class Members and Naviance Subclass Members, neither PowerSchool nor Hobsons was acting under color of law.

209. Defendant Heap intercepted and endeavored to intercept the electronic communications of Plaintiff, Nationwide Class Members and Naviance Subclass Members for the purpose of committing criminal and tortious acts in violation of the Constitution or laws of the United States or of any State, namely, Heap intercepted and endeavored to intercept the communications at issue for the purpose of: (a) violating the Fourth and Fourteenth Amendment rights of Plaintiff, Nationwide Class Members and Naviance Subclass Members, as alleged above and in Counts Two through Six below; (b) knowingly intruding into a private place, conversation or matter that would be highly offensive to a reasonable person; (c) violating the FERPA; (d) violation the ISSRA; (e) violating the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*; and (f) violating the Illinois Eavesdropping Act, 720 Ill. Comp. Stat. 5/14-1, *et seq.*

210. Defendants PowerSchool and Hobsons procured Defendant Heap to intercept and endeavor to intercept the electronic communications of Plaintiff, Nationwide Class Members and Naviance Subclass Members for the purpose of: (a) violating the Fourth and Fourteenth Amendment rights of Plaintiff, Nationwide Class Members and Naviance Subclass Members, as alleged above and in Counts Two through Six below; (b) knowingly intruding into a private place, conversation or matter that would be highly offensive to a reasonable person; (c) violating the FERPA; (d) violation the ISSRA; (e) violating the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*; and (f) violating the Illinois Eavesdropping Act, 720 Ill. Comp. Stat. 5/14-1, *et seq.*

211. Defendant Chicago Public Schools is vicariously liable for the conduct of Defendants PowerSchool and Hobsons.

212. Plaintiff, Nationwide Class Members and Naviance Subclass Members seek all relief to which they are entitled under the ECPA, including statutory damages, punitive damages, equitable and declaratory relief and attorneys' fees and costs.

**COUNT TWO**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS**
**(42 U.S.C. § 1983)**
**(On behalf of Plaintiff and the Civil Rights Subclass against the Doe Defendants)**

213. Plaintiff restates and realleges the allegations of paragraphs 1 through 186, above, as though fully set forth herein.

214. Plaintiff brings this Count individually and on behalf of members of the Civil Rights Subclass against the Doe Defendants.

215. At relevant times, Plaintiff and Civil Rights Subclass Members had a right to be free from unreasonable searches and seizures while at home and while in school and with respect to their communications within the Naviance platform.

216. The Doe Defendants, cloaked under color of law, unlawfully – and without probable cause, reasonable suspicion or justification at the inception – routinely and automatically searched and seized Plaintiff's and Civil Rights Subclass Members' communications within online products offered by Defendants PowerSchool and/or Hobsons, including the Naviance platform, each time they accessed and navigated the products, whether from home, from school or elsewhere.

217. At relevant times, Plaintiff and Civil Rights Subclass Members had a reasonable expectation of privacy in their online communications while accessing and navigating the online products offered by Defendants PowerSchool and/or Hobsons, including the Naviance platform. The reasonable expectation of privacy is underscored by: (a) the nature of contents of the communications and transmissions – consisting of, *inter alia*, sensitive and confidential student data, including statutorily-protected education and school student records and the information

contained therein; (b) Defendant PowerSchool's and Hobsons' promises to protect students' privacy; and (c) PowerSchool's, Hobsons' and Heap's obligations to protect students' privacy.

218. Plaintiff and Civil Rights Subclass Members did not voluntarily turn over the communications the Doe Defendants searched and seized while Plaintiff and Civil Rights Subclass Members accessed and navigated the online products offered by Defendants PowerSchool and Hobsons, including the Naviance platform. Plaintiff and Civil Rights Subclass Members did not know that the Doe Defendants had integrated and embedded Defendant Heap's data analytics platform and other code into the Naviance platform and other online products offered by PowerSchool and Hobsons in order to intercept and record Plaintiff's and Civil Rights Subclass Members' communications within the platform.

219. Nevertheless, in the manner alleged herein, the Doe Defendants – acting under color of law – individually, jointly and in conspiracy with one another, subjected Plaintiff and Civil Rights Subclass Members to repeated, continuous and automatic searches and seizures while Plaintiff and Civil Rights Subclass Members accessed and navigated the Naviance platform and other online products offered by PowerSchool and Hobsons.

220. Plaintiff and Civil Rights Subclass Members did not consent to the searches and seizures to which the Doe Defendants subjected them and, indeed, those searches and seizures were carried out covertly.

221. When Plaintiff and Civil Rights Subclass Members accessed and navigated the Naviance platform and other online products offered by PowerSchool and Hobsons while at home, the Doe Defendants performed the searches, and engaged in the seizures, without probable cause that Plaintiff or Civil Rights Subclass Members had engaged in any unlawful conduct. Moreover, the searches and seizures were not permissible in scope – namely, the measure of surreptitiously

48

and automatically intercepting and recording all communications of Plaintiff and Civil Rights Subclass Members each time they accessed and navigated the Naviance platform and other products offered by PowerSchool and Hobsons was not reasonably related to any objective and was excessively intrusive when considering that Plaintiff and Civil Rights Subclass Members had not committed any infraction. The searches and seizures were all the more intrusive given their pervasiveness and the fact that they were performed on school-age children.

222. When Plaintiff and Civil Rights Subclass Members accessed and navigated the Naviance platform and other online products offered by PowerSchool and Hobsons while at school, the Doe Defendants performed the searches, and engaged in the seizures, despite the fact that they were not justified at their inception because neither the conduct of Plaintiff nor Civil Rights Subclass Members created a reasonable suspicion that any particular regulation or law had been violated.

223. Moreover, the searches performed, and the seizures engaged in, by the Doe Defendants while Plaintiff and Civil Rights Subclass Members were at school were not permissible in scope – namely, the measure of surreptitiously and automatically intercepting and recording all communications of Plaintiff and Civil Rights Subclass Members each time they accessed and navigated the Naviance platform and/or other products offered by Defendants PowerSchool and Hobsons was not reasonably related to any objective and was excessively intrusive when considering that Plaintiff and Civil Rights Subclass Members had not committed any infraction. The searches were all the more intrusive given their pervasiveness and the fact that they were performed on school-age children.

224. The Doe Defendants performed the searches and seizures alleged herein without a warrant.

49

225. The conduct of the Doe Defendants violated Plaintiff's and Civil Rights Subclass Members' rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution.

226. Plaintiff and Civil Rights Subclass Members have been injured by the conduct of the Doe Defendants. Plaintiff's and Civil Rights Subclass Members' confidential communications and education and school student records have been unlawfully searched and seized on a regular and automatic basis, resulting in emotional distress, loss of control of their sensitive and confidential education and school student records and the information contained therein and other continuing injuries and damages.

227. The conduct of the PowerSchool Doe Defendants was undertaken pursuant to the policy and practice of Defendant PowerSchool, in the manner more fully described in Count Four, below.

228. The conduct of the Hobsons Doe Defendants was undertaken pursuant to the policy and practice of Defendant Hobsons, in the manner more fully described in Count Five, below.

229. The conduct of the Heap Doe Defendants was undertaken pursuant to the policy and practice of Defendant Heap, in the manner more fully described in Count Six, below.

**COUNT THREE**
**CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS**
**(42 U.S.C. § 1983)**
**(On behalf of Plaintiff and the Civil Rights Subclass against the Doe Defendants)**

230. Plaintiff restates and realleges the allegations of paragraphs 1 through 186 and 213 through 229, above, as though fully set forth herein.

231. Plaintiff brings this Count individually and on behalf of members of the Civil Rights Subclass against the Doe Defendants.

50

232. Prior to Plaintiff and Civil Rights Subclass Members being harmed by the violations of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments, as alleged herein, the Doe Defendants agreed among themselves, and with other individuals to deprive Plaintiff and Civil Rights Subclass Members of those constitutional rights – namely, the right to be free from unreasonable searches and seizures.

233. In furtherance of the conspiracy, each of the coconspirators – including each of the Doe Defendants – engaged in and facilitated numerous overt acts, including but not limited to those set forth above – such as: (a) integrating and embedding Defendant Heap's data analytics platform and JavaScript code into the Naviance platform and other online products offered Defendants PowerSchool and Hobsons; (b) intercepting and recording all of the communications of Plaintiff and Civil Rights Subclass Members while they accessed and navigated the Naviance platform and other online products offered by PowerSchool and Hobsons; (c) contemporaneously transmitting the intercepted and recorded communications to Heap's servers; and (d) preparing and disseminating materials that misrepresented the purported commitment to privacy of PowerSchool and Hobsons. Each Doe Defendant was also a willful participant in joint activity.

234. Each of the Doe Defendants was a voluntary participant in the common venture to deprive Plaintiff and Civil Rights Subclass Members of their Fourth and Fourteenth Amendment rights. Each of the Doe Defendants personally participated in the unconstitutional conduct, acted jointly with other Doe Defendants who participated or acquiesced in the unconstitutional conduct, or was at least aware of the conduct or plan and failed to take action to prevent such conduct from occurring.

235. As a direct and proximate result of the illicit prior agreement and actions in furtherance of the conspiracy referenced above, Plaintiff's and Civil Rights Subclass Members' rights were violated, and they suffered injuries, as alleged herein.

236. The misconduct of the PowerSchool Doe Defendants described in this Count was undertaken pursuant to the policy and practice of Defendant PowerSchool, in the manner more fully described in Count Four, below.

237. The misconduct of the Hobsons Doe Defendants described in this Count was undertaken pursuant to the policy and practice of Defendant Hobsons, in the manner more fully described in Count Five, below.

238. The misconduct of the Heap Doe Defendants described in this Count was undertaken pursuant to the policy and practice of Defendant Heap, in the manner more fully described in Count Six, below.

**COUNT FOUR**
**POLICY AND PRACTICE CLAIM**
**(42 U.S.C. § 1983)**
**(On behalf of Plaintiff and the Civil Rights Subclass against Defendant PowerSchool)**

239. Plaintiff restates and realleges the allegations of paragraphs 1 through 186 and 213 through 238, above, as though fully set forth herein.

240. Plaintiff brings this Count individually and on behalf of members of the Civil Rights Subclass against Defendant PowerSchool.

241. As described more fully herein, Defendant PowerSchool is liable for the violations of Plaintiff's and Civil Rights Subclass Members' constitutional rights by virtue of its policies, practices and customs, which included policies, practices and customs to automatically intercept, and record all communications of public-school students each time they accessed and navigated

the Naviance platform and other online products offered by PowerSchool and Hobsons, despite there being no probable cause or reasonable suspicion of any unlawful or improper conduct.

242. The actions of the PowerSchool Doe Defendants were undertaken pursuant to the policies, practices and customs of Defendant PowerSchool, which were approved, encouraged and/or ratified by policymakers for PowerSchool with final policymaking authority.

243. One or more of the policies, practices and customs described in this Count was maintained and implemented by Defendant PowerSchool with deliberate indifference to Plaintiff's and Civil Rights Subclass Members' constitutional rights and was a moving force behind the violations of those rights.

244. As a direct and proximate result of Defendant PowerSchool's actions and inactions, Plaintiff's and Civil Rights Subclass Members' constitutional rights were violated, and they suffered injuries and damages, as alleged herein.

245. Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Defendant PowerSchool will continue to cause great and irreparable injury to Plaintiff and Civil Rights Subclass Members because PowerSchool will continue to pursue its unlawful policies, practices and customs, as alleged herein. Plaintiff and Civil Rights Subclass Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the unlawful conduct of PowerSchool.

**COUNT FIVE**
**POLICY AND PRACTICE CLAIM**
**(42 U.S.C. § 1983)**
**(On behalf of Plaintiff and the Civil Rights Subclass against Defendant Hobsons)**

246.    Plaintiff restates and realleges the allegations of paragraphs 1 through 186 and 213 through 238, above, as though fully set forth herein.

247.    Plaintiff brings this Count individually and on behalf of members of the Civil Rights Subclass against Defendant Hobsons.

248.    As described more fully herein, Defendant Hobsons is liable for the violations of Plaintiff's and Civil Rights Subclass Members' constitutional rights by virtue of its policies, practices and customs, which included policies, practices and customs to automatically intercept, and record all communications of public-school students each time they accessed and navigated the Naviance platform and other online products offered by PowerSchool and Hobsons, despite there being no probable cause or reasonable suspicion of any unlawful or improper conduct.

249.    The actions of the Hobsons Doe Defendants were undertaken pursuant to the policies, practices and customs of Defendant Hobsons, which were approved, encouraged and/or ratified by policymakers for Hobsons with final policymaking authority.

250.    One or more of the policies, practices and customs described in this Count was maintained and implemented by Defendant Hobsons with deliberate indifference to Plaintiff's and Civil Rights Subclass Members' constitutional rights and was a moving force behind the violations of those rights.

251.    As a direct and proximate result of Defendant Hobsons' actions and inactions, Plaintiff's and Civil Rights Subclass Members' constitutional rights were violated, and they suffered injuries and damages, as alleged herein.

252. Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Defendant Hobsons will continue to cause great and irreparable injury to Plaintiff and Civil Rights Subclass Members because Hobsons will continue to pursue its unlawful policies, practices and customs, as alleged herein. Plaintiff and Civil Rights Subclass Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the unlawful conduct of Hobsons.

**COUNT SIX**
**POLICY AND PRACTICE CLAIM**
**(42 U.S.C. § 1983)**
**(On behalf of Plaintiff and the Civil Rights Subclass against Defendant Heap)**

253. Plaintiff restates and realleges the allegations of paragraphs 1 through 186 and 213 through 238, above, as though fully set forth herein.

254. Plaintiff brings this Count individually and on behalf of members of the Civil Rights Subclass against Defendant Heap.

255. As described more fully herein, Defendant Heap is liable for the violations of Plaintiff's and Civil Rights Subclass Members' constitutional rights by virtue of its policies, practices and customs, which included policies, practices and customs to automatically intercept, and record all communications of public-school students each time they accessed and navigated the Naviance platform and other online products offered by PowerSchool and Hobsons, despite there being no probable cause or reasonable suspicion of any unlawful or improper conduct.

256. The actions of the Heap Doe Defendants were undertaken pursuant to the policies, practices and customs of Defendant Heap, which were approved, encouraged and/or ratified by policymakers for Heap with final policymaking authority.

257. One or more of the policies, practices and customs described in this Count was maintained and implemented by Defendant Heap with deliberate indifference to Plaintiff's and

55

Civil Rights Subclass Members' constitutional rights and was a moving force behind the violations of those rights.

258.    As a direct and proximate result of Defendant Heap's actions and inactions, Plaintiff's and Civil Rights Subclass Members' constitutional rights were violated, and they suffered injuries and damages, as alleged herein.

259.    Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Defendant Heap will continue to cause great and irreparable injury to Plaintiff and Civil Rights Subclass Members because Heap will continue to pursue its unlawful policies, practices and customs, as alleged herein. Plaintiff and Civil Rights Subclass Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the unlawful conduct of Heap.

<u>COUNT SEVEN</u>
**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**
**Cal. Penal Code § 631**
**(On behalf of Plaintiff, the Nationwide Class and Naviance Subclass against**
**Defendants PowerSchool, Heap and Chicago Public Schools)**

260.    Plaintiff restates and realleges the allegations of paragraphs 1 through 186, above, as though fully set forth herein.

261.    Plaintiff brings this Count individually and on behalf of members of the Nationwide Class and against Defendants PowerSchool, Heap and Chicago Public Schools

262.    The California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq.*, sets forth its purpose as follows:

The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630.

263.    Under the CIPA, "any person who has been injured by a violation of [the CIPA] may bring an action against the person who committed the violation . . . ." Cal. Penal Code § 637.2(a).

264.    A violation of § 631(a) of the CIPA occurs if, among other things, a person "by means of any machine instrument, or contrivance, or in any other manner":

[i] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or

[ii] willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state, or

[iii] uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or

[iv] aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above . . . .

Cal. Penal Code § 631(a) (paragraph numbers and line breaks added for readability).

265.    The applicability of Cal. Penal Code § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (the CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley*

57

*v. Google, Inc.*, 2006 WL 3798134, at \*5-6 (N.D. Cal. Dec. 22, 2006) (the CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' internet browsing history).

266.    In violation of the CIPA, Defendant Heap:

a.      intentionally tapped, and made an unauthorized connection – electrically, inductively, or otherwise – with, the lines of internet communication between Defendants PowerSchool and/or Hobsons, on the one hand, and Plaintiff, Nationwide Class Members and Naviance Subclass Members, on the other;

b.      willfully and without the consent of all parties to the communications, and in an unauthorized manner, read, attempted to read, and learned the contents and meaning of the communications, data transmissions and messages between Plaintiff, Nationwide Class Members and Naviance Subclass Members, on the one hand, and Defendants PowerSchool and/or Hobsons, on the other, while the same were in transit or passing over any wire, line, or cable, or being sent from, or received at any place within California;

c.      used or attempted to use the information obtained via its wiretapping to perform analysis on the communications, data transmissions and messages of Plaintiff, Nationwide Class members and Naviance Subclass while accessing and navigating the Naviance platform and other online products offered by PowerSchool and/or Hobsons; and

d.      aided and agreed and conspired with Defendants PowerSchool and, on

58

information and belief, Defendant Hobsons, to unlawfully do, permit and cause to be done the unlawful conduct alleged in subparagraphs (a), (b) and (c), above.

267. In violation of the CIPA, Defendant PowerSchool aided, and agreed and conspired with, Defendant Heap to permit and cause to be done proscribed conduct under § 631(a) of the CIPA, as alleged herein, including but not limited to integrating and embedding Heap's data analytics platform and code into the Naviance platform and other online products offered by PowerSchool.

268. The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA or constitute "any other manner" as used in the CIPA:

  a. The computer codes and programs Defendant Heap, as well as Google, Microsoft and ███, used to intercept, monitor, capture and record Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' communications and data transmissions while they were accessing and navigating the Naviance platform and other online products offered by PowerSchool and/or Hobsons;

  b. Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' browsers;

  c. Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' computing and mobile devices;

  d. Defendant Heap's web servers, as well as the web servers of Google, Microsoft and ███;

59

e.   The web servers from which Defendant Heap, Google, Microsoft and ▮▮▮▮, intercepted and recorded Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' communications, data transmissions and messages while they were using a web browser to access and navigate the Naviance platform and other online products offered by PowerSchool and/or Hobsons;

f.   The computer codes and programs used by Defendant Heap, as well as Google, Microsoft and ▮▮▮▮ to effectuate their interception and recording of Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' communications, data transmissions and messages while they were using a browser to access and navigate the Naviance platform and other online products offered by PowerSchool and/or Hobsons;

g.   The plan Defendant Heap, as well as Google, Microsoft and ▮▮▮▮, carried out to effectuate its interception and recording of Plaintiff's, Class Members' and Naviance Subclass Members' communications, data transmissions and messages while they were using a web browser or mobile application to access and navigate the Naviance platform and other online products offered by PowerSchool and/or Hobsons; and

h.   Defendant Heap's data analytics platform and code, as well as the code of Google, Microsoft and ▮▮▮▮, among others, embedded and integrated into the Naviance platform and other online products offered by PowerSchool and/or Hobsons.

269.    Plaintiff, Nationwide Class Members and Subclass Members did not consent to the unlawful conduct of Defendants PowerSchool and Heap, as alleged herein.

270.    Among the contents of communications, data transmissions and messages Defendant Heap intercepted, read, attempted to read and learned were: (a) the contents of Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' confidential education and school student records and the information contained therein, including answers to surveys and assessments, information regarding college and career goals and information regarding colleges in which Plaintiff, Nationwide Class Members and Naviance Subclass Members were interested; and (b) email messages stored within the Naviance platform.

271.    By engaging in the unlawful conduct alleged herein, Defendants PowerSchool and Heap violated Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' statutorily-protected right to privacy.

272.    On information and belief, Defendant Heap's and Defendant PowerSchool's violations of the CIPA, as alleged herein, occurred in California.

273.    As a result of the conduct alleged herein, under the CIPA, Defendants PowerSchool and Heap are each liable to Plaintiff and each Nationwide Class Member and Naviance Subclass Member in the amount of, the greater of, $5,000 dollars per violation or three times the amount of actual damages.

274.    Defendant Chicago Public Schools is vicariously liable for the conduct of Defendant PowerSchool.

275.    Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Defendants PowerSchool and Heap will continue to cause great and irreparable injury to Plaintiff, Nationwide Class Members and Naviance Subclass Members because PowerSchool

61

and Heap will continue to unlawfully tap and intercept the contents of students' communications, data transmissions and messages within the Naviance platform and other online products offered by PowerSchool while they access and navigate the platform. Plaintiff, Nationwide Class Members and Naviance Subclass Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the unlawful conduct of PowerSchool and Heap.

## COUNT EIGHT
### VIOLATION OF THE CIPA
### Cal. Penal Code § 632
### (On behalf of Plaintiff, the Nationwide Class and
### Naviance Subclass against Defendant Heap)

276. Plaintiff restates and realleges the allegations of paragraphs 1 through 186, above, as though fully set forth herein.

277. Plaintiff brings this Count individually and on behalf of members of the Nationwide Class and Naviance Subclass against Defendant Heap.

278. Under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq.*, "any person who has been injured by a violation of [the CIPA] may bring an action against the person who committed the violation . . . ." Cal. Penal Code § 637.2(a).

279. Section 632 of the CIPA prohibits every person, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, from eavesdropping upon or recording the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone or other device, except a radio. Cal. Penal Code § 632.

280. In violation of the CIPA, Defendant Heap intentionally and without the consent of all parties, namely without the consent of Plaintiff, Nationwide Class Members and Naviance Subclass Members, eavesdropped upon and recorded the confidential communications, data

62

transmissions and messages between: (a) Defendant PowerSchool and Plaintiff, Nationwide Class Members and Naviance Subclass Members; and, on information and belief, (b) Defendant Hobsons and Plaintiff, Nationwide Class Members and Naviance Subclass Members, which communications occurred by means of the internet when Plaintiff, Nationwide Class Members and Naviance Subclass accessed and navigated the Naviance platform and other online products offered by PowerSchool and/or Hobsons.

281. Defendant Heap accomplished its eavesdropping and recording through the use of an electronic amplifying or recording device or devices, including: (a) its data analytics platform and code that was integrated and embedded into the Naviance platform and other online products offered by PowerSchool and Hobsons; (b) its web servers; and (c) its computer code and programs that it utilized in connection with Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' communications within the Naviance platform and other online products offered by PowerSchool and/or Hobsons.

282. Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' communications, data transmissions and messages within the Naviance platform and other online products offered by PowerSchool and/or Hobsons, including their completion of assessments and surveys and exploration of colleges of interest, constituted education and school student records under the FERPA and ISSRA, respectively, and were otherwise confidential.

283. By engaging in the unlawful conduct alleged herein, Defendant Heap violated Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' statutorily-protected right to privacy.

284. On information and belief, Defendant Heap's violation of the CIPA, as alleged herein, occurred in California.

285. As a result of the conduct alleged herein, under the CIPA, Defendant is liable to Plaintiff and each Nationwide Class Member and Naviance Subclass Member in the amount of, the greater of, $5,000 dollars per violation or three times the amount of actual damages.

**COUNT NINE**
**VIOLATION OF STORED COMMUNICATIONS ACT**
**18 U.S.C. § 2702(a)(1)**
**(On behalf of Plaintiff, the Nationwide Class and Naviance Subclass against**
**Defendants PowerSchool, Hobsons and Chicago Public Schools)**

286. Plaintiff restates and realleges the allegations of paragraphs 1 through 186, above, as though fully set forth herein.

287. Plaintiff brings this Count individually and on behalf of members of the Nationwide Class and Naviance Subclass against Defendants PowerSchool, Hobsons and Chicago Public Schools.

288. Plaintiff brings this Count in the alternative to Counts One, Seven and Eight, above.

289. Pursuant to the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

290. The Stored Communications Act defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2711(1); 18 U.S.C. § 2510(15).

291. The Stored Communications Act defines "electronic communication" as "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce . . . ." 18 U.S.C. § 2711(1); 18 U.S.C. § 2510(12).

64

292. The Stored Communications Act defines "electronic storage" as: "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2711(1); 18 U.S.C. § 2510(17).

293. At relevant times, Defendants PowerSchool and Hobsons respectively provided an electronic communication service to the public, namely, a web-based email client that allowed users of the Naviance platform to send and receive email messages, which are electronic communications under the Stored Communications Act.

294. At relevant times, email messages received by Plaintiff, Nationwide Class Members and Naviance Subclass Members were in electronic storage, as defined by the Stored Communications Act, within the respective web-based email client of Defendants PowerSchool and Hobsons.

295. While the email messages received by Plaintiff, Nationwide Class Members and Naviance Subclass Members were in electronic storage within the respective web-based email client of Defendants PowerSchool and Hobsons, those defendants knowingly, willfully and intentionally divulged to ████ the contents of the emails by embedding and integrating ████ code into the Naviance platform.

296. Plaintiff, Nationwide Class Members and Naviance Subclass Members have been, and continue to be, aggrieved by Defendants PowerSchool's and Hobsons' violations of the Stored Communications Act.

297. Pursuant to the Stored Communications Act, Plaintiff, Nationwide Class Members and Naviance Subclass Members seek: (a) their actual damages and any profits made by

Defendants PowerSchool and Hobsons as a result of their violations of the Stored Communications Act, but in no case shall each of their individual recoveries be less than the sum of $1,000; (b) punitive damages; (c) a reasonable attorney's fee and other litigation costs reasonably incurred; and (d) a declaration that PowerSchool's and Hobsons' conduct as alleged herein violated, and continues to violate, the Stored Communications Act.

298.    Defendant Chicago Public Schools is vicariously liable for the conduct of Defendants PowerSchool and Hobsons.

299.    Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Defendant PowerSchool will continue to cause great and irreparable injury to Plaintiff, Nationwide Class Members and Naviance Subclass Members in that Defendant PowerSchool, on information and belief, continues to electronically store Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' electronic communications. Plaintiff, Nationwide Class Members and Naviance Subclass Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the unlawful conduct of PowerSchool.

**COUNT TEN**
**VIOLATION OF THE ILLINOIS EAVESDROPPING ACT**
**720 Ill. Comp. Stat. 5/14-1, *et seq.***
**(On behalf of Plaintiff and the Illinois Subclass, against**
**Defendants PowerSchool, Hobsons, Heap and Chicago Public Schools)**

300.    Plaintiff restates and realleges the allegations of paragraphs 1 through 186, above, as though fully set forth herein.

301.    Plaintiff brings this Count individually and on behalf of members of the Illinois Subclass against Defendants PowerSchool, Hobsons, Heap and Chicago Public Schools.

302.    Plaintiff brings this Count in the alternative to Count Nine, above.

303. Under the Illinois Eavesdropping Act, 720 Ill. Comp. Stat. 5/14-1, *et seq.*, it is unlawful for a person to knowingly and intentionally "intercept[], record[], or transcribe[], in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication." 720 Ill. Comp. Stat. 5/14-2(a)(3).

304. Under the Illinois Eavesdropping Act, an injured party is entitled to civil remedies against both the eavesdropper and the eavesdropper's principal. 720 Ill. Comp. Stat. 5/14-6.

305. Under the Illinois Eavesdropping Act, a "private electronic communication" means "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or part by a wire, radio, pager, computer, electromagnetic, photo electronic or photo optical system, when the sending or receiving party intends the electronic communication to be private under circumstances reasonably justifying that expectation." 720 Ill. Comp. Stat. 5/14-1(e).

306. Under the Illinois Eavesdropping Act, "surreptitious" means "obtained or made by stealth or deception, or executed through secrecy or concealment." 720 Ill. Comp. Stat. 5/14-1(g).

307. Under the Illinois Eavesdropping Act, an "eavesdropper" is "any person, including any law enforcement officer and any party to a private conversation, who operates or participates in the operation of any eavesdropping device contrary to the provisions of [the Illinois Eavesdropping Act] or who acts as a principal . . . ." 720 Ill. Comp. Stat. 5/14-1(b).

308. Under the Illinois Eavesdropping Act, an "eavesdropping device" is "any device capable of being used to hear or record oral conversations or intercept or transcribe electronic communications whether such conversation or electronic communication is conducted in person, by telephone, or by any other means." 720 Ill. Comp. Stat. 5/14-1(a).

309.    Under the Illinois Eavesdropping Act, a "principal" is any person who: "(1) [k]nowingly employs another who illegally uses an eavesdropping device in the course of such employment; or (2) [k]nowingly derives any benefit or information from the illegal use of an eavesdropping device by another; or (3) [d]irects another to use an eavesdropping device illegally on his or her behalf." 720 Ill. Comp. Stat. 5/14-1(c).

310.    Under the Illinois Eavesdropping Act, the information Plaintiff and Illinois Subclass Members sent and received while using the Naviance platform and other online products offered by Defendants PowerSchool and Hobsons, including responses to surveys and assessments, information about interests in colleges and information regarding potential future careers and educational opportunities, as well as email communications, constituted – and continue to constitute – private electronic communications.

311.    Under the Illinois Eavesdropping Act, the following constitute eavesdropping devices, as they are capable of being used to record and intercept electronic communications, including the electronic communications of Plaintiff and Class members or Illinois Subclass members while accessing and navigating the Naviance platform:

a.    The computer codes and programs Defendant Heap, as well as Google, Microsoft and ███ used to intercept, monitor, capture and record Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' communications and data transmissions while they were accessing and navigating the Naviance platform and other online products offered by PowerSchool and/or Hobsons;

68

b.   Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' browsers;

c.   Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' computing and mobile devices;

d.   Defendant Heap's web servers, as well as the web servers of Google, Microsoft and ███;

e.   The web servers from which Defendant Heap, Google, Microsoft and ███, intercepted and recorded Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' communications, data transmissions and messages while they were using a web browser to access and navigate the Naviance platform and other online products offered by PowerSchool and/or Hobsons;

f.   The computer codes and programs used by Defendant Heap, as well as Google, Microsoft and ███ to effectuate their interception and recording of Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' communications, data transmissions and messages while they were using a browser to access and navigate the Naviance platform and other online products offered by PowerSchool and/or Hobsons;

g.   The plan Defendant Heap, as well as Google, Microsoft and ███, carried out to effectuate its interception and recording of Plaintiff's, Class Members' and Naviance Subclass Members' communications, data transmissions and messages while they were using a web browser or mobile

69

application to access and navigate the Naviance platform and other online products offered by PowerSchool and/or Hobsons; and

h. Defendant Heap's data analytics platform and code, as well as the code of Google, Microsoft and ███, among others, embedded and integrated into the Naviance platform and other online products offered by PowerSchool and/or Hobsons.

312. Defendant Heap was an eavesdropper under the Illinois Eavesdropping Act because it operated an eavesdropping device on the Naviance platform and other online products offered by Defendants PowerSchool and/or Hobsons.

313. Defendant Heap committed eavesdropping under the Illinois Eavesdropping Act because it knowingly and intentionally intercepted and recorded private electronic communications to which it was not a party, namely, the private electronic communications alleged herein, without the consent of all parties to the private electronic communications.

314. Plaintiff and Illinois Subclass members did not consent to Defendant Heap's interception and recording of their private electronic communications while accessing and navigating the Naviance platform and other online products offered by Defendants PowerSchool and/or Hobsons.

315. Defendant PowerSchool was, and continues to be, an eavesdropper under the Illinois Eavesdropping Act because it acted, and continues to act, as a principal. PowerSchool was, and continues to be, a principal under the Illinois Eavesdropping Act because it: (a) knowingly derives and derived a benefit and information from the illegal use of the eavesdropping devices of Defendant Heap, Google, Microsoft and ███ – including detailed information about students who use and used the Naviance platform and other online products offered by PowerSchool,

including Plaintiff and Illinois Subclass Members; and (b) directed Defendant Heap, as well as Google, Microsoft and ███, to illegally use an eavesdropping device on PowerSchool's behalf.

316. On information and belief, Defendant Hobsons was an eavesdropper under the Illinois Eavesdropping Act because it acted as a principal. On information and belief, Hobsons was a principal under the Illinois Eavesdropping Act because it: (a) knowingly derived a benefit and information from the illegal use of the eavesdropping devices of Defendant Heap, Google, Microsoft and ███ – including detailed information about students who used the Naviance platform and other online products offered by Hobsons, including Plaintiff and Illinois Subclass Members; and (b) directed Defendant Heap, as well as Google, Microsoft and ███ to illegally use an eavesdropping on Hobsons' behalf.

317. The unlawful conduct of Defendants PowerSchool, Hobsons and Heap, as alleged herein, has injured Plaintiff and Illinois Subclass Members and entitles them to actual and punitive damages.

318. Defendant Chicago Public Schools is vicariously liable for the conduct of Defendants PowerSchool and Hobsons.

319. Moreover, unless and until enjoined and restrained by order of this Court, the wrongful conduct of Defendant PowerSchool will continue to cause great and irreparable injury to Plaintiff and Illinois Subclass Members in that Defendant PowerSchool will continue to unlawfully eavesdrop on students' private electronic communications, data transmissions and messages while they access and navigate the Naviance platform and other online products offered by PowerSchool. Plaintiff and Illinois Subclass Members have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the unlawful conduct of PowerSchool.

**COUNT ELEVEN**
**INTRUSION UPON SECLUSION**
**(On behalf of Plaintiff, the Nationwide Class and**
**Naviance Subclass against Defendant Heap)**

320.    Plaintiff restates and realleges the allegations of paragraphs 1 through 186, above, as though fully set forth herein.

321.    Plaintiff brings this Count individually and on behalf of members of the Nationwide Class and Naviance Subclass against Defendant Heap.

322.    Plaintiff, Nationwide Class Members and Naviance Subclass Members had a legitimate expectation of privacy in their sensitive and confidential education and school student records and the information contained therein and their communications within the Naviance platform and other online products offered by Defendants PowerSchool and Hobsons.

323.    Plaintiff, Nationwide Class Members and Naviance Subclass Members were entitled to protection of this information against unauthorized intrusion by third parties.

324.    Through Defendant Heap's data analytics platform and code that was surreptitiously integrated and embedded within the Naviance platform and other online products offered by Defendants PowerSchool and Hobsons, Heap, without authorization, intruded on, intercepted and recorded Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' sensitive and confidential education and school student records and the information contained therein, as well as the communications of Plaintiff, Nationwide Class Members and Naviance Subclass Members.

325.    Defendant Heap's unauthorized conduct – targeted towards school-age children – is highly offensive to a reasonable person.

72

326.    The intrusion was into a place or thing that was private and entitled to be private.

327.    Given that federal and state laws protect the information at issue, the promises of Defendants PowerSchool and Hobsons regarding the importance of privacy, and the provisions of the Initial and Subsequent Contracts regarding the handling and treatment of Student Data and Confidential Information, it was reasonable for Plaintiff, Nationwide Class Members and Naviance Subclass Members to believe that the information and activities described herein would be kept private and confidential and would not be disclosed without their authorization.

328.    Defendant Heap's conduct, as alleged herein, constitutes an unauthorized intrusion or prying into Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' seclusion.

329.    Defendant Heap acted with a knowing state of mind when it engaged in the conduct alleged herein.

330.    As a direct and proximate result of the above acts of Defendant Heap, Plaintiff, Nationwide Class Members and Naviance Subclass Members sustained injuries, damages and anguish and otherwise suffered.

## COUNT TWELVE
### BREACH OF CONTRACT – THIRD PARTY BENEFICIARIES
### (On behalf of Plaintiff and the CPS Student Subclass against Defendant Hobsons)

331.    Plaintiff restates and realleges the allegations of paragraphs 1 through 186, above, as though fully set forth herein.

332.    Plaintiff brings this Count individually and on behalf of members of the CPS Student Subclass against Defendant Hobsons.

333.    Defendant Chicago Public Schools and Defendant Hobsons entered into the Initial Contract which provided Chicago Public Schools and CPS Students, among others, with access to the Naviance platform.

334.    The term of the Initial Contract ran from July 1, 2015 through June 30, 2018, with two options to renew for periods of one year each. Defendant Chicago Public Schools and Defendant Hobsons exercised each renewal option, extending the term of the Initial Contract through June 30, 2020.

335.    The Initial Contract provided that it shall be governed as to performance and interpretation in accordance with the laws of the State of Illinois.

336.    Defendant Chicago Public Schools paid Defendant Hobsons monetary consideration in return for Hobsons making the Naviance platform available to Chicago Public Schools and CPS Students, among others.

337.    Defendant Chicago Public Schools and Defendant Hobsons intended for CPS Students, including Plaintiff and CPS Student Subclass Members, to directly and substantially benefit from the Initial Contract, and CPS Students, including Plaintiff and CPS Student Subclass Members, were intended third-party beneficiaries of the Initial Contract.

338.    For instance, with respect to the Naviance platform, the Initial Contract specifically prohibited Defendant Hobsons from imposing terms and conditions on CPS Students, including Plaintiff and CPS Student Subclass Members, outside of those terms contained in the Initial Contract – *i.e.*, the Initial Contract made clear that CPS Students, including Plaintiff and CPS Student Subclass Members, were intended to benefit from, and be protected by, the provisions of the Initial Contract.

339. Further, the Initial Contract contained numerous provisions regulating and restricting Defendant Hobsons' use, protection, disclosure and transfer of Student Data, a form of Confidential Data, which provisions directly and intentionally benefitted CPS Students, including Plaintiff and CPS Student Subclass Members. Moreover, the Initial Contract required Defendant Hobsons to comply with all applicable laws, including the FERPA and the ISSRA – laws that protect Plaintiff's and CPS Student Subclass Members' education and school student records and the information contained therein.

340. As a direct and intended beneficiary of the Initial Contract, Plaintiff may sue for breach of contract.

341. Defendant Hobsons breached the Initial Contract by failing to perform its obligations thereunder that were intended to directly benefit Plaintiff and CPS Student Subclass Members, including but not limited to, its obligations with respect to the use, protection, disclosure and transfer of Student Data.

342. Defendant Hobsons also breached its duty of good faith and fair dealing under the Initial Contract.

343. As a direct and proximate result of Defendant Hobsons' breach of the Initial Contract, Plaintiff and CPS Student Subclass Members suffered injuries and damages, including the loss of control over their sensitive and confidential education and school student records and the information contained therein.

344. Defendant Hobsons' breach of the Initial Contract was a direct and legal cause of Plaintiff's and CPS Student Subclass Members' injuries and damages.

**COUNT THIRTEEN**
**BREACH OF CONTRACT – THIRD PARTY BENEFICIARIES**
**(On behalf of Plaintiff and the CPS Student Subclass**
**against Defendants PowerSchool and Hobson)**

345. Plaintiff restates and realleges the allegations of paragraphs 1 through 186, above, as though fully set forth herein.

346. Plaintiff brings this Count individually and on behalf of members of the CPS Student Subclass against Defendants PowerSchool and Hobsons.

347. Defendant Chicago Public Schools and Defendant Hobsons entered into the Subsequent Contract which provided Chicago Public Schools and CPS Students, among others, with access to the Naviance platform.

348. The term of the Subsequent Contract ran from July 1, 2020 through June 30, 2023.

349. In May 2022, Hobsons assigned and transferred to Defendant PowerSchool all rights, title, duties, obligations and interest in and to the Subsequent Contract. For the remainder of this Count, Defendants PowerSchool and Hobsons are collectively referred to as "PowerSchool."

350. The Subsequent Contract provided that it shall be governed as to performance and interpretation in accordance with the laws of the State of Illinois.

351. Defendant Chicago Public Schools paid Defendant PowerSchool monetary consideration in return for PowerSchool making the Naviance platform available to Chicago Public Schools and CPS Students, among others.

352. Defendant Chicago Public Schools and Defendant PowerSchool intended for CPS Students, including Plaintiff and CPS Student Subclass Members, to directly and substantially benefit from the Subsequent Contract, and CPS Students, including Plaintiff and CPS Student Subclass Members, were intended third-party beneficiaries of the Subsequent Contract.

353.    For instance, with respect to the Naviance platform, the Subsequent Contract specifically prohibited Defendant PowerSchool from imposing terms and conditions on CPS Students, including Plaintiff and CPS Student Subclass Members, outside of those terms contained in the Subsequent Contract – *i.e.*, the Subsequent Contract made clear that CPS Students, including Plaintiff and CPS Student Subclass Members, were intended to benefit from, and be protected by, the provisions of the Subsequent Contract.

354.    Further, the Subsequent Contract contained numerous provisions regulating and restricting Defendant PowerSchool's use, protection, disclosure and transfer of Student Data, a form of Confidential Information, which provisions directly and intentionally benefitted CPS Students, including Plaintiff and CPS Student Subclass Members. Moreover, the Subsequent Contract required Defendant PowerSchool to comply with all applicable laws, including the FERPA and the ISSRA – laws that protect Plaintiff's and CPS Student Subclass Members' education and school student records and the information contained therein.

355.    As a direct and intended beneficiary of the Subsequent Contract, Plaintiff may sue for breach of contract.

356.    Defendant PowerSchool breached the Subsequent Contract by failing to perform its obligations thereunder that were intended to directly benefit Plaintiff and CPS Student Subclass Members, including but not limited to, its obligations with respect to the restrictions on the use, protection, disclosure and transfer of Student Data.

357.    Defendant PowerSchool also breached its duty of good faith and fair dealing under the Subsequent Contract.

358.    As a direct and proximate result of Defendant PowerSchool's breach of the Subsequent Contract, Plaintiff and CPS Student Subclass Members suffered injuries and damages,

77

including the loss of control over their sensitive and confidential education and school student records and the information contained therein.

359.     Defendant PowerSchool's breach of the Subsequent Contract was a direct and legal cause of Plaintiff's and CPS Student Subclass Members' injuries and damages.

**COUNT FOURTEEN**
**VIOLATION OF THE ISSRA – 105 Ill. Comp. Stat. 10/1, *et seq.***
**(On behalf of Plaintiff and the Illinois Subclass**
**against Defendant PowerSchool and Chicago Public Schools)**

360.     Plaintiff restates and realleges the allegations of paragraphs 1 through 186, as though fully set forth herein.

361.     Plaintiff brings this Count individually and on behalf of members of the Illinois Subclass against Defendants PowerSchool and Chicago Public Schools.

362.     Plaintiff brings this Count in the alternative to Counts One, Seven, Eight and Ten, above.

363.     Under the ISSRA, "[n]o school student records or information contained therein may be released, transferred, disclosed or otherwise disseminated," unless a specified exception applies. 105 Ill. Comp. Stat. 10/6(a).

364.     Defendant PowerSchool is a school under the ISSRA because it is a person or institution which maintains school student records from more than one school.

365.     Defendant PowerSchool wilfully or, in the alternative, negligently, violated the ISSRA by releasing, transferring, disclosing and otherwise disseminating school student records of Illinois students, including Plaintiff and Illinois Subclass Members, where no exception to the prohibition on such release, transfer, disclosure or dissemination applied.

366.      Plaintiff and Illinois Subclass Members are aggrieved and injured under the ISSRA as a result of Defendant PowerSchool's unlawful conduct.

78

367. Defendant PowerSchool is liable to Plaintiff and Illinois Subclass Members for their damages, the costs of this action and reasonable attorneys' fees.

368. Defendant Chicago Public Schools is vicariously liable for the conduct of Defendant PowerSchool.

369. Unless and until enjoined and restrained by order of this Court, Defendant PowerSchool's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Illinois Subclass Members because PowerSchool may continue to engage in its unlawful conduct. Plaintiff and Illinois Subclass Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end PowerSchool's unlawful conduct.

## COUNT SIXTEEN
## UNJUST ENRICHMENT
### (On behalf of Plaintiff, the Nationwide Class and Naviance Subclass against Defendants PowerSchool, Hobsons and Heap)

370. Plaintiff restates and realleges the allegations of paragraphs 1 through 186, as though fully set forth herein.

371. Plaintiff brings this Count individually and on behalf of members of the Nationwide Class and Naviance Subclass against Defendants PowerSchool, Hobsons and Heap.

372. To the detriment of Plaintiff, Nationwide Class Members and Naviance Subclass Members, Defendants PowerSchool, Hobsons and Heap have been, and/or continue to be, unjustly enriched as a result of their wrongful conduct, as alleged herein.

373. Defendants PowerSchool, Hobsons and Heap obtained benefits from Plaintiff, Nationwide Class Members and Naviance Subclass Members through inequitable means, in that, without authorization, those Defendants improperly used and disclosed Plaintiff's, Nationwide Class Members' and Naviance Subclass Members' sensitive and confidential education records, school student records and other Student Data and profited therefrom. PowerSchool, Hobsons and

79

Heap did not compensate Plaintiff, Nationwide Class Members and Naviance Subclass Members for the benefits received from the above-described conduct.

374. Defendants PowerSchool, Hobsons and Heap appreciated, accepted and retained the benefits bestowed upon them under inequitable and unjust circumstances arising from their unlawful conduct, as alleged herein.

375. Plaintiff, Nationwide Class Members and Naviance Subclass Members have no adequate remedy at law.

376. Under the circumstances and under the principles of equity and good conscience, it would be unjust and unfair for Defendants PowerSchool, Hobsons and Heap to retain any of the benefits obtained from Plaintiff, Nationwide Class Members and Naviance Subclass Members.

377. Defendants PowerSchool, Hobsons and Heap should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff, Nationwide Class Members and Naviance Subclass Members, proceeds that they unjustly received in connection with the sensitive and confidential education records, school student records and other Student Data of Plaintiff, Nationwide Class Members and Naviance Subclass Members.

### COUNT SIXTEEN
#### *RESPONDEAT SUPERIOR*
**(On behalf of Plaintiff and the Civil Rights Subclass against Defendant PowerSchool)**

378. Plaintiff restates and realleges the allegations of paragraphs 1 through 186 and 213 through 229, as though fully set forth herein.

379. Plaintiff brings this Count individually and on behalf of members of the Civil Rights Subclass against Defendant PowerSchool.

380.    In committing the alleged acts in the preceding paragraphs, each of the PowerSchool Doe Defendants was a member of, and agent of, Defendant PowerSchool, acting at all relevant times within the scope their employment or agency.

381.    Defendant PowerSchool is liable as a principal for all torts committed by its agents.

## COUNT SEVENTEEN
### *RESPONDEAT SUPERIOR*
**(On behalf of Plaintiff and the Civil Rights Subclass against Defendant Hobsons)**

382.    Plaintiff restates and realleges the allegations of paragraphs 1 through 186 and 213 through 229, as though fully set forth herein.

383.    Plaintiff brings this Count individually and on behalf of members of the Civil Rights Subclass against Defendant Hobsons.

384.    In committing the alleged acts in the preceding paragraphs, each of the Hobsons Doe Defendants was a member of, and agent of, Defendant Hobsons, acting at all relevant times within the scope their employment or agency.

385.    Defendant Hobsons is liable as a principal for all torts committed by its agents.

## COUNT EIGHTEEN
### *RESPONDEAT SUPERIOR*
**(On behalf of Plaintiff and the Civil Rights Subclass against Defendant Heap)**

386.    Plaintiff restates and realleges the allegations of paragraphs 1 through 186 and 213-229, as though fully set forth herein.

387.    Plaintiff brings this Count individually and on behalf of members of the Civil Rights Subclass against Defendant Heap.

388.    In committing the alleged acts in the preceding paragraphs, each of the Heap Doe Defendants was a member of, and agent of, Defendant Heap, acting at all relevant times within the scope their employment or agency.

389.    Defendant Heap is liable as a principal for all torts committed by its agents.

## COUNT NINETEEN
### *RESPONDEAT SUPERIOR*
**(On behalf of Plaintiff, the Nationwide Class, Naviance Subclass and Illinois
Subclass against Defendant Chicago Public Schools)**

390.    Plaintiff restates and realleges the allegations of paragraphs 1 through 212, 260 through 275, 286 through 319 and 360 through 369, as though fully set forth herein

391.    Plaintiff brings this Count individually and on behalf of members of the Nationwide Class, Naviance Subclass and Illinois Subclass against Defendant Chicago Public Schools.

392.    In committing the alleged acts in the preceding paragraphs, each of Defendants PowerSchool and Hobsons was a member of, and agent of, Defendant Chicago Public Schools, acting at all relevant times within the scope their employment or agency.

393.    Defendant Chicago Public Schools is liable as a principal for all torts committed by its agents..

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Nationwide Class and Subclasses, respectfully requests that the Court:

a.      Certify the proposed Nationwide Class and Subclasses, name Plaintiff the representative of the proposed Nationwide Class and Subclasses and appoint Plaintiff's counsel as Class counsel;

b.      Award Plaintiff and members of the proposed Nationwide Class and Subclasses statutory, compensatory, punitive, exemplary, consequential, general and any other type of permissible damages in amounts to be determined at trial;

    c.      Grant permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts and practices alleged herein;

    d.      Enter an order declaring that Defendants violated the constitutional and statutory provisions alleged herein;

    e.      Award Plaintiff and members of the proposed Nationwide Class and Subclasses pre-judgment and post-judgment interest as permitted by law;

    f.      Award to Plaintiff the costs and expenses of the action and reasonable attorneys' fees; and

    g.      Grant all such other relief as it deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: January 13, 2025

Respectfully submitted,

Q.J., individually and on behalf of all others similarly situated,

By:   /s/ Scott R. Drury
       SCOTT R. DRURY
       *Counsel for Plaintiff and Putative Class Members*

Scott R. Drury
DRURY LEGAL, LLC
6 Carriage Lane
Highwood, Illinois 60040
(312) 358-8225
scott@drurylegal.com

## <u>CERTIFICATE OF SERVICE</u>

I, Scott R. Drury, an attorney, hereby certify that, on January 13, 2025, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

*/s/ Scott R. Drury*
Scott R. Drury