**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Q.J., individually and on behalf of all others similarly situated, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:23-cv-05689 |
| | ) | |
| -vs- | ) | Judge Jorge L. Alonso |
| | ) | |
| POWERSCHOOL HOLDINGS LLC, *et al.*, | ) | Magistrate Judge Daniel P. McLaughlin |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S UNCONTESTED MOTION FOR AND MEMORANDUM IN SUPPORT**
**OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 2

    Plaintiff's Allegations .................................................................................................... 2

    The Litigation .................................................................................................................. 3

    Negotiation and Settlement ........................................................................................... 5

TERMS OF THE SETTLEMENT AGREEMENT ............................................................. 6

I.     Settlement Class Definition. ........................................................................................ 6

II.    Monetary Relief ............................................................................................................. 7

III.   Prospective Relief .......................................................................................................... 7

IV.   Payment of Settlement Notice and Administrative Costs ...................................... 9

V.    Payment of Attorneys' Fees, Costs and Expenses and Service Award ............... 9

VI.   Release of Liability ...................................................................................................... 10

ARGUMENT ......................................................................................................................... 10

I.     The Court Should Preliminarily Approve the Proposed Settlement and Direct
      Notice to the Proposed Settlement Class ................................................................ 10

      A.    The Settlement Class Can Be Certified ...................................................... 11

          1.    The Settlement Class Is Sufficiently Numerous ......................... 11

          2.    Common Issues of Fact and Law Predominate ........................... 12

          3.    Plaintiff's Claims Are Typical of Settlement Class
               Members' Claims ............................................................................... 13

          4.    The Adequacy Requirement Is Satisfied ..................................... 14

          5.    A Class Action Is Superior to Other Methods for Fairly
               and Efficiently Adjudicating This Action .................................... 15

6.     The Settlement Class Is Clearly Defined Based on Objective Criteria ..................................................................17

B.    The Proposed Settlement Is Within the Range of Possible Approval ...................18

1.     The Settlement Provides Substantial Relief to the Settlement Class, Particularly Given the Risks Posed by Continued Litigation ..............................................................19

2.     The Settlement Value Is Well Within the Range of Reasonableness ..................................................................24

3.     Further Litigation Would Be Complex, Lengthy and Expensive ............25

4.     Class Counsel Endorses the Settlement ......................................................26

5.     The Settlement Was Reached Near the End of Merits Discovery ..................................................................27

C.    The Notice Plan Should Be Approved in Form and Substance ...........................27

II.    Plaintiff's Counsel Should Be Appointed as Class Counsel ...............................................29

**CONCLUSION** ................................................................................30

# TABLE OF AUTHORITIES

**CASES**              **PAGE(S)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,*
2011 WL 3290302 (N.D. Ill. July 26, 2011).................................................................27

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds,*
568 U.S. 455 (2013)..........................................................................................................11

*Arreola v. Godinez,*
546 F.3d 788 (7th Cir. 2008) ..........................................................................................11

*Barnes v. Air Line Pilots Ass'n, Int'l,*
310 F.R.D. 551 (N.D. Ill. 2015) ....................................................................................11

*Beaton v. SpeedyPC Software,*
907 F.3d 1018 (7th Cir. 2018) ........................................................................................12

*Bell v. PNC Bank, Nat'l Ass'n,*
800 F.3d 360 (7th Cir. 2015) ..........................................................................................12

*Beltran v. Sony Pictures Entm't, Inc.*
No. 1:22-cv-04858 (N.D. Ill.)..........................................................................................24

*Bernal v. NRA Grp. LLC,*
318 F.R.D. 64 (N.D. Ill. 2016).................................................................................16, 17

*Doe v. Eating Recovery Ctr., LLC,*
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)..............................................................22

*Doe I v. Google LLC,*
741 F.Supp.3d 828 (N.D. Cal. 2024)..............................................................................22

*Fischer v. Instant Checkmate LLC,*
2022 WL 971479 (N.D. Ill. Mar. 31, 2022).............................................................13, 16

*Hernandez-Silva v. Instructure, Inc.,*
2025 WL 2233210 (C.D. Cal. Aug. 4, 2025)................................................................20

*Howard v. Cook Cnty. Sheriff's Office,*
989 F.3d 587 (7th Cir. 2021) ..........................................................................................12

*In re: AT&T Mobility Wireless Data Servs. Sales Litig.,*
270 F.R.D. 330 (N.D. Ill. 2010) .....................................................................................19

*In re: Facebook Biometric Info. Priv. Litig.*,
   No. 15-cv-03747 (N.D. Cal.) ...........................................................................25

*In re: Southwest Airlines Voucher Litig.*,
   2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) .......................................................20

*In re: TikTok, Inc., Consumer Privacy Litig.*,
   565 F.Supp.3d 1076 (N.D. Ill. 2021)............................................................ *passim*

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ............................................................................26

*Jackson v. Nat'l Action Fin. Servs., Inc.*,
   227 F.R.D. 284 (N.D. Ill. 2005) ....................................................................... 16

*Kurowski v. Rush Sys. for Health*,
   No. 1:22-cv-05380 (N.D. Ill.) ....................................................................... 23, 24

*Lechuga v. Elite Eng'g, Inc.*,
   559 F. Supp. 3d 736 (N.D. Ill. 2021) ................................................................ 14

*McKinnie v. JP Morgan Chase Bank, N.A.*,
   678 F.Supp.2d 806 (E.D. Wis. 2009) ................................................................26

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ........................................................................... 12

*Molinari v. Fin. Asset Mgmt. Sys., Inc.*,
   2020 WL 4345418 (N.D. Ill. July 29, 2020)....................................................... 30

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ................................................................11, 17, 18

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011)................................................................25

*Smith-Washington v. TaxAct, Inc.*,
   No. 3:23-cv-00830-VC (N.D. Cal.).....................................................................24

*Starr v. Chi. Cut Steakhouse*,
   75 F. Supp. 3d 859 (N.D. Ill. 2014) ..................................................................14

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) ........................................................................... 12

*Svoboda v. Amazon.com, Inc.*,
    162 F.4th 821 (7th Cir. 2025) ............................................................................17

*Torres v. Prudential Fin'l, Inc.*,
    2025 WL 1135088 (N.D. Cal. Apr. 17, 2025).....................................................22

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ............................................................................................12

*Vela v. AMC Networks, Inc.*
    No. 1:23-cv-02524-ALC (S.D.N.Y.)....................................................................24

*Wright v. Nationstar Mortg. LLC*,
    2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) .....................................................15

## STATUTES

### *Federal*

18 U.S.C. § 2511 .....................................................................................................4

18 U.S.C. § 2520 ...................................................................................................22

18 U.S.C. § 2702 .....................................................................................................4

18 U.S.C. § 2707 ...................................................................................................23

### *State*

Cal. Penal Code § 631 .............................................................................................4

Cal. Penal Code § 632 .............................................................................................4

Cal. Penal Code § 637.2 ........................................................................................22

5 Ill. Comp. Stat. 10/1 .............................................................................................4

720 Ill. Comp. Stat. 5/14-1 .....................................................................................4

## RULES

Fed. R. Civ. P. 23.............................................................................................*passim*

## OTHER AUTHORITIES

Newberg and Rubenstein on Class Actions (6th ed.) .........................................10

v

## INTRODUCTION

Plaintiff Q.J. ("Plaintiff") respectfully requests that this Court grant preliminary approval to the Parties'[1] proposed Class Action Settlement Agreement in this first-of-its-kind action that arises out of the alleged unlawful wiretapping of, and eavesdropping upon, school students while they used school-mandated education technology products. If approved, the Settlement will resolve on a classwide basis, Plaintiff's claims against Defendants PowerSchool Holdings, Hobsons, Heap and CPS. Specifically, the Settlement provides for Defendants to establish a non-reversionary Settlement Fund of $17,250,000 to be shared *pro rata* by claiming Settlement Class Members (net of administrative expenses, attorneys' fees, costs and expenses and a service award). Moreover, the Settlement provides for robust prospective relief that requires, *inter alia*: (a) Heap to delete the communications and data it obtained from Settlement Class Members while they used the Naviance Platform, an education technology product offered by Hobsons, and later, PowerSchool Holdings; (b) PowerSchool to instruct third parties that provided it with analytics or advertising software, technology and/or code for use within the Naviance Platform to delete the data of Settlement Class Members who used the Naviance Platform during the Class Period; (c) PowerSchool to modify its privacy practices and disclosures; and (d) CPS to require its vendors to comply with various federal and state privacy laws and to submit annual certifications of such compliance.

Prior to reaching the Settlement, the Parties litigated this matter for approximately 2.5 years. During that time, Plaintiff and Class Counsel: (a) largely defeated PowerSchool and CPS' motion to dismiss his First Amended Class Action Complaint (the "FAC"); and (b) engaged in extensive jurisdictional and merits discovery that included depositions and motion practice. Moreover, Class

---

[1] Capitalized terms used in this motion are defined in the Class Action Settlement Agreement (the "Settlement" or "Settlement Agreement"), submitted herewith as Exhibit 1.

Counsel: (a) undertook an extensive pre-suit investigation that included the filing of separate litigation against CPS to obtain critical documents underlying this lawsuit; and (b) initiated separate litigation against Heap in the Southern District of New York after this Court dismissed Heap on jurisdictional grounds. *See I.J. v. Heap Inc., now known as Content Square, Inc.* (the "*I.J. Action*"), No. 1:25-cv-07583-JLR (S.D.N.Y.).

Notwithstanding the Parties' zealous advocacy, from time-to-time, they discussed the possibility of settlement. To that end, Plaintiff, PowerSchool and CPS engaged in an unsuccessful early mediation with Hon. James F. Holderman (Ret.) of JAMS Chicago on December 7, 2023. Further, after the Court ruled on Defendants' motions to dismiss on August 20, 2025, all Parties engaged in settlement discussions that resulted in three further mediations with Judge Holderman between October 9, 2025 and January 13, 2026 that resulted in an agreement-in-principle on monetary terms. With further assistance from Judge Holderman, the Parties subsequently reached a settlement-in-principle on all material terms on January 23, 2026.

Plaintiff has achieved an outstanding result that provides immediate and ongoing relief. In light of this relief, as well as other considerations discussed below, the proposed Settlement Agreement satisfies the requirements for preliminary approval under Fed. R. Civ. P 23. Accordingly, Plaintiff respectfully requests that the Court preliminarily approve the proposed Settlement Agreement, certify the proposed Settlement Class for settlement purposes, direct that notice be provided to Settlement Class Members and schedule a final fairness hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Plaintiff's Allegations*

PowerSchool Holdings, which acquired Hobsons in spring 2021, claims to be the leading provider of cloud-based software to the kindergarten through twelfth-grade education market. Dkt. 118 ¶¶ 14, 20. One product offered by Hobsons, and later PowerSchool Holdings, was the

Naviance Platform, an education technology product that is, and has been, used by numerous schools throughout the United States, including schools operated by CPS. *Id.* ¶¶ 4, 93. Unbeknownst to students, including Plaintiff, and without their consent, PowerSchool Holdings and Hobsons allegedly aided and conspired with Heap and other third parties to unlawfully intercept without consent the confidential and sensitive communications of Settlement Class Members while using the Naviance Platform. *Id.* ¶¶ 7-8, 16, 23, 53-65, 76. Plaintiff alleges the intercepted communications included sensitive and confidential statutorily-protected education and school student records. *Id.* ¶¶ 8, 53-65. Defendants deny the allegations of the FAC and deny any allegation of wrongdoing.

### *The Litigation*

On August 18, 2023, Plaintiff filed this class action lawsuit against PowerSchool Holdings, Hobsons, Heap, CPS and various Doe defendants. Dkt. 1. Prior to the lawsuit being filed, Class Counsel conducted an extensive pre-filing investigation that included litigation against CPS to obtain, *inter alia*, Plaintiff's school student records related to his use of the Naviance Platform. Declaration of Scott R. Drury ("Drury Decl.") ¶¶ 5-6. The original complaint alleged violations of federal and state wiretapping, eavesdropping and privacy laws, as well as constitutional and common law claims. *See id.*

On December 21, 2023: (a) PowerSchool moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, alternatively to strike certain allegations (Dkt. 44-45); (b) Heap moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (Dkt. 37); and (c) CPS moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, to strike certain claims. Dkt. 41-42. Pursuant to the Parties' request, the Court stayed briefing on Defendants' motions and ordered jurisdictional discovery, which continued until late 2024. *See* Dkt. 52-53, 109. Plaintiff's

jurisdictional discovery efforts led to: (a) PowerSchool withdrawing its Rule 12(b)(1) motion; and (b) Plaintiff obtaining critical documents and testimony from Heap and its current and former employees, respectively, regarding the way in which Heap intercepted students' Naviance Platform communications and the content of those communications.[2] Dkt. 66 at 3; Dkt. 67; Dkt. 102 at 2, 9-10.

On January 13, 2025, after the close of jurisdictional discovery, Plaintiff filed the FAC, alleging violations of the: (a) Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(a); (b) California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631-632; (c) Stored Communications Act ("SCA"), 18 U.S.C. § 2702(a)(1); (d) Illinois Eavesdropping Act ("IEA"), 720 Ill. Comp. Stat. 5/14-1, *et seq.*; and (e) Illinois School Student Records Act ("ISSRA"), 5 Ill. Comp. Stat. 10/1, *et seq. See, generally*, Dkt. 118. Plaintiff also alleged various common law claims.[3] *See id.*

On February 27, 2025: (a) PowerSchool and CPS moved to dismiss the FAC or, alternatively, to strike portions of it (Dkt. 135-36); and (b) Heap moved to dismiss pursuant to Rules 12(b)(2) and 12(b)(6). Dkt. 134. On March 18, 2025, the Court permitted merits discovery to proceed during the pendency of the dismissal motions. Dkt. 144. Magistrate Judge McLaughlin subsequently set a discovery cutoff date of February 6, 2026. Dkt. 144, 148.

Class Counsel zealously pursued merits discovery, serving a combined total of 159 requests for production, forty-two interrogatories, 124 requests for admission, five demands for inspection and multiple third-party subpoenas. Drury Decl. ¶ 7. In response thereto, Defendants collectively produced over 500,000 pages of documents. *Id.* Class Counsel also deposed three former high-

---

[2] Plaintiff obtained much of this information only after Class Counsel raised Heap's failure to comply with its discovery obligations with Magistrate Judge Appenteng. *See* Dkt. 81, 86.

[3] The FAC also alleged various Section 1983 claims, which the Court dismissed. *See* Dkt. 178 at 14-17.

level PowerSchool employees with direct knowledge of the facts underlying Plaintiff's allegations and filed a motion to compel against PowerSchool. *Id.* ¶ 8; Dkt. 191. The motion to compel was pending when the Parties reached their settlement-in-principle. *See* Dkt.191, 194, 207. At no time did Plaintiff seek to extend the discovery cutoff date. *See, generally,* Dkt.

On August 20, 2025, the Court: (a) largely denied PowerSchool and CPS' motion to dismiss/strike; and (b) granted Heap's Rule 12(b)(2) motion to dismiss. Dkt. 178. Plaintiff subsequently sought reconsideration of the Court's Order as to Heap, which motion was pending at the time of the settlement-in-principle. Dkt. 183, 206.

***Negotiation and Settlement***

At various times, Class and Defendants' Counsel discussed the possibility of settlement. Drury Decl. ¶ 9. Those discussions led to Plaintiff, PowerSchool and CPS agreeing to an early, but unsuccessful, mediation with Judge Holderman in December 2023. *See* Dkt. 23 at 2.

Following the Court's August 2025 ruling on Defendants' motions to dismiss, all Parties, including Heap, agreed to mediate with Judge Holderman on October 9, 2025. Drury Decl. ¶ 10. While that full-day mediation did not result in a settlement, following the mediation, Class Counsel and PowerSchool's counsel engaged in extensive direct settlement negotiations. *Id.* Those continued negotiations led to all Parties agreeing to further mediate. *Id.*

On December 23, 2025 and January 13, 2026, the Parties engaged in two half-day mediations with Judge Holderman. *Id.* ¶ 11. On the latter date, the Parties reached an agreement-in-principle on the monetary terms of a settlement. *Id.* The Parties further met with Judge Holderman on January 20, 2026 to discuss non-monetary settlement terms. *Id.* On January 23, 2026, the Parties reached a settlement-in-principle on all material terms. *Id.*

It is notable that between the October 2025 and January 2026, the Parties continued to vigorously litigate the Action. During that time: (a) Plaintiff filed a motion to compel against PowerSchool (Dkt. 191); (b) Plaintiff and PowerSchool served additional written discovery (Drury Decl. ¶ 13); (c) Plaintiff pursued third-party discovery from various third parties, including Heap (*id.*); (d) Plaintiff and Heap fully briefed Plaintiff's motion for reconsideration (Dkt. 188-89); (e) Class Counsel responded to Heap's motion to dismiss in the *I.J. Action* (*I.J. Action* Dkt. 35); and (f) the parties in the *I.J. Action* served written discovery (Drury Decl. ¶ 13).

## TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth fully in the Class Action Settlement Agreement, and are briefly summarized here:

### I.     Settlement Class Definition.

The Settlement Class is defined as:

> All persons in the United States who, while a student, logged into the product offered by Hobsons and, later, PowerSchool Holdings, that is commonly referred to as Naviance (the "Naviance Platform"), at least once during the period beginning on August 18, 2021 and continuing through January 23, 2026 (the "Class Period"). For the avoidance of doubt, the Class Period includes times where Heap or other third-party analytics software were integrated and embedded into the Naviance Platform.

Ex. 1 ¶ 1.41. The definition also contains the typical exclusions from the Settlement Class: (a) any Judge or Magistrate presiding over this Action and members of their families; (b) Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, directors, agents, attorneys and employees; (c) persons who properly execute and file a timely request for exclusion from the class; and (d) the legal representatives, successors or assigns of any such excluded persons. *Id.*

## II.    Monetary Relief.

Pursuant to the Settlement Agreement, Defendants will establish a non-reversionary Settlement Fund in the amount of $17,250,000. *Id.* ¶ 1.43. Each Settlement Class Member who submits a valid Claim Form shall be entitled to payment of a *pro rata* share of the Settlement Fund after payment of Settlement Administration Expenses and any Fee Award and service award approved by the Court. *Id.* ¶ 2.1(b). Any checks that remain uncashed after 180 days of issuance, and any electronic deposits unable to be processed within 180 days of the first attempt, shall be redistributed on a *pro rata* basis (after first deducting any necessary Settlement Administration Expenses from such uncashed check funds and non-processed electronic deposits) to all Settlement Class Members who cashed checks or received electronic payments during the initial distribution, but only to the extent each Settlement Class Member would receive at least $5.00 in any such secondary distribution and if otherwise feasible. To the extent each Settlement Class Member would receive less than $5.00 in any such secondary distribution, or if a secondary distribution would be otherwise infeasible, any uncashed check funds and non-processed electronic deposits shall, subject to Court approval, revert to the Electronic Frontier Foundation, a non-sectarian, not-for-profit organization, or another non-sectarian, not-for-profit organization(s) recommended by Class Counsel and approved by the Court. *Id.* ¶ 2.1(d).

## III.    Prospective Relief.

The Settlement Agreement provides for robust prospective relief, which is set forth below:

- Within thirty (30) days of entry of Final Judgment, PowerSchool shall create a web governance committee ("Web Governance Committee") that will assess the implementation and use of analytics and advertising technologies within the Naviance Platform to evaluate whether such use is consistent with applicable law. Additionally, while continuing to deny liability, PowerSchool agrees that for the next two years, it will not use within the Naviance Platform any software, technology and/or code offered or provided by any third party, including but not limited to: (a) Heap Inc.; (b) Google LLC; (c) Microsoft Corporation; (d) Hotjar

Inc.; and (d) Gainsight, Inc., unless the Web Governance Committee determines that such use is consistent with applicable law at that time. For the avoidance of doubt, this Paragraph does not apply to software, technology and/or code offered or provided by data subprocessors, such as Amazon Web Services, Azure or Snowflake (*id.* § 2.2(a));

- Within thirty (30) days of entry of Final Judgment, PowerSchool shall supplement its existing disclosures in the Privacy Statement linked on the student.naviance.com landing page of the Naviance Platform to notify students about third-party analytics and advertising technologies implemented within the Naviance Platform, including but not limited to technologies offered by Heap Inc.; Google LLC; Microsoft Corporation; and Gainsight, Inc. Nothing in this Paragraph shall require PowerSchool to supplement disclosures for outdated or cached versions of the student.naviance.com landing page that are outside of its control (*id.* ¶ 2.2(b));

- Upon entry of Final Judgment, PowerSchool shall instruct (a) Heap Inc.; (b) Google LLC; (c) Microsoft Corporation; and (d) Hotjar Inc. to delete within ten (10) days of Final Judgment all data and communications of all Settlement Class Members who used the Naviance Platform during the Class Period to the extent the data and communications are in the possession, custody or control of those parties. PowerSchool shall make a similar request to Gainsight, Inc. within ten (10) days of any decision to cease use of Gainsight's analytics technology (*id.* ¶ 2.2(c));

- Within thirty (30) days of entry of Final Judgment, for a nine-month period, PowerSchool shall display via a banner on the student.naviance.com landing page of the Naviance Platform and a banner on the www.powerschool.com website a prominent notice about PowerSchool's commitment to privacy that states: "PowerSchool places great importance and value on the proper handling of personal data that flows within our product as we provide services to our customers. To learn more about our Privacy Principles, read our [hyperlinked] Global Privacy Statement." Nothing in this Paragraph requires PowerSchool to alter the appearance of outdated or cached versions of the www.powerschool.com website or the student.naviance.com landing page that are outside of its control (*id.* ¶ 2.2(d));

- From the date of entry of Final Judgment until the earlier of: (i) the fourth anniversary of the date of entry of Final Judgment, or (ii) a substantive change in the law that would significantly alter CPS's legal obligations described herein; CPS agrees to modify the contractual provisions it uses in contracts with third parties that handle Student Data, Student Confidential Information, and/or School Student Records, as those terms were defined in the July 1, 2020 Services Agreement between CPS and Hobsons, as set forth in Appendix A, hereto. CPS further agrees that it shall require any third party entering into a contract described above to provide, on at least an annual basis, a written attestation, made under penalty of perjury, that based on a reasonable and diligent investigation, Vendor reasonably believes that it is in full compliance with each provision of the contract, including,

where applicable, provisions requiring compliance with the Illinois School Student Records Act ("ISSRA"), 105 ILCS 10/1, *et seq.*; the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g and its implementing regulations; the Protection of Pupil Rights Amendment, 20 U.S.C. § 1232h and its implementing regulations; the Student Online Personal Protection Act ("SOPPA"), 105 ILCS 85/1, *et seq.*; the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.*; and the Illinois Eavesdropping Act, 720 ILCS 5/14-1, *et seq.* (*id.* ¶ 2.2(e)); and

- Within ten (10) days of entry of Final Judgment, Heap shall delete all primary – as distinct from backup – data and communications of Settlement Class Members who used the Naviance Platform during the Class Period to the extent the data and communications are in Heap's possession, custody or control. Within thirty (30) days of entry of Final Judgment, Heap shall delete all backup data and communications. For the avoidance of doubt, upon the deletion of the backup data and communications described herein, all data and communications of Settlement Class Members in Heap's possession, custody or control shall have been deleted (*id.* ¶ 2.2(f)).

## IV. Payment of Settlement Notice and Administrative Costs.

All Settlement notice and administration costs shall be paid from the Settlement Fund. *Id.* ¶ 1.43. This includes all expenses incurred by the Settlement Administrator in, or relating to, administering the Settlement, providing Notice, creating and maintaining the Settlement Website, receiving and processing Claim Forms, disbursing Settlement payments and any other related expenses. *Id.*

## V. Payment of Attorneys' Fees, Costs and Expenses and Service Award.

As part of the Settlement, Defendants have agreed that Class Counsel shall be entitled to an award of reasonable attorneys' fees and reimbursement of reasonable costs and expenses out of the Settlement Fund in an amount to be determined by the Court as the Fee Award. *Id.* ¶ 8.1. With no consideration given or received from Defendants, Class Counsel has agreed to limit its request to 37% of the Settlement Fund remaining after payment of Settlement Administration Expenses, litigation costs and expenses and any service award. *Id.* Similarly, with no consideration given or received from Defendants, Class Counsel will seek no more than $5,000 out of the Settlement

Fund as a service award to the Class Representative in recognition of his efforts as Class Representative. *Id.* ¶ 8.3. Should the Court award less than the above-described amounts sought by Plaintiff and Class Counsel, the difference in the amounts sought and the amounts ultimately awarded by the Court shall remain in the Settlement Fund for distribution to eligible Settlement Class Members. *Id.* Plaintiff and Class Counsel will move for the payments described herein via a separate request after preliminary approval and prior to the deadline to object.

## VI.     Release of Liability.

In exchange for the relief described above, each Settlement Class Member will release the Released Parties, including Defendants, from all past and present claims arising from or related to their alleged roles in the alleged nonconsensual interception or disclosure of information and communications of Settlement Class Members while using the Naviance Platform during the Class Period, including but not limited to all claims that were brought or could have been brought in the Action. *Id.* ¶¶ 1.36-1.38, 3.1-3.2.

## ARGUMENT

## I.     The Court Should Preliminarily Approve the Proposed Settlement and Direct Notice to the Proposed Settlement Class.

Approval of a class action settlement proceeds in three stages. First, the parties present a proposed settlement to the court for preliminary approval. Second, if the court preliminarily approves the settlement, notice of the proposed settlement is sent to the class, and class members are given an opportunity to object or opt out of the settlement. Third, after holding a final fairness hearing, the court decides whether to give final approval to the settlement. *See* Fed. R. Civ. P. 23(e); 4 Newberg and Rubenstein on Class Actions § 13:1 (6th ed.).

At the preliminary approval stage, the parties must show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, both elements are satisfied.

### A.      The Settlement Class Can Be Certified.

Taking the second prong first, this Court will be able to certify the Settlement Class for purposes of entering the Final Judgment. District courts have broad discretion to determine whether class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). To merit certification, the Settlement Class must satisfy the requirements of Rule 23(a)—namely, numerosity, commonality, typicality and adequacy of representation. *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, where, as here, certification is sought pursuant to Rule 23(b)(3), it must be shown that: (a) common questions of law or fact predominate over individual issues; and (b) a class action is the superior device to resolve the claims. *Id*. Finally, Rule 23 contains an implicit "ascertainability" requirement "that classes be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). The proposed Settlement Class here satisfies all of above-described prerequisites.

### 1.      The Settlement Class Is Sufficiently Numerous.

A class action may proceed when the proposed class "is so numerous that joinder of all members is impracticable." Fed R. Civ. P. 23(a)(1). While there is no "magic number" at which numerosity exists, courts have typically found the element satisfied when the class includes at least forty people. *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015). Here, PowerSchool has identified over 10 million potential individuals in the Settlement Class (*see* Drury Decl. ¶ 16), which easily satisfies the numerosity requirement.

### 2.    Common Issues of Fact and Law Predominate.

The commonality and predominance requirements set forth in Rules 23(a)(2) and 23(b)(3), respectively, are closely related and often analyzed together. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("[T]he question of commonality and predominance overlap in ways that make them difficult to analyze separately"). Common questions are those that are "capable of class-wide resolution" such "that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id.* As such, "the critical point is the need for *conduct* common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (internal quotations omitted) (emphasis in original). Where "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members," commonality exists. *Id*.

Predominance, in turn, "builds on commonality." *Howard v. Cook Cnty. Sheriff's Office*, 989 F.3d 587, 607 (7th Cir. 2021). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted). Predominance is satisfied "when common questions represent a significant aspect of [the] case and can be resolved for all members of [the] class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (cleaned up). "The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018).

Common questions of law and fact that exist as to all Settlement Class Members include:

- Whether Defendants violated Settlement Class Members' privacy rights;

- Whether PowerSchool unlawfully procured third parties, including Heap, to intercept and eavesdrop upon Settlement Class Members' communications in violation of the ECPA, CIPA and IEA;

- Whether Heap unlawfully intercepted and eavesdropped upon Settlement Class Members' communications in violation of the ECPA, CIPA and IEA;

- Whether CPS is vicariously liable for PowerSchool's conduct; and

- Whether Settlement Class Members consented to Defendants' alleged unlawful conduct.

These common questions arise from a common nucleus of operative facts and issues—namely, Defendants' conduct in wiretapping and eavesdropping upon students' confidential and sensitive communications. In short, commonality and predominance are satisfied.

### 3. Plaintiff's Claims Are Typical of Settlement Class Members' Claims.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "As a general matter, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard*, 989 F.3d at 605 (internal quotations omitted). Typicality is generally satisfied when the suit arises out of the defendant's systematic business practices toward the named plaintiff and proposed class members. *See Fischer v. Instant Checkmate LLC*, 2022 WL 971479 at *7 (N.D. Ill. Mar. 31, 2022).

Here, Plaintiff's claims satisfy the typicality requirement because "each class member [was] a user of the [Naviance Platform] who confronted the same alleged misconduct in much the same manner . . . ." *See In re: TikTok, Inc., Consumer Privacy Litig.* ("*In re: TikTok*"), 565

F.Supp.3d 1076, 1085 (N.D. Ill. 2021). Settlement Class Members' and Plaintiff's claims arise out of: (a) PowerSchool's alleged unlawful procurement of third parties to non-consensually intercept and eavesdrop upon Settlement Class Members' and Plaintiff's confidential and sensitive communications, including statutorily-protected education and school student records, while using the Naviance Platform; and (b) Heap's non-consensual interception of, and eavesdropping upon, those same communications.[4] *See* Dkt. 118 ¶¶ 8, 53-65, 98, 121-24, 130, 145, 172, 174.

### 4. The Adequacy Requirement Is Satisfied.

Rule 23(a)(4) requires a finding that the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Rule inquires into the adequacy of the named plaintiff and proposed class counsel. *Lechuga v. Elite Eng'g, Inc.*, 559 F.Supp.3d 736, 742 (N.D. Ill. 2021). To be an adequate representative, the named plaintiff must not have claims that are antagonistic to or conflicting with those of class members. *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014).

Here, Plaintiff's claims and interests are aligned with—and not antagonistic to—those of Settlement Class Members. *See* § I.A.2-3, *supra*. As such, he is an adequate representative.

Proposed Class Counsel also satisfies the adequacy requirement. Scott R. Drury has diligently investigated, prosecuted and dedicated substantial resources to this action and will continue to do so. Drury Decl. ¶ 4. To achieve the Settlement, proposed Class Counsel, *inter alia*: (a) conducted an extensive pre-filing investigation, that included filing a separate lawsuit against CPS to obtain critical underlying documents; (b) defeated PowerSchool and CPS' attempt to have the FAC dismissed in its entirety; (c) engaged in extensive discovery that included five depositions, review and analysis of hundreds of thousands of pages of documents and motion practice; (d)

---

[4] Plaintiff alleges CPS is vicariously liable for PowerSchool's conduct and does not allege direct liability against CPS. *See* Dkt. 118 ¶¶ 5, 18, 25, 146-62.

worked with Defendants' counsel to resolve multiple discovery disputes without needing to resort to motion practice; (e) commenced the *I.J. Action* against Heap after its dismissal from this case; (f) prepared multiple mediation briefs; and (g) mediated on four separate occasions before reaching any material agreements with Defendants. *Id.* ¶ 5.

Moreover, as set forth in the Drury Legal, LLC firm resume, Scott R. Drury has extensive experience as a privacy class action attorney, a litigator and a trial lawyer. *See* Exhibit 1 to Drury Decl. (Drury Legal, LLC firm resume). Proposed Class Counsel: (a) has been appointed co-class counsel and co-lead counsel in numerous privacy class actions alleging wiretapping violations similar to those at issue here, resulting in millions of dollars being made available to class members (Drury Decl. ¶ 19); and (b) played a leading role in dozens of privacy class actions in federal and state courts involving allegations of website operators and third parties unlawfully wiretapping and/or eavesdropping upon website users' online communications. *Id.* With respect to this case, Judge Holderman has recognized the "substantial investigatory work" conducted by proposed Class Counsel, as well as proposed Class Counsel's extensive knowledge and depth of understanding with respect to the facts of the case, the technical issues involved and the applicable law. Decl. of Hon. James F. Holderman (Ret.) ("Holderman Decl.") ¶¶ 4, 8, 15.

### 5. A Class Action Is Superior to Other Methods for Fairly and Efficiently Adjudicating This Action.

Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule sets out four criteria germane to this inquiry but only the first three are relevant when class certification is sought as part of a settlement. *See id.*; *see also Wright v. Nationstar Mortg. LLC*, 2016 WL 4505169, at *3 (N.D. Ill. Aug. 29, 2016) ("In the context of certifying classes for settlement purposes only, the

Supreme Court has held that certification must meet the usual requirements of Rule 23(a) and (b), *except for* the manageability prong of Rule 23(b)(3)(D).").

The first consideration—"class members' interests in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A)—weighs in favor of superiority. There is no indication that any Settlement Class Member has brought an individual lawsuit against Defendants arising out of the underlying allegations at issue here and, indeed, "many class members may be unaware of their rights . . . ."[5] *Bernal v. NRA Grp. LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016). Thus, any interest Settlement Class Members may have in individually controlling a separate action is "minimal." *Id.*

Further, the modest statutory damages available under the ECPA, SCA and CIPA relative to the high costs of retaining adequate counsel will not likely incentivize individual class members to initiate their own lawsuits. *Fischer*, 2022 WL 971479, at *13; *see also Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) ("A class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually."). Plaintiff's other claims fare even worse as they do not provide for statutory damages but rather would require prove-up of actual damages and/or disgorgement. Again, on an individual basis, such claims would not provide sufficient incentive for individual Settlement Class Members to bring their own claims.

The second consideration—"the extent and nature of any litigation concerning the controversy already begun by or against class members," Fed. R. Civ. P. 23(b)(3)(B)—also weighs

---

[5] As discussed above, Class Counsel filed the *I.J. Action* following Heap's dismissal here. Moreover, as this Court is aware, another putative class action has been filed against PowerSchool—namely, *Cherkin v. PowerSchool Holdings, Inc.*, No. 1:24-cv-02706-JD (N.D. Cal.) (the "*Cherkin Action*"). This Court has found that this Action and the *Cherkin* Action "appear to present mostly distinct issues." Dkt. 178 at 24; *see also Cherkin Action* Dkt. 84 at 5:11-14 (finding the "cases are not parallel track substantively in terms of evidence, in terms of legal issues or anything else.").

in favor of the superiority of this Action. Plaintiff is unaware of any purely individual action filed against Defendants concerning the controversy at issue in this case. As for putative class actions, the *I.J. Action* is in its initial stages and has been stayed pending the outcome of Plaintiff's anticipated motion for final approval in this case. *I.J. Action* Dkt. 41.[6] The *Cherkin Action*—which the Court has found to be largely distinct from this Action—remains a putative class action. *See, generally, Cherkin Action* Dkt.

The third consideration—"the desirability or understandability of concentrating the litigation of the claims in [this] forum," Fed. R. Civ. P. 23(b)(3)(C)—also weighs in favor of superiority. In addition to Plaintiff residing in this District: (a) CPS is an Illinois school district, with its principal place of business located herein; (b) PowerSchool did business in this District at relevant times and has not contested venue or this Court's jurisdiction (*see* Dkt. 179 (PowerSchool Answer) at 22); and (c) Heap has consented to the Court exercising personal jurisdiction over it for settlement purposes *See* Dkt. 205. Thus, this District is as appropriate as any. *See Bernal*, 318 F.R.D. at 76. Further weighing in support of superiority is the fact that consolidating class members' claims in one proceeding will generate economies of time and expense and promote legal uniformity. *See Mullins*, 795 F.3d at 663 (benefits of the class device may be considered as part of superiority analysis); *see also Svoboda v. Amazon.com, Inc.*, 162 F.4th 821, 832 (7th Cir. 2025) (similar).

### 6.    The Settlement Class Is Clearly Defined Based on Objective Criteria.

The Seventh Circuit recognizes an implicit requirement under Rule 23 that "a class must be defined clearly and that membership be defined by objective criteria . . . ." *Mullins*, 795 F.3d at 659. The focus is on the adequacy of the class definition, not whether, "given an adequate class

---

[6] As the Settlement Class in this case encompasses the nationwide class and the subclasses sought to be certified in the *I.J. Action*, Heap and the plaintiff in that action have agreed to settle that case on an individual basis if the settlement of this action is finally approved.

definition, it would be difficult to identify particular members of the class." *Id.* The Seventh Circuit

has referred to this as the "weak version" of ascertainability. *Id.*

As shown below, the Settlement Class definition is defined clearly, with class membership

being defined by objective criteria:

> All persons in the United States who, while a student, logged into the product offered by Hobsons and, later, PowerSchool Holdings, that is commonly referred to as Naviance (the "Naviance Platform"), at least once during the period beginning on August 18, 2021 and continuing through January 23, 2026 (the "Class Period"). For the avoidance of doubt, the Class Period includes times where Heap or other third-party analytics software were integrated and embedded into the Naviance Platform.

Ex. 1 ¶ 1.41. Notably, PowerSchool can also readily identify Settlement Class Members.

\*    \*    \*

The proposed Settlement Class satisfies all of the explicit and implicit requirements of Fed.

R. Civ. P 23(a) and (b). Accordingly, the Court can certify the Settlement Class for purposes of

settlement and entering final judgment after final approval.

## B.     The Proposed Settlement Is Within the Range of Possible Approval.

In addition to showing that the Settlement Class is certifiable, the parties must show the

proposed settlement "is within the range of possible approval with regard to its fairness,

reasonableness, and adequacy to class members." *In re: TikTok*, 565 F.Supp.3d at 1087 (internal

quotation marks omitted); *see also* Fed. R. Civ. P. 23(c)(2). Factors a court must consider in

making this determination include: (a) the strength of the plaintiff's case on the merits as compared

to the value of the settlement; (b) the complexity, length and expense of continued litigation; (c)

the amount of opposition to the settlement; (d) class members' reaction to the settlement; (e) the

opinion of competent counsel; and (f) the stage of the proceedings, including the amount of

discovery completed. *Id.* Each factor demonstrates that the Settlement is within the range of possible approval.[7]

### 1. The Settlement Provides Substantial Relief to the Settlement Class, Particularly Given the Risks Posed by Continued Litigation.

The strength of the plaintiff's case as compared to the value of the settlement is the most important factor. *Id.* "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re: AT&T Mobility Wireless Data Servs. Sales Litig.* ("*In re: AT&T*"), 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

In analyzing this factor, a court may consider, *inter alia*, whether: (a) the settlement was negotiated at arms'-length; (b) a mediator was involved; (c) the defendant was prepared to vigorously defend against the allegations; (d) the extent of discovery; (d) the experience of the attorneys; and (e) the complexity and length of the case moving forward. *In re: TikTok*, 565 F.Supp.3d at 1088. These considerations demonstrate that the strengths and weaknesses of Plaintiff's claims compare favorably with the settlement value.

The Settlement is the product of hard-fought, arms'-length negotiations amongst experienced counsel, which were mediated by Judge Holderman on four occasions. As Judge Holderman attests, throughout the negotiations, "each party conducted its mediated settlement negotiations in a highly adversarial, arms'-length and non-collusive manner." Holderman Decl. ¶ 13. Moreover, until the Parties reached an agreement-in-principle on monetary terms at the fourth mediation, Judge Holderman was not certain the matter could be resolved without further litigation or a trial. *Id.*; *see also id.* ¶ 10. Thus, only after an extensive arms'-length and non-collusive negotiation process did the Parties reach an agreement.

---

[7] Factors (c) and (d) cannot yet be addressed.

Moreover, the case involved extensive discovery, as discussed above. Based on that discovery, Class Counsel had the information needed to effectively evaluate the strengths and weaknesses of Plaintiff's claims. Drury Decl. ¶ 14.

Further, counsel for all Parties were extremely experienced. Class Counsel's experience is discussed above. PowerSchool, Heap and CPS are represented by the highly-respected law firms of Kirkland & Ellis LLP, Lewis Brisbois Bisgaard & Smith LLP and Esbrook P.C., respectively.

Finally, given the technical and complex nature of the claims and the experienced attorneys involved, absent a negotiated resolution, this case likely would take several more years to resolve, inclusive of appeals both at the class certification stage and after any judgment on the merits. *Id.* ¶ 17.

Beyond the factors discussed above, the Court may recognize that the Settlement ensures "meaningful, immediate monetary and [prospective] relief for [over 10 million] individuals, and weigh those benefits against the substantial risks that Plaintiff[] would face in seeking a better outcome at trial." *In re: TikTok*, 565 F.Supp.3d at 1088. While Plaintiff believes his claims against Defendants have merit, the legal uncertainties associated with continued litigation pose substantial risk of non-recovery to the Settlement Class. *See In re: Southwest Airlines Voucher Litig.*, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

For instance, given this is the first case to apply wiretapping and eavesdropping statutes to the use of education technology products, the outcome of this case is far from certain. Indeed, a district court in California recently dismissed in its entirety a later-filed case against an education technology provider that alleged CIPA violations, among other things. *See Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025).

Further, according to Defendants, numerous individualized issues preclude class certification, including issues regarding: (a) the various ways in which students may have configured their web browsers, many of which would have prevented any interception of their communications; and (b) the different ways in which school districts configured the Naviance Platform. While Plaintiff disputes Defendants' position, if Defendants were to prevent class certification, Settlement Class Members would be left to pursue relief against Defendants on an individual basis—something they likely would not do.

Defendants have also expressed confidence they will obtain summary judgment on all claims and/or prevail at trial. For instance, PowerSchool has expressed confidence that Plaintiff's case is premised on the faulty theory that any interceptions that may have occurred were nonconsensual. *See* Dkt. 179 (PowerSchool Answer) at 101. The defense raises complex issues of whether schools can consent on behalf of their students and/or whether the schools obtained the requisite consent in connection with students' enrollment.

Further, CPS has expressed confidence that it cannot be vicariously liable for PowerSchool's conduct because PowerSchool was not its agent. *See* Dkt. 180 (CPS Answer) at 101. Because Plaintiff solely seeks to hold CPS vicariously liable for PowerSchool's conduct, if CPS were to prevail on its argument, Plaintiff would have no claims against CPS.

Moreover, Heap has a pending motion to dismiss Plaintiff's claims, on several bases, in the *I.J. Action*, which case has been stayed. *I.J. Action* Dkt. 23, 41.

Defendants also have viable defenses to each of Plaintiff's remaining claims. With respect to the ECPA, while the Court determined at the motion to dismiss stage that Plaintiff adequately pled the crime-tort exception, the Court acknowledged the existence of caselaw cited by Defendants that reached a contrary conclusion. Dkt. 178 at 13. Further, while the Court agreed

21

with Plaintiff that the ECPA allows for civil liability against a defendant who procures another to violate the ECPA, the Court did not rule on whether the ECPA's one-party consent exception to liability applies to that provision. *Id.* at 12 and n.3. A future determination by the Court that Plaintiff failed to present facts supporting application of the crime-tort exception and/or that the one-party consent exception to ECPA liability applies to Plaintiff's procurement theory would be fatal to Plaintiff's primary claim, which provides for statutory damages of $10,000 per violation. 18 U.S.C. §§ 2520(b)(2), (c)(2).

While Plaintiff's CIPA claims also allow for statutory damages, Cal. Penal Code § 637.2, recent cases have demonstrated that prevailing under the CIPA is far from certain. In *Doe v. Eating Recovery Ctr., LLC*, 2025 WL 2971090, at *4-7 (N.D. Cal. Oct. 17, 2025), the court held as a matter of law that CIPA § 631 cannot be applied to cases involving the interception of online content. In *Torres v. Prudential Fin'l, Inc.*, 2025 WL 1135088, at *5-7 (N.D. Cal. Apr. 17, 2025), the court granted the defendant's summary judgment motion on a CIPA § 631 claim, finding that the plaintiff could not prove the defendant read, or attempted to read or learn, any of the plaintiff's communications while they were in-transit. Defendants likely would assert the same arguments in this case, exposing Plaintiff to the risk that this Court would reach similar conclusions.

Further, in *Doe I v. Google LLC*, 741 F.Supp.3d 828, 840-41, 843 (N.D. Cal. 2024), the court dismissed the plaintiffs' CIPA § 632 claim, among other wiretapping claims, based on the plaintiff's failure to properly plead that Google intended to collect the confidential communications at issue. Here, Heap likely would assert it lacked the requisite intent to intercept the confidential communications at issue, exposing Plaintiff to the risk that his CIPA § 632 claim would fail.

Plaintiff's SCA claim also provides for statutory damages. *See* 18 U.S.C. § 2707(b)(2), (c). However, PowerSchool contends that the SCA does not apply to the communications at issue. *See* Dkt. 178 at 19-20. While the Court rejected the argument at the motion to dismiss stage, it noted that some courts have "found this line of argument convincing . . . and there may be some force in it, but it requires an assessment of the evidence." *Id.* at 20. Thus, as with Plaintiff's other claims allowing for statutory damages, success on his SCA claim is far from certain.

Plaintiff's remaining claims do not allow for statutory damages. This is problematic given that courts have rejected the claim that the nonconsensual collection of personal information constitutes economic damages. *See In re: TikTok*, 565 F.Supp.3d at 1090. It is equally hard to prove non-economic damages. *Id.* Indeed, "it is not uncommon for consumer class actions to yield no monetary relief at all." *Id.* In fact, that recently occurred in *Kurowski v. Rush Sys. for Health*, No. 1:22-cv-05380 (N.D. Ill.), a class action involving ECPA and IEA claims arising out of the alleged wiretapping of hospital patients' online communications. *See Kurowski* Dkt. 149, 150-1. In that case, the plaintiffs settled for injunctive relief only. *Id.* Somewhat relatedly, Plaintiff is keenly aware that even if he were to secure a damages award at trial, in light of the combined nature of the statutory damages at issue in this case, Defendants would argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns.

Finally, this Court previously dismissed Heap based on a lack of personal jurisdiction. Dkt. 178 at 4-10. While Plaintiff has moved for reconsideration (Dkt. 183), Plaintiff recognizes that such motions are rarely granted. The more realistic likelihood is that absent settlement here, any recovery against Heap would have to come in the *I.J. Action*, which lags far behind this case. Indeed, the Court has not yet ruled on Heap's motion to dismiss. *I.J. Action* Dkt. 23.

Notwithstanding the above, Plaintiff maintains Defendants have more to lose at trial and face more risks, warranting the material recovery Plaintiff has achieved in the proposed Settlement. However, Plaintiff also acknowledges that settling now reduces the risk to himself and Settlement Class Members of potentially recovering nothing.

### 2. The Settlement Value Is Well Within the Range of Reasonableness.

The Settlement provides a $17.25 million cash fund for a nationwide class of over 10 million persons. Ex. 1 ¶ 1.43; Drury Decl. ¶ 16. This is an excellent result. Indeed, as shown in the table below, the recovery per class member and estimated payout per claimant here exceed the recoveries and payouts obtained in like-size data privacy cases involving similar wiretapping technology:

| Case Name | Case No. / Court | Claims | Class Size | Settlement Amount | Recovery per Class Member | Payout per Claimant |
|---|---|---|---|---|---|---|
| *Kurowski v. Rush Sys. for Health* (Dkt. 149, 150-1) | No. 1:22-cv-05380 (N.D. Ill.) | ECPA, IEA | N/A | Injunctive relief only | N/A | N/A |
| *Beltran v. Sony Pictures Entm't, Inc.* (Dkt. 52) | No. 1:22-cv-04858 (N.D. Ill.) | Video Privacy Protection Act ("VPPA") | 19,581,200 | $16 million | $0.82 | $30.94 |
| *Vela v. AMC Networks, Inc.* (Dkt. 55) | No. 1:23-cv-02524-ALC (S.D.N.Y.) | VPPA | 7,362,067 | $8.3 million | $1.13 | $10 |
| *Smith-Washington v. TaxAct, Inc.* (Dkt. 146, 163 164-4) | No. 3:23-cv-00830-VC (N.D. Cal.) | ECPA, CIPA, various Cal. statutory and common law claims | 10,652,389 | $17.45 million | $1.63 | $24.69 (estimated) |

| Case Name | Case No. / Court | Claims | Class Size | Settlement Amount | Recovery per Class Member | Payout per Claimant |
|---|---|---|---|---|---|---|
| *Q.J. v. PowerSchool Holdings LLC* | No. 1:23-cv-05689 (N.D. Ill.) | ECPA, SCA CIPA, IEA, ISSRA, common law claims | 10,342,595 | $17.25 million | $1.67 | **Estimated**[8] **$49.43** (2% rate)<br><br>**$24.71** (4% rate)<br><br>**$14.12** (7% rate) |

In addition to monetary relief, the Settlement provides for meaningful and robust prospective relief as set forth above.

### 3.  Further Litigation Would Be Complex, Lengthy and Expensive.

It is axiomatic that "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 586 (N.D. Ill. 2011). This case—like most class actions—"would almost certainly be complex, lengthy, and expensive." *In re: TikTok*, 565 F.Supp.3d at 1091. While the case is past the pleadings stage and a significant amount of discovery has been completed, Plaintiff has not yet moved for class certification, expert discovery has not commenced, no party has yet moved for summary judgment and no *Daubert* motions have yet been filed. Moreover, no trial date has been set. Based on the history of this case, there is no question that the remaining phases of this litigation will be vigorously litigated and that adverse rulings will be appealed. Thus, absent settlement, this case will not reach any final conclusion for years. And that conclusion may result in no recovery.

---

[8] While claims rates are difficult, if not impossible, to predict, the average claims rate for a class of the size in this case is 1.4%. *See In re: Facebook Biometric Info. Priv. Litig.*, No. 15-cv-03747 (N.D. Cal. Dec. 14, 2020), Dkt. 517-2 at 4 (expert declaration of Harvard Law Professor William B. Rubenstein in support of final approval). The estimates set forth herein are based on claims rates of 2%, 4% and 7%, which are similar to the claims rates in *Sony, TaxAct and AMC Networks*, respectively.

### 4.    Class Counsel Endorses the Settlement.

Class Counsel strongly endorses the Settlement as being in the best interests of Plaintiff and Settlement Class Members, taking into account the risk, expense and delay that necessarily accompanies continued litigation. *See McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F.Supp.2d 806, 812 (E.D. Wis. 2009) (that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re: TikTok*, 565 F.Supp.3d at 1091 (court's confidence in the settlement bolstered by the efforts of class counsel). The endorsement is based on Class Counsel's experience and extensive work performed in this case.

In evaluating the endorsement of class counsel, a court may rely upon affidavits submitted by class counsel, as well as its own observations of class counsel during the litigation. *See Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). Class Counsel's qualifications are set forth above. Moreover, due to Class Counsel's efforts, PowerSchool withdrew its Rule 12(b)(1) motion, and Plaintiff largely defeated PowerSchool and CPS' motion to dismiss. Further, Class Counsel has vigorously pursued this matter without seeking extensions of the Court's scheduling orders. Where necessary, Class Counsel pursued discovery through motion practice but also worked with Defendants' counsel to resolve a number of discovery disputes. *See* Drury Decl. ¶ 5; *see also, e.g.*, Dkt. 189 (describing efforts to resolve discovery disputes). Additionally, as demonstrated by the fact that it took four mediations to reach any agreement in this case and that Class Counsel did not seek to stay this matter during those mediations, Class Counsel advocated zealously on behalf of Settlement Class Members and made clear through his actions that he was prepared to continue litigating this matter. Finally, after the Court dismissed Heap on jurisdictional grounds, Class

Counsel filed the *I.J. Action* against Heap, which directly led to its participation in the Settlement here. *See* Drury Decl. ¶¶ 5, 15.

### 5. The Settlement Was Reached Near the End of Merits Discovery.

The final factor evaluates the stage of the proceedings and the amount of discovery completed. This factor is important because it provides an indication of how fully counsel and the court are able to evaluate the merits of the case. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302 (N.D. Ill. July 26, 2011) As discussed above, the Parties entered into the Settlement almost 2.5 years after the case had been filed, after the Court ruled on Defendants' motions to dismiss and near the end of fact discovery. Thus, Class Counsel and Defendants' counsel were well-positioned to evaluate their respective positions. *See* Holderman Decl. ¶¶ 8, 15 (describing extensive knowledge and depth of understanding of Parties' counsel).

### C. The Proposed Notice Plan Should Be Approved in Form and Substance.

As shown above, the proposed Settlement Class can be certified, and the proposed Settlement Agreement can be approved. Consequently, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Because Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(3), the notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Notice may be provided to the Settlement Class via "United States mail, electronic means, or other appropriate means." *Id.* The notice must describe "clearly and concisely . . . in plain, easily understood language": (a) the nature of the action; (b) the definition of the settlement class; (c) the claims and defenses at issue; (d) class members' right to appear through counsel if so desired; (e) class members' right to request exclusion from the settlement class; (f) the time and manner for

requesting exclusion; and (g) the binding effect of a class judgment on all members of the settlement class. *Id.*

As set out in the Settlement Agreement and the Declaration of Carla A. Peak of Kroll Settlement Administration LLC in Connection with Preliminary Approval of Settlement ("Peak Decl."), the proposed notice plan is comprehensive and focused on providing: (a) direct notice and two reminder notices to Settlement Class Members and their parents and/or legal guardians, to the extent PowerSchool's records associate such parents or legal guardians with one or more Settlement Class Members, via email and, as appropriate, U.S. Mail; and (b) a supplemental online media campaign consisting of online digital advertisements. Ex. 1 ¶ 4; Peak Decl. ¶¶ 17-21. Pursuant to the Settlement Agreement, PowerSchool will provide the Settlement Administrator with a list or lists that includes the names, last known U.S. Mail addresses, email addresses, mobile phone numbers and telephone numbers, to the extent available, belonging to Persons within the Settlement Class and/or their parents or legal guardians to the extent PowerSchool's records associate such parents or legal guardians with one or more Settlement Class Members. Ex. 1 ¶ 4.1(a).

The Settlement Administrator will send direct notice to all Settlement Class Members and their parents or legal guardians for whom a valid email address is contained in the Settlement Class List. *Id.* ¶ 4.1(b); Peak Decl. ¶ 8. That email will contain a link to the Claim Form and otherwise describe the Settlement. Ex. 1 ¶ 4.1(b); *see also id.* at Ex. C. For any emails that result in a "bounce-back," the Settlement Administrator will attempt to resend the email. *Id.* ¶ 4.1(b). Two subsequent reminder emails will be sent, one thirty days and one seven days prior to the Claims Deadline. *Id.* ¶ 4.1(e); Peak Decl. ¶ 10.

The Settlement Administrator will send direct notice via first-class mail to Settlement Class Members and/or their parents and/or legal guardians, to the extent PowerSchool's records associate such parents or legal guardians with one or more Settlement Class Members, who were not sent an email notice or whose email notice was rejected/bounced back as undeliverable and who have a physical mailing address in the Class List or that otherwise can reasonably be ascertained. Ex. 1 ¶ 4.1(b); Peak Decl. ¶ 11.

The Settlement Administrator will also disseminate online digital advertisements containing information regarding the Settlement. Ex. 1 ¶ 4.1(c); Peak Decl. ¶¶ 17-21. Those digital notices will include the ability to directly access the Notice and Claim Form via hyperlinks. Ex. 1 ¶ 4.1(c).; Peak Decl. ¶21

Additionally, the Settlement Administrator will establish and maintain a Settlement Website, that will include notice of the Settlement Agreement, relevant case documents and the ability to file Claim Forms online or download them. Ex. 1 ¶ 4.1(f); Peak Decl. ¶ 22.

All in all, the proposed notice plan is designed to provide to all Settlement Class Members information about the proposed Settlement Agreement and Settlement Class Members' rights under it in plain, easily understood language directly. It is the best notice practicable, and this Court should approve the notice plan as set forth in the Settlement Agreement.

## II.     Plaintiff's Counsel Should Be Appointed as Class Counsel.

Finally, if, as requested, this Court finds that the Settlement Class is certifiable, it should appoint Plaintiff's counsel as class counsel. *See* Fed. R. Civ. P. 23(g). In appointing class counsel, the Court must consider: (a) the work counsel has done in identifying or investigating potential claims in the action; (b) counsel's experience in handling class actions, other complex litigation and the types of claims asserted in the action; (c) counsel's knowledge of the applicable law; and (d) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

As discussed in § I.A.4 above, proposed Class Counsel: (a) has thoroughly investigated the claims at issue; and (b) has extensive experience in litigating consumer privacy class actions and other types of complex litigation. Further, as demonstrated in the opposition briefs to Defendants' motions to dismiss, proposed Class Counsel is extremely knowledgeable on the applicable law. *See* Dkt. 153, 156; *see also* Holderman Decl. ¶¶ 8, 15. Finally, proposed Class Counsel has demonstrated throughout this action that he has the resources necessary to represent the Settlement Class. Class Counsel has self-funded the prosecution of this matter from the investigatory stage to the present and will continue to do so. Drury Decl. ¶ 4.

The Rule 23(g)(1)(A) considerations support the appointment of Plaintiff's counsel as Class Counsel in this case. *See Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2020 WL 4345418, at *8 n.8 (N.D. Ill. July 29, 2020) ("The analysis under Rule 23(g) builds on the standards that courts developed in scrutinizing the adequacy of class counsel under Rule 23(a)(4) rather than introducing an entirely new element into the class certification process.") (quotations omitted). Accordingly, the Curt should appoint Scott R. Drury as Class Counsel.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order: (a) preliminarily approving the proposed Settlement Agreement; (b) certifying the proposed Settlement Class for settlement purposes with Plaintiff Q.J. serving as class representative; (c) directing that notice be provided to Settlement Class Members pursuant to the notice plan set forth in the Settlement Agreement; (d) appointing Scott R. Drury as Class Counsel; (e) scheduling a final fairness hearing in this matter; and (f) providing such other and further relief as the Court deems reasonable and just.[9]

---

[9] Plaintiff will submit a proposed Preliminary Approval Order via the Court's email.

Dated: February 23, 2026

Respectfully submitted,

Q.J., on behalf of himself and
others similarly situated,

By:     /s/ *Scott R. Drury*
       SCOTT R. DRURY
       *Counsel of Plaintiff and*
       *putative class members*

Scott R. Drury
DRURY LEGAL, LLC
6 Carriage Lane
Highwood, Illinois 60040
(312) 358-8225
scott@drurylegal.com

## <u>CERTIFICATE OF SERVICE</u>

  I, Scott R. Drury, an attorney, hereby certify that, on February 23, 2026, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

*/s/ Scott R. Drury*   
Scott R. Drury
